Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CHARLES G. MOORE AND KATHLEEN F. MOORE, | ) ) | Case No. 2:19-cv-01539-JCC |
| | ) | |
| Plaintiffs, | ) ) | **UNITED STATES' MOTION TO DISMISS** |
| v. | ) | |
| | ) | **NOTE ON MOTION CALENDAR: April, 27 2020** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |

The United States of America moves to dismiss this case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In support of this motion, the United States submits the following:

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ON SECTION 965 ...................................................................................... 3

   I.   Subpart F ..................................................................................................................... 3

   II.   TCJA and Amended § 965 ......................................................................................... 5

LEGAL STANDARD UNDER RULE 12(b)(6) .................................................................... 7

ARGUMENT ............................................................................................................................ 8

   I.   Introduction ................................................................................................................. 8

   II.   Section 965 defines what is currently included in income, and fits squarely within the Sixteenth Amendment ................................................................................................ 10

      A.   Subpart F, and in particular, including undistributed foreign earnings within income, is constitutional. ................................................................................................ 10

      B.   Taxpayers are regularly subject to tax on income that is not distributed to them. ………………………………………………………………………………12

      C.   Tax imposed on a corporation's accumulated earnings is constitutional, even in the absence of a realization event. .......................................................................... 13

   III.   Apportionment is irrelevant to income tax; the Moores' claim that § 965 is a direct tax is unavailing. .............................................................................................................. 14

   IV.   Section 965 operates prospectively. ........................................................................ 17

      A.   The legal standard on retroactivity first examines the statutory text, then its practical application. ............................................................................................................... 17

      B.   On its face and by its own terms, § 965 is not retroactive. .......................................... 18

      C.   Section 965 has no retroactive effect when applied. .................................................. 20

         1.   *Measuring current income with reference to past conduct does not make § 965 retroactive.* ............................................................................................................ 21

            (a)   Subpart F inclusions based on prior year earnings have been upheld as non-retroactive. ................................................................................................ 21

            (b)   Other taxes on income derived from prior earnings have been upheld. ............. 21

            (c)   Taxes on income derived from prior contracts have been upheld as non-retroactive. ................................................................................................ 22

         2.   *Frustrated expectations do not make § 965 retroactive.* ............................................. 24

   V.   Under *Carlton*, § 965 has both a legitimate purpose and rational means. ........................ 26

CONCLUSION ......................................................................................................................... 31

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

# INTRODUCTION

In 2017, Congress changed the law governing the tax treatment of the active earnings of foreign corporations controlled by United States shareholders—commonly known as controlled foreign corporations or "CFCs." The United States previously had a system of worldwide taxation under which a CFC's active earnings generally were taxed only when distributed to shareholders or otherwise repatriated. Many CFCs kept large amounts of earnings offshore due to the tax-deferral benefits offered. The new law ended the taxation on the distribution of previously untaxed CFC earnings for many taxpayers, as part of a shift to a more territorial tax system. But in order to prevent a windfall when CFCs repatriated their previously untaxed earnings, the law required that the CFCs' United States shareholders report those accumulated earnings as income in the United States as if they had been repatriated. Under the new law, the accumulated earnings are taxed generally at a lower rate than they would have been had they been repatriated under prior law. Not satisfied with this beneficial treatment, plaintiffs Charles and Kathleen Moore seek to void the new law by claiming that Congress violated the Constitution in enacting the statute. Although the amounts at stake in this case are relatively small, if the Moores' arguments prevail, it could result in the avoidance of billions in taxes on accumulated offshore earnings by many of the largest multinational corporations in the United States, a consequence clearly at odds with Congress's intent in enacting the statute.

The new law was codified at 26 U.S.C. § 965, under the Tax Cuts and Jobs Act of 2017 ("TCJA"). 26 U.S.C. § 965 requires United States shareholders of a specified foreign corporation (which includes a CFC) to include in income a pro rata share of the corporation's post-1986 accumulated earnings that were previously untaxed. Accordingly, the Moores' income in 2017 included a pro rata share of the previously untaxed accumulated earnings of KisanKraft Limited,

an Indian CFC in which Mr. Moore is a 13-percent owner. Complaint (Dkt. No. 1), ¶¶ 15-23. This additional income increased their 2017 income tax liability. *Id.*, ¶¶ 21-23. The Moores now seek a refund for the portion of their 2017 income taxes attributable to the § 965[1] income inclusion. *Id.*, ¶¶ 24, 44-45. The Moores claim that the "mandatory repatriation tax" in § 965 is unconstitutional for two reasons: first, that it is an unapportioned direct tax in violation of the Apportionment Clause (Count One), and second, that it is a retroactive tax in violation of the Fifth Amendment's Due Process Clause (Count Two). *Id.*, ¶¶ 31-43.

The Moores' first claim fails because § 965 is not a direct tax. Section 965 is one of several provisions that define what is included in a taxpayer's income under subpart F of the Internal Revenue Code (relating to CFCs). Like many internal revenue laws, § 965 provides that undistributed earnings—income that is attributable, but not distributed to, taxpayers—may be included in income. Courts have consistently upheld such laws as constitutional under the Sixteenth Amendment. In particular, courts have upheld other subpart F provisions that measure income inclusions based on undistributed foreign earnings. Further, a direct tax is generally limited to a property tax or a capitation tax. Section 965 is neither. Therefore, the Moores' Apportionment Clause challenge should be denied.

The Moores' second claim fails because § 965 is not retroactive. By its own terms, § 965 operates prospectively. Section 965's effective date is the date of its enactment, and it applies to tax years ending, at the earliest, in 2017 or 2018. Section 965 has no retroactive effect in practice either. It increases affected taxpayers' income going forward, without punishing prior tax deferral. While § 965 calculates current income by reference to past earnings, courts have upheld analogous tax laws as non-retroactive when they measure current income with reference to past

---

[1] Unless otherwise indicated, all section references in this motion are to Title 26 of the U.S. Code.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

2

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1    conduct. In addition, taxpayers accept the risk that laws can change at any time; frustrated

2    expectations do not amount to a cause of action. Thus, the Moores' Due Process Clause

3    challenge should also be rejected.

4        Because the Moores do not state a plausible claim to relief, their Complaint should be

5    dismissed under Rule 12(b)(6).

6                        **BACKGROUND ON SECTION 965**

7        Until very recently, the United States had a longstanding system of worldwide taxation,

8    in which subpart F played a key role by ensuring CFC income was taxed appropriately. Congress

9    decided to alter the tax system in 2017 by making it more territorial. This created the need for

10   § 965 as part of a transition to a different method of taxing CFC income, as explained below.

11   **I.    Subpart F**

12       Subpart F of the Internal Revenue Code (§§ 951-964) was enacted in 1962 to prevent

13   U.S. taxpayers from deferring tax by funneling movable income—such as dividends, interest,

14   rents, and royalties—through controlled foreign corporations (or CFCs).[2] Revenue Act of 1962,

15   Pub. L. No. 87-834, § 12, 76 Stat. 960, 1006 (1962); H.R. Rep. No. 87-1447, at 57–58 (1962),

16   *reprinted in* 1962-3 C.B. 405, 461–62; H.R. Doc. No. 87-140, at 6–8 (1961); *see generally* 26

17   U.S.C. §§ 951-959. Congress perceived CFCs as ripe for abuse because of the shareholders'

18   degree of control, especially if a CFC was located in a "tax haven" where shareholders could

19   avoid tax until the CFC's income was distributed to them. S. Rep. No. 87-1881, at 78–79 (1962),

20   *reprinted in* 1962-3 C.B. 707, 784–85; H.R. Rep. No. 87-1447, at 57–58, 1962-3 C.B. at 461–62;

21   *Dougherty v. Comm'r*, 60 T.C. 917, 928 (1973).

22

23   [2] A CFC is a foreign corporation more than 50% of which, by vote or value, is owned (within the meaning of § 958) by United States shareholders. 26 U.S.C. § 957(a); *infra* note 3 (defining "United States shareholder").

24   U.S. Motion to Dismiss                         3                    **U.S. DEPARTMENT OF JUSTICE**
     (Case No. 2:19-cv-01539-JCC)                                       Tax Division, Western Region
                                                                        P.O. Box 683
                                                                        Washington, D.C. 20044
                                                                        Telephone: 202-616-3822

Subpart F has retained the same basic structure since 1962. The framework generally works as follows: § 951(a) requires a "United States shareholder"[3] ("U.S. shareholder") owning stock in a CFC to include in gross income: (1) the shareholder's pro rata share of the CFC's subpart F income for the year, and (2) the amount determined under § 956 (investment of earnings in U.S. property) with respect to the shareholder.[4] A CFC's "subpart F income" is defined in § 952 to mean the sum of the CFC's insurance income (as defined under § 953), foreign base company income (as determined under § 954), international boycott income, certain illegal bribes and kickbacks, and income from certain blacklist countries. *See* 26 U.S.C. § 952(a). To the extent a CFC's subpart F income is included in a U.S. shareholder's income under § 951, the CFC's actual distributions to the shareholder are generally excluded from the shareholder's income under § 959 so that amounts are not double-counted.

Taken as a whole, subpart F created an anti-deferral regime that required U.S. shareholders of CFCs to include in current income many categories of passive or movable foreign income, so that it was taxed currently instead of upon repatriation (for example, as a dividend distribution). Other CFC income that was not taxed currently, either under subpart F or other parts of the tax code, could be kept offshore, thus postponing U.S. tax until the earnings were distributed to U.S. shareholders or otherwise repatriated.

---

[3] A "United States shareholder" was defined as a U.S. person who owns 10% or more of a foreign corporation by vote. 26 U.S.C. § 951(b) (prior to amendment by TCJA); *see* 26 U.S.C. § 957(c) (defining "United States person"), § 958(a)-(b) (defining stock ownership and providing constructive ownership rules). The TCJA amended the definition of "United States shareholder" to include U.S. persons owning 10% or more of a foreign corporation by value. But for purposes of § 965, the amended definition is not applicable.

[4] The income inclusion occurs if a foreign corporation is a CFC for an uninterrupted period of 30 days or more during any taxable year, and a U.S. shareholder (defined *supra* note 3) owns stock in the corporation on the last day of the taxable year in which the CFC is a CFC. 26 U.S.C. § 951(a) (prior to amendment by TCJA). The TCJA amended § 951(a), replacing "uninterrupted period of 30 days or more" with "at any time," but the amendment is not applicable for purposes of § 965.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

4

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

## II.    TCJA and Amended § 965

With the enactment of the TCJA, Congress decided to shift from a longstanding worldwide tax system to a more territorial tax system, based on a participation exemption. *See* H.R. Rep. No. 115-466, at 595, 598–99 (2017) (Conf. Rep.). The participation exemption provides corporate taxpayers a 100% dividends-received deduction for certain foreign-source dividends, which makes any applicable dividends tax-free.[5] *Id.* As a result, Congress realized that it had to deal with accumulated earnings that CFCs had stockpiled under the old system (due to the tax-deferral advantages offered). Without some sort of transition tax, U.S. shareholders would have been able to repatriate tax-free those accumulated earnings, using the dividends-received deduction. This would have been a windfall, in particular for large multinational companies. As a result, Congress decided to enact a one-time transition tax: § 965.

Section 965 was amended[6] in 2017 as part of the TCJA to provide for the mandatory deemed repatriation of certain earnings and profits of foreign corporations that are "deferred foreign income corporations." Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 14103, 131 Stat. 2054, 2195 (2017). Under § 965, generally, U.S. shareholders in a "deferred foreign income corporation" ("DFIC"), or U.S. persons who are interest holders in a domestic pass-through entity that is itself a U.S. shareholder of a DFIC, may be required to pay a transition tax. *Supra* note 3 (explaining U.S. shareholder as statutorily defined term). A DFIC is any "specified

---

[5] The participation exemption system generally incorporates a 100% dividends-received deduction for corporate taxpayers, for the foreign-source portion of dividends received from a specified 10% owned foreign corporation. *See* 26 U.S.C. § 245A.

[6] Section 965 was first enacted in 2004 and generally provided for an elective, temporary dividends-received deduction for U.S. shareholders receiving cash dividends from CFCs. American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 422(a), 118 Stat. 1418, 1514 (2004). The provision was enacted to encourage repatriation of cash back to the United States.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

5

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

foreign corporation"[7] that has accumulated post-1986 deferred foreign income (which is defined based on post-1986 earnings and profits) greater than zero as of either November 2, 2017 or December 31, 2017. 26 U.S.C. § 965(d). The one-time deemed repatriation occurs with respect to the last taxable year of a DFIC beginning before January 1, 2018 (*i.e.*, the 2017 taxable year for DFICs whose taxable years end December 31). 26 U.S.C. § 965(a). The income inclusion for the U.S. shareholder occurs in the U.S. shareholder's year in which or with which such DFIC's year ends. 26 U.S.C. § 951(a); *supra* note 4.

Section 965 does not directly impose tax, but instead operates through the subpart F framework, which provides additional rules relevant to the imposition of tax. Under § 965(a), a DFIC's subpart F income is increased, and a U.S. shareholder's subpart F inclusion (which is an inclusion in gross income) is correspondingly increased under § 951. The DFIC's subpart F income is increased by the greater of its accumulated post-1986 deferred foreign income (defined in § 965(d)(2)) as of November 2, 2017, or its accumulated post-1986 deferred foreign income as of December 31, 2017. 26 U.S.C. § 965(a). Then, the U.S. shareholder's resulting income inclusion is taxed at a reduced rate, which is accomplished through a deduction under § 965(c). The deduction is intended to effectively reduce the tax rate to approximately 15.5 percent on earnings attributable to cash and cash equivalents, and approximately 8 percent on the remainder. *See* 26 U.S.C. § 965(c); H.R. Rep. No. 115-466, at 620. In addition, a favorable election may be

---

[7] A "specified foreign corporation" is generally any controlled foreign corporation and any foreign corporation with respect to which one or more domestic corporations is a "United States shareholder" (defined *supra* note 3). 26 U.S.C. § 965(e).

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1  made under § 965(h), under which any taxpayer that has a "section 965(h) net tax liability"[8] can

2  pay the liability in eight annual installments unless a specified "acceleration" event occurs.[9]

3  ### LEGAL STANDARD UNDER RULE 12(B)(6)

4  Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) if there is "no cognizable legal

5  theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v.*

6  *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To

7  survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially

8  plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court must

9  accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted

10  inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487

11  F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

12  2001).

13  On a 12(b)(6) motion, a district court need not grant leave to amend if it determines that

14  the pleading could not be cured by the allegation of other facts. *Cook, Perkiss & Liehe, Inc. v. N.*

15  *Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Where the facts are not in dispute,

16  and the sole issue is whether there is liability as a matter of substantive law, the court may deny

17  leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). A proposed amendment

18  is futile "if no set of facts can be proved under the amendment to the pleadings that would

19  constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385,

20  1393 (9th Cir. 1997).

---

[8] The term "section 965(h) net tax liability" is defined in 26 C.F.R. § 1.965-7(g)(4) and refers to the total net tax liability resulting from the application of § 965, payment of which is deferred through the election under § 965(h). *See* 26 C.F.R. § 1.965-7(g)(10).

[9] Section 965 contains other election provisions that do not appear relevant here. *See* 26 U.S.C. § 965(i), (m), (n).

U.S. Motion to Dismiss   7
(Case No. 2:19-cv-01539-JCC)

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

**ARGUMENT**

### I.   Introduction

Three key tax principles lie at the heart of this case: first, the changing nature of tax law; second, the broad definition of taxable income; and third, discouraging tax deferral. These core concepts are important to understanding § 965 and the context in which it was enacted, and why it is constitutional.

As to the first principle: Tax legislation is not a promise, as Justice Stone explained in *Welch v. Henry*, 305 U.S. 134, 146 (1938) (upholding constitutionality of tax on previously untaxed dividends):

> Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.

It is Congress's prerogative to change the tax laws as the times change. *Id.* at 144–45. And Congress makes these changes both to adapt to changing economic circumstances, domestic and foreign, and also to curtail tax evasion and attempts to undermine our tax system as a whole. *See United States v. Carlton*, 512 U.S. 26, 31–34 (1994). The notion that taxpayers can expect a static tax code is belied by our country's entire history of taxation.

As to the second principle: Gross income is defined broadly, and "extends . . . to all economic gains not otherwise exempted." *Comm'r v. Banks*, 543 U.S. 426, 433 (2005). Since *Glenshaw Glass*, the Supreme Court has repeatedly emphasized the broad reach of § 61 in defining gross income, and the principle that any "accession[] to wealth" is income unless specifically exempted. *Comm'r v. Glenshaw Glass Co*, 348 U.S. 426, 431 (1955). "The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively." *Comm'r v. Jacobson*, 336 U.S. 28, 49 (1949).

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

Gross income means all income "subject only to the exclusions specifically enumerated elsewhere in the Code." *United States v. Burke*, 504 U.S. 229, 233 (1992); *see also Comm'r v. Schleier*, 515 U.S. 323, 327–28 (1995); *Roemer v. Comm'r*, 716 F.2d 693, 696 n.2 (9th Cir. 1983). As such, gross income includes income as defined by § 965.

As to the third principle: Congress has long been concerned with U.S. taxpayers' attempts to defer tax through both domestic and foreign entities. Subpart F was in part designed to prevent U.S. shareholders from using CFCs to indefinitely defer tax on certain types of foreign income. *See, e.g.*, Bkgd. Section; *Marsman v. Comm'r*, 205 F.2d 335, 339–40 (4th Cir. 1953) (discussing related provision subjecting U.S. shareholders to tax on undistributed net income; provision was designed to avoid tax evasion using foreign holding companies).

Congress has also enacted numerous provisions directed at taxpayers' attempts to use domestic corporations to avoid or postpone tax. Every Revenue Act since the adoption of the Sixteenth Amendment in 1913 has imposed a tax on undistributed earnings and profits. Without some method to deter the accumulation of unneeded corporate earnings, shareholders would be able to postpone income recognition at the shareholder level indefinitely. *See Ivan Allen Co. v. United States*, 422 U.S. 617, 624–25 (1975) (citing B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 8.01 (3d ed. 1971); B. Wolfman, Federal Income Taxation of Business Enterprise 864 (1971)); *United States v. Donruss Co.*, 393 U.S. 297, 303–07 (1969) (outlining legislative history of domestic anti-deferral provisions).

As explained below, § 965 conforms to the recognized, broad definition of income under the Sixteenth Amendment, and plays a critical role in ending tax deferral through CFCs.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

## II. Section 965 defines what is currently included in income, and fits squarely within the Sixteenth Amendment.

The Moores wrongly assert that § 965 is unconstitutional because it is a "direct" tax, and as such, must be apportioned among the states. They misconstrue both § 965 and the concept of direct tax. Section 965 includes in current income certain U.S. persons' share of certain foreign corporation's untaxed accumulated earnings. Courts have considered and rejected arguments that taxing undistributed foreign earnings violates the Sixteenth Amendment.

In addition, a direct tax requiring apportionment is a tax on property or a capitation tax, neither of which exists here. The Constitution's prohibition against direct tax without apportionment is thus of no relevance here because § 965 is not a taxing provision; instead, it requires the current recognition of income that previously could be deferred. As such, the suggestion that § 965 is akin to direct tax levied on property is misguided.

### A. Subpart F, and in particular, including undistributed foreign earnings within income, is constitutional.

Subpart F's anti-deferral rules include in U.S. shareholders' income categories of foreign-sourced income earned by their CFCs. These provisions have been subject to direct constitutional challenges under the Sixteenth Amendment, and have consistently been upheld. The Second Circuit made clear in determining the constitutionality of a similar subpart F provision, that requiring a shareholder to include in taxable income its pro rata share of a foreign corporation's profits, regardless of whether they were distributed, was constitutional. *Garlock, Inc. v. Comm'r*, 489 F.2d 197, 202–03 (2d Cir. 1973). The court noted that the taxpayer's constitutional challenge "border[ed] on the frivolous" in light of the court's earlier decision in *Eder v. Commissioner*, 138 F.2d 27, 28 (2d Cir. 1943), which upheld the constitutionality of taxing shareholders' undistributed corporate earnings where foreign law prohibited the full distribution. *Garlock*, 489

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

10

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1    F.2d at 202. The *Garlock* court explained that *Eisner v. Macomber*, 252 U.S. 189, 211 (1920),

2    and its definition of income as only items "received . . . for [a taxpayer's] separate use and

3    benefit" was made irrelevant by the Supreme Court's later decision in *Heiner v. Mellon*, 304

4    U.S. 271, 281 (1938). *Garlock*, 489 F.2d at 203 n.5. In *Mellon*, the Court rejected the taxpayer's

5    argument that tax could only be imposed on income actually distributed during the tax year.

6    *Mellon*, 304 U.S. at 277–81. The Court made clear that income is taxable to a partner even if a

7    separate agreement or state law prohibits its distribution. *Id.* at 281.

8        In *Eder,* three U.S. taxpayers owned 25% interests each in a Colombian corporation.

9    *Eder*, 138 F.2d at 27. Under Colombian law, the corporation was prohibited from distributing

10   profits in excess of $1,000 per month outside of the country. *Id.* The Tax Court determined the

11   entire undistributed amounts to be taxable to the shareholders. *Id.* In considering taxpayers'

12   argument that income not within their control, and not available to pay the related tax, should not

13   be subject to tax, the Second Circuit explained that despite the "harsh" result, the statute was

14   constitutional. *Id.* at 28–29. The court determined the statute constitutional because the purpose

15   of deterring excessive accumulated foreign earnings was valid, and subjecting those earnings to

16   tax was reasonable. *Id.* The court was unsympathetic to the taxpayers, noting that "the fact that

17   the distribution of income is prevented by operation of law, or by agreement among private

18   parties, is no bar to its taxability." *Id.* at 28.

19       The Moores suggest the outcome here is determined by *Eisner v. Macomber*, but

20   overlook the case law that has narrowed its reach in the intervening century. 252 U.S. 189 (1920)

21   (holding tax on dividends unconstitutional as a direct tax). In *Mellon*, 304 U.S. at 281, the

22   Supreme Court upheld a tax on partnership income even if it was not distributed to the partner, as

23

24

U.S. Motion to Dismiss                                  11
(Case No. 2:19-cv-01539-JCC)

noted above. While *Mellon* did not explicitly address *Eisner v. Macomber*, the holding in *Mellon* effectively limited the reach of *Eisner v. Macomber*. *Id.*; *Garlock*, 489 F.2d at 203 n.5.

Likewise, in *Dougherty*, the Tax Court rejected *Eisner*'s application to a constitutional challenge similar to the case at bar. Taxpayers claimed that subpart F was unconstitutional because it taxed accumulated, undistributed earnings and therefore was an unconstitutional direct tax. *Dougherty v. Comm'r*, 60 T.C. 917, 927–30 (1973). Relying on its earlier decisions in *Whitlock* and *Garlock*, the Tax Court rejected taxpayers' Sixteenth Amendment challenge to § 951 and imposing tax on undistributed earnings. *Id.* at 927–29 (citing *Estate of Whitlock v. Comm'r*, 59 T.C. 490, 505–10 (1972) and *Garlock Inc. v. Comm'r*, 58 T.C. 423, 438 (1972)). In *Whitlock*, the Tax Court held, and the Tenth Circuit affirmed, that taxing a U.S. shareholder's pro rata share of a foreign corporation's increase in earnings invested in U.S. property was constitutional. *Estate of Whitlock v. Comm'r*, 494 F.2d 1297, 1301 (10th Cir. 1974). The Tenth Circuit affirmed the Tax Court's rejection of taxpayers' characterization of a tax on undistributed foreign earnings as a direct tax, and described the taxpayers' constitutional challenge as meritless. *Whitlock*, 494 F.2d at 1301; *see also Prescott v. Comm'r*, 561 F.2d 1287, 1293 (8th Cir. 1977) (discussing diminished role of *Eisner v. Macomber* in defining income).

## B.  Taxpayers are regularly subject to tax on income that is not distributed to them.

In addition to the cases upholding subpart F, countless decisions have upheld the imposition of tax on undistributed income in other parts of the tax code.

Under the subchapter K partnership provisions, partners are required to take into account their "distributive shares" of partnership profit or loss (determined under § 704), regardless of whether the partnership makes actual distributions to them. 26 U.S.C. § 702(a); *United States v. Basye*, 410 U.S. 441, 447–48 (1973) ("partners are taxable on their distributive or proportionate

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

12

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

shares of current partnership income irrespective of whether that income is actually distributed to them"). As the Court stated in *Mellon*, 304 U.S. at 281, "[t]he tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material."

S corporation taxation rules operate in a similar fashion. An S corporation is not subject to the federal corporate income tax. 26 U.S.C. § 1363(a). Instead, an S corporation's items of income, gain, loss, deduction, and credit—whether or not distributed—flow through to the shareholders. The shareholders must report their pro rata shares of such items on their individual income tax returns. 26 U.S.C. § 1366(a); *Mourad v. Comm'r*, 387 F.3d 27, 29 (1st Cir. 2004). Again, these provisions, like subchapter K provisions, require shareholders to report as income amounts attributable to them in any given year from an S corporation in which they hold stock, even if such amounts were not distributed.

In short, regardless of the reason for non-distribution, Congress can require partners or S-corporation shareholders to pay tax on their distributive shares.

### C.  Tax imposed on a corporation's accumulated earnings is constitutional, even in the absence of a realization event.

Provisions imposing a tax on corporations with undistributed accumulated earnings have been challenged under the Sixteenth Amendment and been upheld.[10] *See, e.g.*, *Helvering v. Nw. Steel Rolling Mills*, 311 U.S. 46, 52–53 (1940) (tax on undistributed accumulated earnings was constitutional; such tax is "a true tax on income within the meaning of the Sixteenth

---

[10] Current law imposes a tax on a corporation's accumulated taxable income, if accumulated beyond the reasonable needs of the business. 26 U.S.C. §§ 531, 532(a), 533(a); *see also* 26 U.S.C. § 535. This "accumulated earnings tax" is similar to, but distinct from, the taxes on accumulated earnings in the cases discussed in this section.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

13

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

Amendment," despite state law prohibition against distribution); *Helvering v. Nat'l Grocery Co.*, 304 U.S. 282, 288–89 (1938) (tax on accumulated gains and profits was constitutional and not a "direct tax on the state of mind"; instead, it was a "true income tax within the meaning of the Sixteenth Amendment"); *Novelart Mfg. Co. v. Comm'r,* 434 F.2d 1011, 1012–13 (6th Cir. 1970) (upholding constitutionality of tax on corporation that permitted its profits to accumulate beyond the reasonable needs of the business; citing to *Northwest Steel Rolling Mills* in rejecting taxpayer's claim that a tax based on its earnings accumulated over 60 years is a tax on capital and not on income and violated the Sixteenth Amendment). In short, imposing a tax on accumulated earnings is a tax on income and not a direct tax requiring apportionment.

### III.  Apportionment is irrelevant to income tax; the Moores' claim that § 965 is a direct tax is unavailing.

The limitation on Congress's authority to impose a direct tax has existed since the Constitution's inception, and despite various challenges, has never been a bar to the ability to tax undistributed earnings and profits. The Constitution grants Congress plenary taxing power. Article I, Section 8, clause 1 provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises." The Supreme Court has emphasized repeatedly that Congress's taxing power is "exhaustive and embraces every conceivable power of taxation." *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 12–13 (1916); *Steward Mach. Co. v. Davis*, 301 U.S. 548, 581–83 (1937). The constitutional limitations are "not so much a limitation upon the complete and all-embracing authority to tax, but in their essence . . . simply regulations concerning the mode in which the plenary power was to be exerted." *Brushaber*, 240 U.S. at 13.

The only limitations on taxing power are that "Duties, Imposts and Excises shall be uniform throughout the United States" (U.S. Const. art. I, § 8, cl. 1); "No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

14

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

directed to be taken" (U.S. Const. art. I, § 9, cl. 4); and "No Tax or Duty shall be laid on Articles exported from any State" (U.S. Const. art. I, § 9, cl. 5). In addition, the Sixteenth Amendment relieves income taxes from the apportionment requirement of Article I, Section 9, clause 4. Aside from exports, these limitations address only *how* Congress may tax, not *what* it may tax.

The precise meaning of direct tax is not entirely clear, but the historical context of its inclusion in the Constitution and early Supreme Court case law indicate that it covers only capitation taxes and taxes on property. The need for plenary taxing power was a driving force in developing the Constitution. *See* Calvin H. Johnson, *Fixing the Constitutional Absurdity of the Apportionment of Direct Tax*, 21 Const. Comment. 295, 297–98 (2004); Bruce Ackerman, *Taxation and the Constitution*, 99 Colum. L. Rev. 1, 6–7 (1999).

The Supreme Court's decision in *Hylton v. United States*, 3 U.S. 171 (1796), the first case to address the meaning of direct tax, confirms this view. In *Hylton*, the plaintiff argued unsuccessfully that a federal carriage tax was unconstitutional because it was a direct tax that had to be apportioned. 3 U.S. at 172–73. The justices opined that direct tax includes only those taxes that are susceptible of apportionment in the first instance, for otherwise absurd results would attain. *Id.* at 174, 179, 181–82. Justice Paterson recalled that the requirement of apportionment for direct taxes was intended as a resolution on the treatment of slaves, not as a restriction on Congress's taxing authority, and concluded that "[t]he rule, therefore, ought not to be extended by construction." *Id.* at 177–78. The justices also opined, in dicta, that the Framers understood direct taxes to include only capitation taxes and taxes on land. *Id.* at 175–77, 183.

This narrow view of direct tax prevailed for 100 years and was applied by a unanimous Supreme Court in subsequent cases upholding various federal taxes. *E.g.*, *Springer v. United States*, 102 U.S. 586 (1880) (individual income tax); *Scholey v. Rew*, 90 U.S. 331, 347 (1874)

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

15

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1    (succession tax); *Veazie Bank v. Fenno*, 75 U.S. 533 (1869) (tax on issuance of circulating bank

2    notes); *Pac. Ins. Co. v. Soule*, 74 U.S. 433 (1868) (tax on income of insurance companies).

3            The only case in which the Supreme Court departed from this view was *Pollock v.*

4    *Farmers' Loan & Trust Co.*, 158 U.S. 601 (1895), which struck down the first income tax

5    statute. There, the Court held that a direct tax included a tax on income from real and personal

6    property on the theory that such a tax was, in substance, a tax on the property itself. *Id.* at 637. In

7    1913, the Sixteenth Amendment was ratified to nullify *Pollock*'s holding that a tax on income

8    from real and personal property is a direct tax that must be apportioned. *See Brushaber*, 240 U.S.

9    at 17–18 (explaining that Congress intended the Sixteenth Amendment to preclude future

10   application of *Pollock* to income derived from property).

11           Though *Pollock* has never been explicitly overruled, every aspect of its reasoning has

12   been eroded. *Brushaber*, 240 U.S. at 17–18; *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112–13

13   (1916) (rejecting taxpayers' claim that denied depletion deduction, resulting in greater income,

14   was akin to a tax on property, not income); *see also South Carolina v. Baker*, 485 U.S. 505, 520–

15   25 (1988); *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 480, 487 (1939). The subsequent

16   case law regarding direct tax restored the narrow interpretation accorded the term in *Hylton*.

17   Alan O. Dixler, *Direct Taxes under the Constitution: A Review of the Precedents*, 113 Tax Notes

18   1177, 1184–88 (2006). Thus, there is no sound basis for a broad interpretation of direct tax.

19   Based on the foregoing authorities, and consistent with "[t]he elementary rule . . . that every

20   reasonable construction must be resorted to, in order to save a statute from unconstitutionality,"

21   *Rust v. Sullivan*, 500 U.S. 173, 190 (1991), a narrow interpretation of direct tax, as including

22   only a tax on property and a capitation tax, is correct.

23

24

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)                                16

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

In sum, § 965's inclusion in income of undistributed foreign earnings falls squarely within the established definition of income under the Sixteenth Amendment, and does not constitute a direct tax. The Moores fail to state claim on their Apportionment Clause challenge, and the Court can now move on to their retroactivity challenge under the Due Process Clause.

## IV.    Section 965 operates prospectively.

On its face and as applied, § 965 is not retroactive. Section 965 states that it applies to the last taxable year of a DFIC "which begins before January 1, 2018," or in effect, tax years ending in 2017 or later. While § 965 measures income by reference to prior accumulated earnings, that is not considered retroactive under case law. Examining the text and impact of § 965 shows there is no colorable argument that the statute is retroactive.

### A.  The legal standard on retroactivity first examines the statutory text, then its practical application.

The Ninth Circuit has adopted a two-step framework to determine if a statute is retroactive:

- First, the court must "determine whether the statute . . . clearly expresses that the law is to be applied retroactively."

- Second, if the statute is not expressly retroactive, then the court must "consider whether application of the regulation would have a retroactive effect by 'attaching new legal consequences to events completed before its enactment.'"

*Sacks v. SEC*, 648 F.3d 945, 951 (9th Cir. 2011) (citing *Mejia v. Gonzales*, 499 F.3d 991, 997 (9th Cir. 2007)). If the statute does have retroactive effect, it is applied retroactively only if there is "clear congressional intent" favoring retroactive application.[11] *Id.* (citing *Koch v. SEC*, 177

---

[11] Unless there is clear congressional intent favoring retroactivity, courts typically interpret a statute in a way to avoid the retroactivity. *Sacks*, 648 F.3d at 951 (citing *Koch,* 177 F.3d at 786). This is a commonly known canon of

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)
17
**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1   F.3d 784, 786 (9th Cir. 1999), quoting *Landgraf*, 511 U.S. at 280). *See also Fairweather Fish,*

2   *Inc. v. Pritzker*, No. C14-5685 BHS, 2016 WL 6778781, at *7–10 (W.D. Wash. Nov. 16, 2016)

3   (describing and applying Ninth Circuit retroactivity test).

4          The second step of the framework draws explicitly from the Supreme Court's

5   retroactivity standard in *Landgraf*: "whether the new provision attaches new legal consequences

6   to events completed before its enactment." *Landgraf v. USI Film Products*, 511 U.S. 244, 269–

7   70 (1994). This standard is based on Justice Story's principle that "every statute, which takes

8   away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes

9   a new duty, or attaches a new disability, in respect to transactions or considerations already past,

10  must be deemed retrospective." *Id.* at 269 (citing *Calder v. Bull*, 3 U.S. 386 (1798) and *Dash v.*

11  *Van Kleeck*, 7 Johns. 477 (N.Y. 1811)). However, a statute is not retroactive "merely because it

12  is applied in a case arising from conduct antedating the statute's enactment." *Id.* Courts must

13  analyze "the nature and extent of the change in the law and the degree of connection between the

14  operation of the new rule and a relevant past event." *Id.* at 270. The Supreme Court reaffirmed

15  the *Landgraf* standard in a later case, adding that "[t]he inquiry into whether a statute operates

16  retroactively demands a commonsense, functional judgment." *INS v. St. Cyr*, 533 U.S. 289, 321

17  (2001).

18          **B.  On its face and by its own terms, § 965 is not retroactive.**

19          The effective date of § 965 is the same date as the TCJA's enactment: December 22,

20  2017. *See* Pub. L. No. 115-97, title I, § 14103(a), 131 Stat. 2054, 2195–2207 (2017). Section 965

21

22  _____

23  construction: the presumption against retroactivity. The Ninth Circuit's two-step framework often comes into play
    when applying this presumption. *E.g.*, *Fairweather Fish*, 2016 WL 6778781, at *7–10. But the presumption is not
    relevant here because § 965 is not retroactive, and even if it were retroactive, the result was intended by Congress
24  and should be analyzed for constitutionality under the *Carlton* test. *Infra* note 15; Section V.

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

states that it increases the subpart F income of a "deferred foreign income corporation" (DFIC) in "the last taxable year of [the DFIC] which begins before January 1, 2018." 26 U.S.C. § 965(a). Section 965 recognizes that increasing a DFIC's subpart F income means that its U.S. shareholders' gross income will increase under § 951(a), in accordance with their pro rata share of the DFIC's income.[12] *See* 26 U.S.C. § 965(b)-(c), (f). Thus § 965, by its terms, applies only to a single, current tax year of a DFIC ending in 2017 or 2018 (depending on the DFIC's accounting period), and to its U.S. shareholders' tax year in which or with which the DFIC's tax year ends—generally 2017 or 2018.[13] In other words, the text of § 965 indicates that it is purely prospective.

To the extent the Moores argue § 965 is retroactive because it was enacted in December 2017 but applies to tax years beginning in calendar year 2017, the Supreme Court has generally upheld the application of an income tax statute to the entire calendar year in which enactment took place. *E.g.*, *United States v. Carlton*, 512 U.S. 26, 32–33 (1994); *United States v. Darusmont*, 449 U.S. 292, 296–97 (1981). The Supreme Court has recognized that Congress almost always enacts tax legislation with an effective date prior to the date of actual enactment—typically limited to the preceding portion of the current calendar year. *Carlton*, 512 U.S. at 32–33; *Darusmont*, 449 U.S. at 296–97. Thus, Congress followed settled law in making § 965 apply to tax years ending in 2017 and after.

---

[12] The U.S. shareholder's gross income is then taxed currently under other provisions. *Infra* Section IV.C.

[13] It is possible, in certain cases, for a U.S. person, who owns an indirect interest in a DFIC through a domestic pass-through entity, to have an income inclusion in years after 2018. In any event, an income inclusion occurring after 2018 would not be retroactive.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1          **C.  Section 965 has no retroactive effect when applied.**

2          Section 965 does not attach "new legal consequences" to prior tax years. As applied,

3   § 965 requires taxpayers to include additional amounts (*i.e.*, certain accumulated earnings and

4   profits) in their *current* gross income, which is then taxed *currently*. 26 U.S.C. §§ 965(a), 951(a).

5   Specifically, § 965 increases DFICs' subpart F income, which in turn increases their U.S.

6   shareholders' gross income under § 951(a). Section 965 is one of many provisions within the

7   subpart F framework that collectively define what is included in a taxpayer's gross income. *See*

8   26 U.S.C. §§ 951-956, 959, 960, 962, 964. This subpart F gross income is combined with other

9   gross income and ultimately taxed at current rates under §§ 1 or 11.

10         Importantly, the income inclusion resulting from § 965 has prospective impact only: it

11  increases affected U.S. shareholders' gross income in a current year, generally either 2017 or

12  2018.[14] It does not reach back and increase their subpart F income in prior tax years. Nor does it

13  make a company's earnings and profits taxable in a prior year. Moreover, § 965 does not punish

14  U.S. shareholders for having deferred tax on the foreign corporation's accumulated earnings,

15  such as by imposing back taxes, late penalties, or interest. Section 965 results only in a current

16  income inclusion, which has the benefit of being taxed at a reduced rate.

17         The crux of the Moores' argument revolves around how § 965 calculates current income:

18  by reference to post-1986 earnings and profits on which tax has been deferred. *See* 26 U.S.C.

19  § 965(a), (d); Complaint, ¶¶ 12, 39-43. The Moores challenge the inclusion of post-1986

20  accumulated earnings as taxing "old" income. Complaint, ¶¶ 12, 39-43. However, the Moores'

21

22

23  ───────────────────────
    [14] *Supra* note 13 (explaining potential cases where the income inclusion occurs in years after 2018).

24
    U.S. Motion to Dismiss                          20                    **U.S. DEPARTMENT OF JUSTICE**
    (Case No. 2:19-cv-01539-JCC)                                          Tax Division, Western Region
                                                                          P.O. Box 683
                                                                          Washington, D.C. 20044
                                                                          Telephone: 202-616-3822

1    arguments have been made and rejected both within the subpart F context and elsewhere in the

2    tax code. The case law shows, as matter of law, that § 965 is not retroactive.[15]

3          1.   *Measuring current income with reference to past conduct does not make § 965*
               *retroactive.*

4
          (a)  Subpart F inclusions based on prior year earnings have been upheld as non-

5               retroactive.

6          In *Dougherty v. Commissioner*, 60 T.C. 917, 928–30 (1973), the taxpayer challenged the

7    constitutionality of subpart F, and specifically, the application of § 956 with respect to earnings

8    and profits accumulated prior to the enactment of subpart F.[16] The Tax Court rejected the

9    taxpayer's retroactivity argument and upheld the statute, finding that the relevant taxable event—

10   an increase in earnings invested in U.S. property (and thus, income)—occurred during a year

11   subject to the statute. *Id.* at 929. Congress had power to tax that income "although the measure of

12   the income is generated by income of a past year prior to the effective date of the statute." *Id.*

13   Like the provision at issue in *Dougherty*, § 965 increases the amount of current income that is

14   subject to tax, and measures that income by reference to past accumulations of earnings and

15   profits. This is not a retroactive application.

16          (b)  Other taxes on income derived from prior earnings have been upheld.

17          Outside the subpart F context, the Supreme Court has found taxes on current income to

18   be non-retroactive even if the income derives from earnings accumulated before the law's

19

20   [15] To the extent the Moores argue that § 965's reference to the post-1986 earnings of a DFIC is retroactive on its
     face, that contravenes the case law discussed in this section. Assuming this argument passes muster (which it should
     not), then § 965 should be analyzed under the *Carlton* test for constitutionality. *Infra* Section V . The presumption
21   against retroactivity would not apply because the reference to post-1986 earnings and profits is clearly intended by
     the statutory text. *See Sacks*, 648 F.3d at 951.

22   [16] Section 951(a)(1)(B) generally requires a U.S. shareholder to include in its current gross income its pro rata share
     of the CFC's earnings invested in United States property. The amount to be included is limited to the U.S.
23   shareholder's share of the "applicable earnings" of the CFC. 26 U.S.C. § 956(a). The "applicable earnings" of the
     CFC are determined by reference to § 316(a), which includes current-year earnings and profits and those
     accumulated after February 28, 1913. *See* 26 U.S.C. § 956(b).

24
        U.S. Motion to Dismiss                          21                **U.S. DEPARTMENT OF JUSTICE**
        (Case No. 2:19-cv-01539-JCC)                                     Tax Division, Western Region
                                                                         P.O. Box 683
                                                                         Washington, D.C. 20044
                                                                         Telephone: 202-616-3822

enactment. In *Lynch v. Hornby*, 247 U.S. 339, 343–44 (1918), the Supreme Court upheld an income tax on dividends paid out of earnings and profits that had accumulated before the income tax became legal. The Court recognized that, while dividends might appear to be a realization of an inchoate interest in surplus corporate assets, dividends "are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past." *Id.* at 344. The dividends themselves were paid after the effective date of the income tax, and therefore, were not taxed retroactively.[17] *Id.* at 340–42, 344; *see also Peabody v. Eisner*, 247 U.S. 347, 348–50 (1918) (dividends paid in stock of another company were taxable as income, although based on earnings accrued before the income tax became legal). Under *Hornby*, § 965 is not retroactive; it, too, increases current income based on earnings accumulated before its enactment.[18]

       (c)  <u>Taxes on income derived from prior contracts have been upheld as non-retroactive.</u>

Many cases have upheld tax statutes as non-retroactive when applied to current payments received (or losses incurred) under contracts predating the statute's enactment. For example, in *Polone v. Commissioner*, 505 F.3d 966, 969 (9th Cir. 2007), *cert. denied*, 552 U.S. 1280 (2008), the Ninth Circuit considered an amendment to § 104 that changed the types of settlement payments that qualified for income exclusion. The court held that revised § 104 was not retroactive when applied to settlement payments received after its effective date, even if the

---

[17] The *Hornby* issue appears not to have arisen again, because later income tax laws only taxed dividends declared out of earnings that accrued after the Sixteenth Amendment was ratified. *See, e.g.*, 26 U.S.C. § 316(a); *Hornby*, 247 U.S. at 345.

[18] Accumulated earnings and profits, in fact, are a common measure for tax. For example, dividends are taxed based on earnings accumulating after February 28, 1913. *See* 26 U.S.C. § 316(a).

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

underlying settlement was executed before the law became effective. *Id.* at 971–73. Likewise, in

*Snell v. Commissioner*, 97 F.2d 891, 892–93 (5th Cir. 1938), the Fifth Circuit held that

installment payments under a real estate contract were ordinary income under a newer law, even

though, when the contract was entered into, the real estate qualified as a capital asset. Because

the taxpayer elected to defer realization of profits through installments, he took the risk that the

law might change and his installments would "fall under such provisions of the law as might be

of force at their maturity." *Id.* at 893.

Similar examples abound in the case law. *See, e.g.*, *Ziegler v. Comm'r*, 282 F. App'x 869,

869–70 (2d Cir. 2008) (passive loss limitations applied to losses incurred after enactment, on

investment made prior to enactment); *Picchione v. Comm'r*, 440 F.2d 170, 172–73 (1st Cir.

1971) (installment income from sale of copyright taxed as ordinary income, even though

copyright had been a capital asset at time of sale); *Mostowy v. United States*, 24 Cl. Ct. 193, 195

(1991) (repeal of capital gains deduction applied to gain received after repeal, under contract

predating repeal), *aff'd per curiam*, 966 F.2d 668 (Fed. Cir. 1992); *Estate of Kearns v. Comm'r*,

73 T.C. 1223, 1224–25 (1980) (minimum-tax provision passed in 1976 applied to installment

payment received in 1976, under a 1972 sale).

These "prior contract" cases stand for the principle that people who opt to defer tax run

the risk of future legal changes that might scuttle their expectations. *E.g.*, *Snell*, 97 F.2d at 893;

*Picchione*, 440 F.2d at 173 (changes in tax laws "are as inevitable as taxation itself," and

taxpayer assumed risk by spreading realization of income over many years); *Golden v. Comm'r*,

47 B.T.A. 94, 95 (1942) (similar). Here, KisanKraft's U.S. shareholders, including the Moores,

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

chose to accumulate earnings instead of distributing them,[19] thus deferring taxes on their share of KisanKraft's income. In doing so, they accepted the risk that KisanKraft's earnings might be taxed differently to them in the future, including the risk that the expected tax deferral could change or be eliminated.

In sum, case law establishes that § 965 is not retroactive merely because it affects income originating from prior earnings, or because it changes the rules on tax deferral.

### 2. Frustrated expectations do not make § 965 retroactive.

Outside the tax sphere, courts have upheld new legal restrictions as non-retroactive even if they frustrate prior expectations or impose new burdens on ongoing behavior. In *Chemical Waste Management*, the D.C. Circuit held that EPA leachate regulations were not retroactive as applied to leachate derived from wastes that were not deemed hazardous when they were disposed. *Chem. Waste Mgmt., Inc. v. EPA*, 869 F.2d 1526, 1532, 1536–37 (D.C. Cir. 1989) (finding that new rule governed only treatment or disposal of leachate after rule's promulgation, and did not penalize prior disposal). The court rejected the argument that landfill operators could not have foreseen the new rule when they decided to accept certain wastes in the past, stating:

> It is often the case that a business will undertake a certain course of conduct based on the current law, and will then find its expectations frustrated when the law changes. This has never been thought to constitute retroactive lawmaking, and indeed most economic regulation would be unworkable if all laws disrupting prior expectations were deemed suspect.

*Id.* at 1536. The court also recognized that the "EPA has no other statutory tool for assuring *prospectively* that proper management [of leachate] will occur." *Id.* at 1537. In other words, any law aimed at ongoing behavior will likely upset prior expectations.

---

[19] Even if Mr. Moore did not control the distribution of KisanKraft's earnings, he chose to invest in a company that was accumulating earnings, and chose to remain a minority shareholder.

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

24

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

Similarly, in *American Mining Congress*, the Ninth Circuit held that an EPA rule

mandating permits for inactive mines was not retroactive, even though it devalued the return on

prior investments in those mines. *Am. Min. Cong. v. EPA*, 965 F.2d 759, 769–70 (9th Cir. 1992)

(noting that EPA rule did not penalize mine owners for past activities). "The fact that the present

contamination [was] the result of past mining activities [did] not make EPA's rule retroactive."

*Id.* at 770. And in *Mobile Relay Associates*, the D.C. Circuit held that a FCC rule restricting the

scope of licenses on certain electromagnetic spectrums operated prospectively, even though it

frustrated a company's expectations as to its previously bought licenses. *Mobile Relay Assocs. v.

FCC*, 457 F.3d 1, 10–11 (D.C. Cir. 2006).

In the real property context, the Ninth Circuit has recognized another classic example of

why frustrated expectations do not make a law retroactive. Property taxes or zoning laws can

change after someone buys a property, potentially upsetting the expectations that prompted them

to buy in the first place. Yet, "a change in the property tax regime would not be considered

retroactive with respect to all who had purchased property prior to the effective date of the

amendment." *Polone*, 505 F.3d at 972; *see also Landgraf*, 511 U.S. at 269 n.24 (listing examples

of "uncontroversially prospective statutes [that] may unsettle expectations").

Section 965 is no different from these comparable cases. It imposes a prospective

change—a new income inclusion—that arguably frustrates expectations based on prior law. The

Moores opted to invest in KisanKraft, and thought the tax deferral on KisanKraft's earnings

could continue indefinitely. *See* Complaint, ¶¶ 11, 19-20. But § 965 is not retroactive simply

because the Moores had to adjust their prior expectations. Every new tax statute potentially

impacts prior expectations. Like ordinary changes to real property laws, § 965 affects decisions

the Moores made based an earlier state of the law. And like the EPA rules discussed above,

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

25

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

§ 965 does not punish the Moores for their past behavior, or change their liabilities in past years where they enjoyed the benefits of deferral. It only ends their tax deferral going forward.

Analyzed another way, § 965 is not retroactive just because it targets ongoing behavior that began years earlier (*i.e.*, tax deferral). The EPA laws in *Chemical Waste Management* and *American Mining Congress* regulated ongoing pollution stemming from past activities. *Chem. Waste Mgmt.*, 869 F.2d at 1537; *Am. Min. Cong.*, 965 F.2d at 770. Similarly, the predicate action in § 965 is not past tax deferral, but ongoing tax deferral. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34–36, 44 (2006) (upholding immigration statute as non-retroactive because the "predicate action" was the undocumented immigrant's ongoing decision to remain in the country, not his illegal reentry 15 years before the statute's effective date). For instance, KisanKraft could have distributed some of its accumulated earnings in 2010, and its U.S. shareholders generally would have paid U.S. tax on those earnings. Assuming the tax was paid, § 965 then would not have applied to those earnings.

Accordingly, the case law broadly supports a finding that § 965 is not retroactive as applied to the Moores. *Landgraf*, 511 U.S. at 269 (statute does not operative retrospectively merely because it is applied in a case arising from conduct predating a statute's enactment). Congress can tax current income derived from prior earnings or contracts, and act to restrict ongoing conduct. The Moores' reliance on prior tax law, and their frustrated expectations, are not actionable.

**V.    Under *Carlton*, § 965 has both a legitimate purpose and rational means.**

Assuming the Moores' misguided retroactivity argument has any merit (which it does not), the Supreme Court has applied the following standard to determine whether a retroactive tax statute satisfies constitutional due process: the retroactive application of the statute must be

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

26

1  (1) supported by a legitimate legislative purpose (2) furthered by rational means. *United States v.*

2  *Carlton*, 512 U.S. 26, 30–31 (1994). This due process standard encapsulates the Supreme Court's

3  prior articulation of the standard in *Welch v. Henry*, 305 U.S. 134, 147 (1938), which asked

4  whether the retroactive application is "so harsh and oppressive as to transgress the constitutional

5  limitation." *Carlton*, 512 U.S. at 30–31.

6        The Court should uphold § 965 under the *Carlton* standard. Section 965 is a one-time

7  transition tax that ensures accumulated deferred income from the pre-TCJA system is taxed. The

8  pre-TCJA system was one of worldwide taxation. It allowed taxpayers to defer, but not

9  eliminate, tax on certain CFC earnings until those earnings were distributed to its U.S.

10  shareholders. The TCJA ends this tax deferral as it moves the United States toward a more

11  territorial tax system. *See* H.R. Rep. No. 115-466, at 595, 598–99, 606–07, 613–14 (2017) (Conf.

12  Rep.). Going forward, the TCJA provides that distributed CFC earnings often will not be taxed.

13  *Id.* at 595, 598–99. This is accomplished through a participation exemption that allows certain

14  foreign-source dividends to be repatriated tax-free. *Supra* Bkgd. Section. Against this backdrop,

15  § 965 serves the legitimate legislative purpose of protecting revenue and preventing an

16  unexpected windfall to taxpayers whose CFCs have stockpiled deferred income that could be

17  repatriated tax-free under the new system.

18        Section 965 furthers this legislative purpose by rational means. To accomplish its

19  purpose, § 965 necessarily encompasses all deferred CFC income that has accumulated under the

20  pre-TCJA system, from 1987 to 2017. The year 1987 is a rational starting point because a CFC's

21  earnings and profits are measured from "taxable years beginning after December 31, 1986" (*i.e.*,

22  1987). 26 C.F.R. § 1.964-1(a); *see* 26 U.S.C. § 965(d)(3) (mirroring language). Section 965

23  makes all of the deferred income taxable in a CFC's first post-TCJA tax year by treating it as

24

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

27

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

subpart F income (*i.e.*, income presently taxable to its U.S. shareholders) for that year. 26 U.S.C. § 965(a). This stockpiled CFC income has never been taxed, but was always meant to be taxed. Without § 965, the stockpiled income could forever escape taxation, as many U.S. shareholders could repatriate the income after the TCJA without paying tax. And even though not all U.S. shareholders enjoy tax-free repatriation under the TCJA, it is reasonable and administratively efficient to treat all CFC earnings the same under § 965. This ensures that tax deferral of subpart F income uniformly ends for all taxpayers. *See* H.R. Rep. No. 115-466, at 606–07. It also avoids the IRS having to track subpart F income separately depending on whether a taxpayer receives tax-free repatriation under the TCJA.

While taxpayers may dislike the "mandatory repatriation" mechanism of § 965, they cannot defeat it by claiming lack of foreseeability. Complaint, ¶¶ 39-42. Taxpayers have no vested rights in the Internal Revenue Code. *Carlton*, 512 U.S. at 33. A taxpayer's alleged reliance, expectation, or lack of notice is not sufficient to establish a constitutional violation. *Id.* at 33–34. Congress can readjust the burdens of tax at any time, which by definition impacts taxpayer expectations. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984) ("legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations"); *Welch*, 305 U.S. at 146–47 (taxation is "a way of apportioning the cost of government"; "no citizen enjoys immunity from [the tax] burden").

Following the Moores' argument to its logical conclusion results in an absurd outcome. In essence, they argue that the indefinite tax deferral they enjoyed pre-TCJA somehow created an enforceable right to continue deferring tax. Complaint, ¶¶ 11, 41. But no person enjoys the right to freeze the state of the law they relied upon in arranging their affairs. *Landgraf*, 511 U.S. 244, 269 n.24 (1994) ("If every time a man relied on existing law in arranging his affairs, he

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1    were made secure against any change in legal rules, the whole body of our law would be ossified

2    forever."); *Carlton*, 512 U.S. at 33–34; *supra* Section IV.C.2.

3            Assuming any credence is given to the Moores' retroactivity position, courts have

4    repeatedly upheld retroactive tax legislation against a due process challenge. *See, e.g.*, *Carlton*,

5    512 U.S. at 30 (citing cases); *Licari v. Comm'r*, 946 F.2d 690, 693–95 (9th Cir. 1991) (4-year

6    retroactive application of higher penalty rates for substantial understatements of tax); *Canisius*

7    *College v. United States*, 799 F.2d 18, 25–27 (2d Cir. 1986) (4-year retroactive application of

8    statute requiring payment of FICA taxes on contributions made to section 403(b) "salary

9    reduction" plans), *cert. denied*, 481 U.S. 1014 (1987). While many tax statutes involve two or

10   fewer years of retroactivity, the Supreme Court has never imposed a time limit on a tax statute's

11   application. *Licari*, 946 F.2d at 695; *Wiggins v. Comm'r*, 904 F.2d 311, 316 (5th Cir. 1990).

12   Instead, courts must engage in a case-by-case analysis under the *Carlton* standard, considering

13   "the nature of the tax and the circumstances in which it is laid." *Welch*, 305 U.S. at 147; *Licari*,

14   946 F.2d at 695; *Wiggins*, 904 F.2d at 316; *Canisius College*, 799 F.2d at 26–27. Section 965

15   passes the *Carlton* test by using rational means to accomplish a legitimate purpose.

16           Furthermore, § 965 is distinguishable from the few cases where courts have struck down

17   retroactive tax statutes. Those cases are generally decades old and relate to "wholly new" taxes

18   that were imposed retroactively. *See Untermyer v. Anderson*, 276 U.S. 440, 444–46 (1928)

19   (striking down the nation's first gift tax as applied to a gift made prior to the statute's

20   enactment); *Blodgett v. Holden*, 275 U.S. 142, 147 (1927) (per curiam) (plurality opinion on

21   same issue as *Untermyer*; holding that the nation's first gift tax cannot be applied to a gift made

22   prior to the statute's enactment, with the justices split on whether to rule on constitutional

23   grounds or statutory interpretation grounds); *Nichols v. Coolidge*, 274 U.S. 531, 533, 542–43

24

U.S. Motion to Dismiss                          29                **U.S. DEPARTMENT OF JUSTICE**
(Case No. 2:19-cv-01539-JCC)                                     Tax Division, Western Region
                                                                P.O. Box 683
                                                                Washington, D.C. 20044
                                                                Telephone: 202-616-3822

1 (1927) (holding that decedent's gross estate could not include property transferred by decedent

2 12 years prior to passage of estate tax statute). The Supreme Court has recognized that those

3 cases "were decided during an era characterized by exacting review of economic legislation

4 under an approach that has long since been discarded." *Carlton*, 512 U.S. at 34. To the extent

5 their authority survives, they are limited to situations involving "the creation of a wholly new

6 tax," and do not control when "assessing the constitutionality of subsequent amendments that

7 bring about certain changes in operation of the tax laws." *Id.* Section 965 does not impose a new

8 tax, but instead implements a change to the operation of subpart F. Thus, the outdated, *Lochner*

9 Era tax cases on retroactivity have no significance here.

10   Examples outside the tax sphere are informative as well. The *Carlton* standard that

11 applies to tax statutes is the same as that applied to retroactive economic legislation. *Carlton*,

12 512 U.S. at 30–31; *Pension Benefit Guaranty Corp.*, 467 U.S. at 733. Courts have upheld the

13 following laws upon due process challenge: (1) the Federal Coal Mine Health and Safety Act of

14 1969, under which coal mine operators had to compensate former employees who had stopped

15 working in the industry before the statute was enacted, *Usery v. Turner Elkhorn Mining Co.*, 428

16 U.S. 1, 14–20 (1976); (2) a 1960 expansion to the Anti-Kickback Act that applied to kickbacks

17 made an indefinite number of years earlier, *United States v. Perry*, 431 F.2d 1020, 1023–24 (9th

18 Cir. 1970);[20] and (3) the Portal to Portal Act of 1947, which eliminated causes of action that had

19 accrued up to 9 years earlier under the Fair Labor Standards Act, *Battaglia v. Gen. Motors Corp.*,

20 169 F.2d 254, 259–61 (2d Cir. 1948). The upshot of these examples is that Congress can change

21 legislative policy in a manner that has substantial retroactive impact without running afoul of the

22

23 [20] In *Perry*, the Ninth Circuit stated "there can be no due process objection when the defendants' course of conduct is in violation of the longstanding public policy against kickbacks," but declined to definitively resolve the constitutional question as to the defendants without a more developed factual record. 431 F.2d at 1024.

24

Constitution. *See Pension Benefit Guaranty Corp.*, 467 U.S. at 730 (recognizing legislation can "impose a new duty or liability based on past acts").

In the case of § 965, Congress is not enacting a new policy so much as ensuring taxpayers do not reap a windfall during the transition to the post-TCJA tax system. But assuming § 965 imposes a "new" tax, it is analogous to situations in which Congress has decided to switch policies. This necessarily entails a rebalancing of the burdens imposed upon citizens. *See Carlton*, 512 U.S. at 33 (taxation is "a way of apportioning the cost of government"); *Turner Elkhorn*, 428 U.S. at 18–19 (Congress can spread the costs of employee disabilities among "those who have profited from the fruits of their labor", and choose how to rationally impose that burden). In departing from a worldwide tax system, Congress had to address the potential windfall for CFCs that had stockpiled deferred income over many years. Congress chose § 965 as its solution to curb the windfall, and it was a rational measure.

In sum, § 965 is not retroactive, and even if it were, it is constitutional under the *Carlton* test. The Moores fail to state a claim on their Due Process Clause challenge.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Moores' Complaint under Rule 12(b)(6). The Moores do not state a plausible claim to relief on their direct tax claim (Count One) or on their retroactivity claim (Count Two).

//

//

//

//

//

U.S. Motion to Dismiss
(Case No. 2:19-cv-01539-JCC)

31

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822

1   Dated: February 24, 2020

2

3                                        Respectfully submitted,

4                                        RICHARD E. ZUCKERMAN
                                         Principal Deputy Assistant Attorney General
5
                                         /s/ Kari M. Larson
6                                        KARI M. LARSON
                                         Senior Litigation Counsel
7                                        JENNIFER Y. GOLDEN
                                         Trial Attorney
8                                        U.S. Department of Justice, Tax Division
                                         P.O. Box 683, Ben Franklin Station
9                                        Washington, D.C. 20044
                                         Tel: 202-616-3822 (Larson)
10                                       Tel: 202-307-6547 (Golden)
                                         Fax: 202-307-0054
11                                       Kari.M.Larson@usdoj.gov
                                         Jennifer.Y.Golden@usdoj.gov
12
                                         *Attorneys for the United States of America*
13

14

15

16

17

18

19

20

21

22

23

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 24, 2020, I served a copy of the foregoing document by filing a copy through the Court's CM/ECF system, which will send an electronic copy to:

James R. Morrison (jmorrison@bakerlaw.com)
Baker & Hostetler LLP
999 Third Avenue
Suite 3600
Seattle, WA 98104-4040

Andrew M. Grossman (agrossman@bakerlaw.com)
David B. Rivkin, Jr. (drivkin@bakerlaw.com)
Jeffrey H. Paravano (jparavano@bakerlaw.com)
Katherine L. McKnight (kmcknight@bakerlaw.com)
Nicholas C. Mowbray (nmowbray@bakerlaw.com)
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304

Competitive Enterprise Institute
Sam Kazman (Sam.Kazman@cei.org)
Devin Watkins (Devin.Watkins@cei.org)
1310 L Street NW, 7th Floor
Washington, D.C. 20005

*Attorneys for Plaintiffs*

/s/ Kari M. Larson
KARI M. LARSON
Senior Litigation Counsel, Tax Division
U.S. Department of Justice

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-616-3822