HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES G. MOORE and KATHLEEN F. MOORE,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Civil Action No. 2:19-cv-01539 JCC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Note on Motion Calendar: June 1, 2020<br><br>***Oral Argument Requested*** |

    Plaintiffs Charles G. Moore and Kathleen F. Moore hereby respond in opposition to Defendant's Motion To Dismiss and move for summary judgment. In support, Plaintiffs submit the following memorandum.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

## Table of Contents

Introduction ....................................................................................................................... 1

Background and Statement of Material Facts ................................................................... 3

    A.    The Mandatory Repatriation Tax ......................................................... 3

    B.    The Moores' Situation ........................................................................ 5

Legal Standard ................................................................................................................. 7

Argument ......................................................................................................................... 7

    I.    The Mandatory Repatriation Tax Violates the Apportionment Clause
Because It Is an Unapportioned Direct Tax ................................................. 7

        A.    The Mandatory Repatriation Tax Is an Unapportioned Direct Tax ...................... 8

        B.    The Mandatory Repatriation Tax Is Not an Income Tax Authorized
by the Sixteenth Amendment ........................................................ 9

            1.    The MRT Is Not a Tax on "Incomes" ..................................... 9

            2.    The Government Identifies No Authority Upholding a Tax
Like the MRT as a Tax on "Incomes" ...................................... 13

    II.    The Mandatory Repatriation Tax Violates the Fifth Amendment ............................... 17

        A.    The Mandatory Repatriation Tax Is Retroactive ................................. 17

        B.    The Mandatory Repatriation Tax's Violates the Fifth Amendment
Because It Is a Retroactive "Wholly New Tax" ................................. 20

        C.    Even if not a Wholly New Tax, the Mandatory Repatriation Tax
Flunks the *Carlton* Standard .......................................................... 23

Conclusion ..................................................................................................................... 27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - i
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

## **Table of Authorities**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................7

*Blodgett v. Holden*, 275 U.S. 142 (1927) .....................................................................21

*Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110 (1925) .........................................9

*Comm'r v. Fender Sales, Inc.*, 338 F.2d 924 (9th Cir. 1964) .......................................11

*Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426 (1955)..........................10, 11, 12, 14, 16

*Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203 (1990)........................12, 16

*Cooper v. United States*, 280 U.S. 409 (1930).............................................................21

*Corliss v. Bowers*, 281 U.S. 376 (1930) ......................................................................26

*Cottage Savings Assn. v. Comm'r*, 499 U.S. 554 (1991) ..............................................10

*Dougherty v. Comm'r*, 60 T.C. 917 (1973)...............................................14, 15, 16, 19

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) .....................................................17

*Eder v. Comm'r*, 138 F.2d 27 (2nd Cir. 1943)........................................................13, 14

*Eder v. Comm'r*, 47 B.T.A. 235 (1942) .......................................................................13

*Eisner v. Macomber*, 252 U.S. 189 (1920) ........................................................ *passim*

*Fernandez v. Wiener*, 326 U.S. 340 (1945) ...................................................................9

*Garlock v. Comm'r*, 489 F.2d 197 (1973) ..............................................................14, 16

*Gen. Motors Corp. v. Romein*, 503 U.S. 181 (1992) ....................................................24

*GPX Intern. Tire Corp. v. United States*, 780 F.3d 1136 (Fed. Cir. 2015)........18, 24, 25

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ..............................................................7

*Heiner v. Mellon*, 304 U.S. 271 (1938).....................................................................13, 14

*Helvering v. National Grocery Co.*, 304 U.S. 282 (1938) ............................................15

*Helvering v. Northwest Steel Rolling Mills*, 311 U.S. 46 (1940)..................................15

*INS v. St. Cyr*, 533 U.S. 289 (2001) ............................................................................19

*Ivan Allen Co. v. United States*, 422 U.S. 617 (1975) .................................................15

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994).......................................17, 18, 19

*Lynch v. Hornby*, 247 U.S. 339 (1918).........................................................................20

*Merchants' Loan & Trust Co. v. Smietanka*, 255 U.S. 509 (1921) ..............................10

*Miller v. Florida*, 482 U.S. 423 (1987)........................................................................17

*Moline Properties, Inc. v. Comm'r*, 319 U.S. 436 (1943) ...........................................13

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - ii
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

*Murphy v. I.R.S.*, 460 F.3d 79 (D.C. Cir. 2006).........................................................................10

*N. Carolina Dept. of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*,
    139 S. Ct. 2213 (2019).................................................................................................2, 26–27

*Nathel v. Comm'r*, 615 F.3d 83 (2d Cir. 2010)................................................................10, 12

*NetJets Aviation, Inc. v. Guillory*, 207 Cal.App.4th 26 (2012)....................................21–22

*New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934)..............................................................3

*NFIB v. Sebelius*, 567 U.S. 519 (2012).................................................................2, 7, 8, 9

*Nichols v. Coolidge*, 274 U.S. 531 (1927) ......................................................17, 20, 21

*Novelart Manufacturing Co. v. Comm'r*, 434 F.2d 1011 (6th Cir. 1970)....................................15

*Peabody v. Eisner*, 247 U.S. 347 (1918)......................................................................................20

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984) ........................................25

*Polone v. Commissioner*, 505 F.3d 966 (9th Cir. 2007) ............................................................20

*Prescott v. Comm'r*, 561 F.2d 1287 (8th Cir. 1977) ..................................................................15

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999).........................................................21, 22

*Quijano v. United States*, 93 F.3d 26 (9th Cir. 1996) ..............................................................10

*Randolph Products Co. v. Manning*, 176 F.2d 190 (3d Cir. 1949)................................................13

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989)........................22

*Sacks v. SEC*, 648 F. 3d 945 (9th Cir. 2011) ..............................................................................19

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F. 3d 1035 (9th Cir. 2010) .......................7

*Snell v. Comm'r*, 97 F.2d 891 (5th Cir. 1938) ..........................................................................20

*United States v. Carlton*, 512 U.S. 26 (1994) .................................................................. *passim*

*United States v. Darusmont*, 449 U.S. 292 (1981)......................................................................22

*United States v. Donruss Co.*, 393 U.S. 297 (1969) ..................................................................15

*United States v. Hemme*, 476 U.S. 558 (1986) ........................................17, 18, 19, 21, 24

*Untermyer v. Anderson*, 276 U.S. 440 (1928) ................................................2, 17, 21, 22

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1986) ..........................................................23

*Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409 (9th Cir. 1986)......................................................10

*Whitlock's Estate v. Comm'r*, 494 F.2d 1297 (10th Cir. 1974) ..............................................14, 16

*Whitlock's Estate v. Comm'r*, 59 T.C. 490 (1972)....................................................................14, 16

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - iii
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

## Constitutional Provisions, Statutes, and Rules

26 U.S.C. § 61 ...........................................................................................................................26

26 U.S.C. § 532 .........................................................................................................................16

26 U.S.C. § 535 .........................................................................................................................15

26 U.S.C. § 951 .......................................................................................................................3, 9

26 U.S.C. § 954 ...........................................................................................................................4

26 U.S.C. § 957 ...........................................................................................................................3

26 U.S.C. § 965 ................................................................................................................. *passim*

26 U.S.C. § 1362 .......................................................................................................................13

Fed. R. Civ. P. 12 .......................................................................................................................7

Fed. R. Civ. P. 56 .......................................................................................................................7

Pub. L. 63-16, § II(B), 38 Stat. 114 (1913) ............................................................................26

U.S. Const. amend. XVI ...........................................................................................................10

U.S. Const., Art I, § 2, cl. 3 .......................................................................................................7

U.S. Const., Art. I, § 9, cl. 4 ......................................................................................................7

## Other Authorities

163 Cong. Rec. S7546 (daily ed. Nov. 30, 2017) ...................................................................23

Economic Report of the President (2019) .................................................................................23

H.R. Rep. 115-240 (2017) ...................................................................................................11, 23

H.R. Rep. 115-466 (2017) .....................................................................................................4, 24

IRS, LB&I International Practice Service Concept Unit, Subpart F Overview (2014) ..........3, 26

Jim Tankersley et al., Republican Plan Delivers Permanent Corporate Tax Cut,
    N.Y. Times (Nov. 2, 2017) ....................................................................................................4

Joint Committee on Taxation, Present Law and Selected Proposals Related to the
    Repatriation of Foreign Earnings (2015) .................................................................3, 4, 18, 24

Mark E. Berg & Fred Feingold, *The Deemed Repatriation Tax—A Bridge Too Far?*,
    158 Tax Notes 1345 (2018) ...............................................................................................5, 15

Press Release, President Donald J. Trump's Tax Cuts are a Windfall for Americans,
    Mar. 14, 2018 .........................................................................................................................23

Treas. Reg. § 1.954-3 ..................................................................................................................4

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - iv
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

### Introduction

In 2005, Plaintiffs Charles and Kathleen Moore invested in their friend's vision of founding a farm-equipment supplier in India to provide India's underserved small-scale farmers with the tools they need to thrive. While that business, KisanKraft, had enormous success over the next dozen years, the Moores never received a dime from it. The plan from the beginning was for KisanKraft to reinvest its earnings to expand its reach and carry out its important mission, and that is what it did beginning in 2006, using its retained earnings to serve more communities across India. For the Moores, being able to see the good that KisanKraft was doing was its own reward.

And then, confirming that no good deed goes unpunished, they got the tax bill. In 2017, Congress enacted the Tax Cuts and Jobs Act ("TCJA"), which cut corporate tax rates and stopped taxing domestic corporations on much of their foreign business. To help fund those tax cuts, Congress created a new, one-time tax known alternatively as the "Deemed Repatriation Tax" or "Mandatory Repatriation Tax" ("MRT"). The MRT deems the reinvested earnings going back thirty years of certain foreign corporations with U.S. shareholders to be those shareholders' 2017 income and then taxes them on it. That so-called "income" is, by definition, money that shareholders did not receive. And for minority shareholders like the Moores, it is money that they lack the power to force the corporation to distribute to them, assuming that it is even possible to distribute earnings that were invested years ago in growing a business. Mr. Moore suspected that something about this fake-income tax was not quite on the level.

He was right. The MRT is that rare beast, an unapportioned direct tax, something that has not been seen since the Supreme Court slayed the last one in *Eisner v. Macomber*, 252 U.S. 189 (1920). That tax, like this new one, regarded a corporation's retained earnings from past years as its shareholders' income and sought to tax them on it, in the absence of any kind of realization event. That tax, *Macomber* held, was not an income tax at all, but a tax on the ownership of personal property—the shareholders' interest in the corporation's capital. And, as the Supreme Court recently reaffirmed, "taxes on personal property [are] direct taxes" that "must be apportioned

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 1
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

among the several States." *NFIB v. Sebelius*, 567 U.S. 519, 571 (2012) (citing *Macomber*). The MRT indisputably is not, and it is therefore invalid.

The Government strives mightily to find some precedent supporting its claim that the MRT is a tax on income authorized by the Sixteenth Amendment, but nothing (other than the tax rejected by *Macomber*) comes close. That is because the Sixteenth Amendment's exception from the apportionment requirement is limited to taxes on "incomes," which the Supreme Court has long understood to mean "undeniable accessions to wealth, *clearly realized*, and *over which the taxpayers have complete dominion*." *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) (emphases added). Yet taxpayers subject to the MRT clearly have realized nothing, and MRT liability is not triggered by any conceivable "taxable event," *id.*, such as an actual payment or transfer or repatriation of funds. Instead, it simply deems a corporation's accumulations of earnings over thirty years to be its U.S. shareholders' 2017 "income" and then taxes it as such. As far as Congress has gone in identifying "income" to tax in recent decades, it has never gone this far, for the reason that the Constitution denies it the power to do so.

In addition, the Constitution's Due Process Clause denies Congress the power to impose tax liability reaching back thirty years. Here, too, the MRT finds precedent only in a similarly retroactive new tax condemned by the Supreme Court as "arbitrary and invalid under the due process clause of the Fifth Amendment." *Untermyer v. Anderson*, 276 U.S. 440, 445 (1928). While constitutional due process permits "a modest period of retroactivity" when Congress adjusts existing taxes, *United States v. Carlton*, 512 U.S. 26, 32 (1994), this tax is new, and its thirty-year retroactive effect exceeds by decades any retroactive change to taxation that has ever been upheld. Unprecedented in its retroactive effect, and "arbitrary and irrational," *id.* at 30, in its attribution of "income" to persons who "have no right to demand that income and are uncertain ever to receive it," *N. Carolina Dept. of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2221 (2019), the MRT cannot be sustained so long as the Due Process Clause is understood to limit Congress's power to legislate retroactively.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 2
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

**Background and Statement of Material Facts**

A.      **The Mandatory Repatriation Tax**

The Mandatory Repatriation Tax is something new: a one-time tax imposed on U.S. persons by attributing to them the accumulated active business income of foreign corporations earned abroad over the prior thirty-year period that is not in any sense their own personal income, and doing so solely because they own shares.

The United States has long taxed its citizens, including corporations, on their worldwide income, and has for at least as long regarded corporations as separate entities from their shareholders, such that shareholders do not pay income tax on corporate earnings unless and until they are distributed to the shareholders. *See, e.g.*, *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 442 (1934). Thus, when a foreign corporation with U.S. shareholders retained earnings to reinvest in its business—typically called "active business income"—the U.S. shareholders were not subject to federal income tax on those earnings; only if and when they were distributed, such as through a dividend, would shareholders then pay tax on that income. *See* Joint Committee on Taxation, Present Law and Selected Proposals Related to the Repatriation of Foreign Earnings 2 (2015) ["JCT Report"].[1]

In limited circumstances, however, Congress has looked past the corporate form so as to prevent taxpayers from avoiding taxation of income reasonably regarded as theirs. One such provision is Subpart F, which was enacted to address the use of foreign corporations to avoid U.S. taxation. *See generally* IRS, LB&I International Practice Service Concept Unit, Subpart F Overview, at 3 (2014).[2] In general, Subpart F attributes to certain "United States shareholders"[3] of a "controlled foreign corporation" ("CFC")[4] a proportionate share of certain categories of the

---

[1] *Available at* https://www.jct.gov/publications.html?func=startdown&id=4795.

[2] *Available at* https://www.irs.gov/pub/int_practice_units/DPLCUV_2_01.PDF.

[3] Prior to the TCJA, a "United States shareholder" was a U.S. person owning directly, indirectly, or constructively at least 10 percent of the voting stock of a foreign corporation. IRS, Subpart F Overview, *supra*, at 3. The TCJA expanded the definition to include those owning at least 10 percent by vote *or by value*. 26 U.S.C. § 951(b).

[4] A foreign corporation whose ownership or voting rights are more than 50 percent owned by U.S. persons. 26 U.S.C. § 957(a).

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 3
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

CFC's current income. *Id*. at 3–4. This includes current passive income such as dividends, interest, and royalties not derived from the active conduct of the foreign corporation's business, as well as current income from certain related-party sales and service transactions that can be used to shift sales income from the U.S. to foreign jurisdictions so as to avoid U.S. tax. *Id*. at 4.[5]

What these income-attribution provisions do not include, however, is active business income properly attributable to the CFC's own business and efforts, such as when a CFC manufactures and sells products to unrelated third parties. 26 U.S.C. § 954(d); Treas. Reg. § 1.954-3(a)(4). That income was not subject to U.S. taxation unless or until repatriated to the U.S. through a distribution or loan to the U.S. shareholders or through an investment in U.S. property. JCT Report at 2. Absent such a repatriation, U.S. taxpayers have never been liable for U.S. tax on the active business income of foreign corporations. *Id*. at 13; H.R. Rep. 115-466, at 606 (2017).

The MRT changed that. The TCJA shifted U.S. corporate taxation from a worldwide system toward a territorial one—that is, one where corporations generally are taxed only on their domestic-source income. To partially fund this shift, as well as a cut in corporate tax rates, Congress needed a "pay-for." And it found one, in the accumulated foreign earnings of CFCs that had not been repatriated to U.S. shareholders.[6] *See id*. TCJA Section 14103(a), codified at 26 U.S.C. § 965, established a new one-time tax on these accumulated earnings known as the "Mandatory Repatriation Tax" or "Deemed Repatriation Tax." It deems CFCs' untaxed accumulations of earnings in years after 1986 to be the 2017 income[7] of their U.S. shareholders and then subjects that "deemed income" to U.S. taxation.[8] Specifically, those accumulated earnings are included in the 2017 income of U.S. taxpayers who own at least a 10 percent stake in a CFC and are taxed at a rate of 15.5 percent for earnings held in cash or cash equivalents and

---

[5] *See* 26 U.S.C. § 954(c) (addressing "Foreign Personal Holding Company Income"); *id*. § 954(d) (related-party sales income); *id*. § 954(e) (related-party services income).

[6] *See generally* Jim Tankersley et al., Republican Plan Delivers Permanent Corporate Tax Cut, N.Y. Times (Nov. 2, 2017), *available at* https://nyti.ms/2iV3TJI.

[7] Or, for some corporations, 2018 income. *See* 26 U.S.C. § 965(a).

[8] The MRT additionally applies to "any foreign corporation with respect to which one or more domestic corporations is a United States shareholder," as that term ("United States shareholder") is defined above. 26 U.S.C. § 965(e)(1). For ease of discussion, this filing refers to CFCs, as the broader definition is not relevant to any issue.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 4
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

8 percent otherwise. 26 U.S.C. § 965(a), (c).[9] The MRT takes no account of whether the CFC actually distributed its accumulated earnings or whether the U.S. taxpayer even had or has the ability to cause it to do so.

### B.    The Moores' Situation

Charles Moore is a U.S. citizen who resides in King County, Washington, with his wife Kathleen. Declaration of Charles G. Moore at ¶ 2 ("Moore Decl."). Through his work, he met and became friends with a colleague, Ravindra Kumar Agrawal ("Ravi"). *Id*. at ¶ 4. Ravi occasionally regaled Charles with tales from his regular visits to India. *Id*. at ¶ 5. In the early 2000s, following an India trip, Ravi explained to Charles that many small and marginal farmers in India were constrained by their lack of modern agricultural equipment. *Id*. Their hand tools were far less efficient and effective than what Americans could obtain even from local hardware stores. *Id*. Compounding the problem, many young people in India were leaving behind rural areas and moving to the cities, with the effect of further reducing rural farmers' access to labor and productivity. *Id*. With access to better equipment, Ravi told Charles, India's rural farmers could substantially improve their livelihoods. *Id*. at ¶ 6.

That insight led Ravi to launch a new business in India, KisanKraft Limited ("KisanKraft"), to supply better equipment to India's small-scale farmers. *Id*. Ravi founded the business in 2005 as an Indian Public Limited (effectively, a corporation). *Id*. at ¶ 7. The Moores were one of a handful of initial investors, putting up $40,000 in exchange for approximately 11 percent of KisanKraft's common shares. *Id*. at ¶ 9. The investment was a lot money for them, but they believed in KisanKraft's mission of improving the lives of India's small-scale farmers. *Id*. Charles agreed with Ravi's view that the best way for the business to succeed in its social and business missions would be for it to reinvest any earnings, so that it could grow organically and serve more geographic markets in India. *Id*. at ¶ 8.

---

[9] Because certain figures in Section 965(c) are stated in terms of corporate rates, the effective tax rates for individuals are 17.54 percent and 9.05 percent, respectively. *See* Mark E. Berg & Fred Feingold, *The Deemed Repatriation Tax—A Bridge Too Far?*, 158 Tax Notes 1345, 1349 (2018).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 5
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

Since founding KisanKraft, Ravi has managed the business from India. *Id*. at ¶¶ 10, 16. Consistent with Ravi's vision, the business manufactures, imports, and distributes affordable farming equipment in India, primarily serving small and marginal farmers who are underserved by India's established industry. Declaration of Ravindra Kumar Agrawal at ¶ 4 ("Ravi Decl."). KisanKraft's business has grown every year, funded largely by the reinvestment of all of its earnings and additional shareholder investments. *Id*. at ¶ 11. It has turned a profit in every year since 2006, and reinvested those earnings rather than distribute them to its shareholders. *Id*. at ¶¶ 12, 14; Moore Decl. ¶ 17–18. By so doing, it has been able to expand to over 350 employees working at offices in 13 states in India in addition to its home state of Karnataka. Ravi Decl. ¶ 13.

The Moores have never participated in KisanKraft's day-to-day operations or management. Ravi Decl. ¶ 10; Moore Decl. ¶ 16. Mr. Moore, however, visited India several times, partly for vacation and partly to see for himself the impact that KisanKraft is having in India. *Id*. at ¶¶ 11–15.

The Moores learned about the Mandatory Repatriation Tax in 2018 from Ravi. *Id*. at ¶ 24. It came as quite a surprise that they would face income-tax liability when they had not, in fact, ever received any income from KisanKraft. *Id*. at ¶ 25. Based on KisanKraft's financial statements, a CPA determined that the Moore's pro rata share of KisanKraft's retained earnings was $508,000, the Moores would have to include an additional $132,512 as taxable 2017 income under the MRT, and they owed an additional $14,729 in tax. *Id*. at ¶¶ 26–27, 29. That summer, they filed an amended return and paid the additional liability. *Id*. at ¶ 30. And then, in March 2019, they filed a second amended return claiming a refund of the additional liability on the ground that the MRT was unconstitutional. *Id*. at ¶ 30. After waiting six months for a response from the Internal Review Service, they filed this action on September 26, 2019. ECF No. 1.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 6
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1

## Legal Standard

2        Rule 12(b)(6) provides for dismissal when the complaint "fails to state a claim upon which

3  relief can be granted." Fed. R. Civ. P. 12(b)(6). "[D]ismissal for failure to state a claim is proper

4  only where there is no cognizable legal theory or an absence of sufficient facts alleged to support

5  a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc*., 622 F. 3d 1035, 1041

6  (9th Cir. 2010) (citation and quotation marks omitted). Dismissal must be denied "if, taking all

7  well-pleaded factual allegations as true, [the Complaint] contains enough facts to 'state a claim to

8  relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010) (quoting

9  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

10        Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the

11  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

12  judgment as a matter of law." A motion for summary judgment may be filed "at any time until 30

13  days after the close of all discovery." Fed. R. Civ. P. 56(b).

14

## Argument

15  **I.**    **The Mandatory Repatriation Tax Violates the Apportionment Clause Because It Is an Unapportioned Direct Tax**

16        The U.S. Constitution commands that "No Capitation, or other direct, Tax shall be laid,

17  unless in Proportion to the Census or Enumeration herein before directed to be taken." U.S. Const.,

18  Art. I, § 9, cl. 4; *see also* Art I, § 2, cl. 3. "This requirement means that any 'direct Tax' must be

19  apportioned so that each State pays in proportion to its population." *NFIB v. Sebelius*, 567 U.S. at

20  570. Even after the Sixteenth Amendment authorized Congress "to lay and collect taxes on

21  incomes…without apportionment," the Supreme Court's jurisprudence has "continued to consider

22  taxes on personal property to be direct taxes" that must be apportioned. *Id*. at 571 (citing

23  *Macomber*, 252 U.S. at 218–19). Because the MRT is a tax on personal property—an ownership

24  interest in a CFC—it is a direct tax, not an income tax exempt from apportionment. And because

25  the MRT is not apportioned, it is unconstitutional.

26

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 7
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1

## A.      The Mandatory Repatriation Tax Is an Unapportioned Direct Tax

2          The Government concedes, as it must, that "a tax on property" is "a direct tax requiring

3  apportionment." ECF No. 26, at 10 ("MTD"). The MRT on its face is a tax on property—

4  taxpayers' ownership interests in CFCs—and, because the MRT is not apportioned among the

5  states, it is unconstitutional.

6          The leading authority is *Eisner v. Macomber*, 252 U.S. 189 (1920). At issue was a federal

7  tax on certain stock dividends that, like a stock split, result in no gain to shareholders, but merely

8  an increase in the number of shares they possess, without changing their ownership interests. *Id.*

9  at 209–11. This tax was, the court held, a tax on personal property, because it was premised on

10  taxpayers' ownership interests in a corporation rather than any income they realized, and so was

11  not a tax on "income" authorized by the Sixteenth Amendment. *Id.* at 213–14. According to the

12  court, it was "beyond question" that "Congress has power to tax shareholders upon their property

13  interests in the stock of corporations." *Id.* at 217. But, the court continued, "that this would be

14  taxation of property because of ownership, and hence would require apportionment under the

15  provisions of the Constitution, is settled beyond peradventure." *Id.* The stock-dividend tax was not

16  apportioned and so was unconstitutional. *Id.*

17          That federal taxes on the ownership of property must be apportioned remains the law today.

18  The Supreme Court recognized as much as recently as 2012 in *NFIB v. Sebelius*, relying on

19  *Macomber* for the proposition that the Constitution regards "taxes on personal property to be direct

20  taxes" subject to apportionment. 567 U.S. at 571. And it was able to uphold the "individual

21  mandate" penalty of the Patient Protection and Affordable Care Act, which was not apportioned,

22  only because it was "plainly not a tax on the ownership of land or personal property" and so not a

23  direct tax requiring apportionment. *Id.*

24          The MRT is a tax on personal property. It does not tax the CFC itself for its receipt of

25  income, but the CFC's U.S. shareholders. 26 U.S.C. § 965(f). It does not tax any distribution or

26  other transfer that those shareholders received from the CFC. 26 U.S.C. § 965(a), (f). And it does

27

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 8
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

not tax anything those shareholders may have done with their shares in a CFC, such as sell them. *Id.* Instead, the MRT taxes a CFC's U.S. shareholders on their ownership of a property interest, shares in a CFC that retained earnings after 1986. 26 U.S.C. § 965(f); *id.* at § 951(a)(2)(A) (premising tax on the "pro rata" share of "the stock which such shareholder owns"). Because the MRT "falls upon the owner merely because he is owner, regardless of his use or disposition of the property," it is "a direct tax." *Fernandez v. Wiener*, 326 U.S. 340, 362 (1945).

The constitutional defect is that the MRT is not apportioned. The Government does not dispute—truly, it is indisputable—that the MRT is not apportioned among the states. *See* 26 U.S.C. § 965(f) (placing liability on U.S. taxpayers based on their "pro rata" ownership share, without respect to states). And that is what dooms it.

The Government's only relevant argument on this issue is that the Court should reject "a broad interpretation of direct tax." MTD at 16. But no great interpretative leap is required to hold that a tax on personal property is a direct tax, given that *Macomber* and *NFIB* hold as much and the Government concedes the point (at 10, 16).

### B. The Mandatory Repatriation Tax Is Not an Income Tax Authorized by the Sixteenth Amendment

The Government's principal argument is that the MRT is a tax on income because a CFC's retained earnings going back to 1986 may be deemed the 2017 income of its owners and then taxed without apportionment. But "Congress cannot make a thing income which is not so in fact." *Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 114 (1925). The accumulations of earnings targeted by the MRT are not "income" for CFC shareholders because there has never been, as the Sixteenth Amendment requires, a realization event that makes those earnings their "income." And, in any instance, past years' retained earnings are not "income," but capital, and so cannot be taxed as income. The MRT is therefore not a tax on income.

#### 1. The MRT Is Not a Tax on "Incomes"

Under the original meaning of the Sixteenth Amendment, as repeatedly reaffirmed, the MRT cannot be a tax on "income" for three independent reasons: (1) MRT liability is not triggered

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 9
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

by any realization event by which "income[]" is "derived" by the taxpayer, U.S. Const., Amend. XVI; (2) a CFC's retained earnings cannot be attributed to its shareholders as their "income"; and (3) even at the CFC level, past years' retained earnings are capital, not "income."

The Sixteenth Amendment carves out an exception from Article I's apportionment requirement, providing that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. Const. amend. XVI. When assessing what is "income" for purposes of the Sixteenth Amendment, a court must "rely upon 'the commonly understood meaning of the term which must have been in the minds of the people when they adopted the Sixteenth Amendment.'" *Murphy v. I.R.S.*, 460 F.3d 79, 88–89 (D.C. Cir. 2006) (quoting *Merchants' Loan & Trust Co. v. Smietanka*, 255 U.S. 509, 519 (1921)), *vacated on other grounds*, 493 F.3d 170 (D.C. Cir. 2007).

Crucially, "income" is not merely "growth…of value in the investment," but a "gain" or "profit" "received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal." *Macomber*, 252 U.S. at 207 (emphases omitted). That "fundamental conception is clearly set forth in the Sixteenth Amendment" through its text "'incomes, *from* whatever *source derived*.'" *Id.* (emphases in original). Thus, the Supreme Court has long defined "incomes" as "undeniable accessions to wealth, *clearly realized*, and *over which the taxpayers have complete dominion*." *Comm'r v. Glenshaw Glass Co*., 348 U.S. at 431 (emphases added). That remains the standard today. *See Nathel v. Comm'r*, 615 F.3d 83, 89 (2d Cir. 2010) (applying *Glenshaw Glass* standard)*; Quijano v. United States*, 93 F.3d 26, 30 (9th Cir. 1996) (same, and recognizing that standard to define "'income' in its constitutional sense") (cleaned up); *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1414 (9th Cir. 1986) (discussing evolution of constitutional standard that culminated with *Glenshaw Glass*). The Supreme Court in the present era continues to understand *Macomber*, a key early Sixteenth Amendment decision, as "recognizing [a] realization requirement." *Cottage Savings Assn. v. Comm'r*, 499 U.S. 554, 562 (1991).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 10
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

For three separate reasons, a CFC's retained earnings are not its shareholder's "income" for purposes of the Sixteenth Amendment.

*First*, in order for a taxpayer to have "income," there must as a constitutional minimum be a realization event. *Macomber*, 252 U.S. at 207; *Glenshaw Glass*, 348 U.S. at 431 (requiring an "undeniable accession[] to wealth, clearly realized," referred to as a "taxable event"); *Comm'r v. Fender Sales, Inc*., 338 F.2d 924, 928 (9th Cir. 1964) ("taxable event"). Specifically, as to shareholders in a corporation, *Macomber* holds that the taxable event is a distribution from the corporation, and "then only…does the stockholder realize a profit or gain…and thus derive income from the capital that he…has invested." *Id.* at 209. The MRT does not satisfy that realization requirement: a taxpayer subject to it has not realized any gain and so not enjoyed any income that could be taxed as such. Indeed, MRT liability is not triggered by any conceivable "taxable event," such as an actual payment or transfer or repatriation of funds; even the CFC has not experienced any kind of "taxable event" that triggers MRT liability. Instead, the MRT simply deems the CFC's accumulations of earnings to be current "income" of its shareholders, in the absence of any kind of event. 26 U.S.C. § 965(a), (f); H.R. Rep. 115-240, at 606 (2017) (describing MRT as a "deemed repatriation").

*Second*, *Macomber* specifically rejects the Government's argument that a corporation's accumulation of earnings is "income" to a shareholder. 252 U.S. at 214–15. The corporation in that case did, in fact, retain earnings, and that is what prompted it to issue the stock dividend. *Id.* at 200. So far as attributing those earnings to a shareholder, however, the court explained that the Sixteenth Amendment did not permit it to "ignore the substantial difference between corporation and stockholder, treat the entire organization as unreal, look upon stockholders as partners, when they are not such, treat them as having in equity a right to a partition of the corporate assets, when they have none, and indulge the fiction that they have received and realized a share of the profits of the company which in truth they have neither received nor realized." *Id*. at 214. In other words, a corporation's earnings cannot simply be deemed its owners' income unless and until realized by

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 11
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

them. Yet that is precisely what the MRT does—deem a corporation's old and cold accumulated earnings to be income to its shareholders. *See* 26 U.S.C. § 965(a), (f). And it does so notwithstanding that the owners lack the required "complete dominion" over the CFC's accumulated earnings from prior years that were reinvested in the business, given that they have no "guarantee that [they] will be allowed to keep the money" or even receive it. *Comm'r v. Indianapolis Power & Light Co*., 493 U.S. 203, 210 (1990).

*Third*, *Macomber* also holds that a corporation's accumulations of earnings in past years are capital (i.e., shareholder equity), not income, and so may not be taxed as income. The Government argued there, as here, that Congress could tax as income "the stockholder's share of the undivided profits previously accumulated by the corporation." *Id*. at 217. The court disagreed, holding that the accumulation of past years' earnings is not "income" at all for purposes of the Sixteenth Amendment: "[W]hat is called the stockholder's share in the accumulated profits of the company is capital, not income." *Id*. at 219; *see also id*. at 211 (recognizing "that the company's accumulated profits have been capitalized"). The corporation's "accumulation of profits," the court explained, may leave the shareholder "richer because of an increase in his capital." *Id*. at 212. But "enrichment through increase in value of capital investment is not income in any proper meaning of the term." *Id*. at 214–15. Thus, a tax on past years' accumulated earnings is not an income tax at all, but instead "would be taxation of property because of ownership, and hence would require apportionment under the provisions of the Constitution." *Id*. at 217. So too here: the MRT taxes earnings previously accumulated by a CFC and used for capital investment, and so it is not a tax on "income." On this point, *Macomber* remains binding. *See Glenshaw Glass,* 348 U.S. at 431 (approving *Macomber*'s approach to "distinguishing gain from capital"); *Nathel v. Comm'r*, 615 F.3d at 92 (recognizing that "the earlier cases' treatment of capital as distinct from income," including in *Macomber*, remains good law).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 12
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1

2

### 2.    The Government Identifies No Authority Upholding a Tax Like the MRT as a Tax on "Incomes"

None of the hodge-podge of cases cited by the Government—some involving Subpart F tax, others involving routine corporate taxes on their current income—provide a basis to conclude that the MRT taxes CFC shareholders' "incomes."

To begin with, the Government's claim (at 11, 13) that *Heiner v. Mellon*, 304 U.S. 271 (1938), undercut *Macomber*'s realization-event or attribution holdings is wrong. *Mellon* did approve taxation of partners on partnerships' current income that was not individually distributed to them, *id*. at 281, but *Macomber* premised its realization holding on the corporate form, expressly distinguishing corporations from partnerships and shareholders from partners. 252 U.S. at 214 ("we cannot…look upon shareholders as partners, when they are not such"). A corporation, it stated, must be treated "as a substantial entity separate from the stockholder," such that its realization of income cannot be simply deemed to be its owners' realization of income. *Id*.; *see also Moline Properties, Inc. v. Comm'r*, 319 U.S. 436, 439 (1943). By contrast, a partnership does not have a separate and distinct identity from its partners, and its income is their income. *See Randolph Products Co. v. Manning*, 176 F.2d 190, 192–93 (3d Cir. 1949). That is why the court in *Mellon* felt no need to cite, let alone discuss, *Macomber*.[10] In any case, the MRT does not even tax a CFC's *income* as shareholder income; instead, it taxes CFCs' *capital* as shareholder income.

The two Second Circuit decisions that the Government contends (at 10) support its argument concerning *Mellon* are likely inapt and definitely unpersuasive. *Eder v. Comm'r* rejected an argument disputing the attribution of a foreign holding company's current income to its U.S. owners, even when foreign law blocked distributions to them. 138 F.2d 27, 28 (2nd Cir. 1943). The taxpayers apparently raised some kind of constitutional argument,[11] which the court dismissed in a brusque sentence bereft of analysis. *Id*. at 29. Thirty years later, the Second Circuit declared

---

[10] The Government's reliance on the Subchapter K partnership provisions is misplaced for the same reason. *See* MTD at 12–13. Likewise, the "flow through" treatment of S corporations mentioned by the Government (at 13) is irrelevant; that treatment is not imposed by tax law, but by election by the corporation and its owners. 26 U.S.C. § 1362.

[11] The opinion does not indicate what that argument may have been, nor does the underlying decision of the Board of Tax Appeals, which believed the "sole issue" presented in the case was statutory. 47 B.T.A. 235, 240 (1942).

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 13
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

in *Garlock v. Comm'r* that *Eder* had definitively upheld against constitutional challenge "the foreign personal holding provisions of the income tax laws upon which subpart F was patterned." 489 F.2d 197, 202 (1973). *Garlock* states, in a footnote, that "the doctrine of [*Macomber*], as applied to the facts in this case…has no validity under *Mellon*." *Id*. at 203 n.5. That may or may not be so—again, the court did not have much to say about what issue it was deciding—but there is no indication in *Garlock* that the Second Circuit regarded *Mellon* as overruling *Macomber*'s realization-event or attribution holdings. For one, as discussed above, *Mellon* did no such thing, which may be why the Government mostly avoids discussing what *Mellon* actually said. For another, the Supreme Court reaffirmed those holdings in *Glenshaw Glass*, which postdates *Mellon* as well as *Eder*. And neither *Eder* nor *Garlock* involved the attribution of past years' accumulated earnings of the sort that *Macomber* held to be capital, not income. Whatever *Eder* and *Garlock* may stand for in the realm of constitutional law, it isn't much, their reasoning is less unconvincing than non-existent, and (even on the Government's argument) they do not reach so far as to support the MRT's treatment of capital as income.

The other two Subpart F cases cited by the Government as persuasive authority also do not call into question the requirement of a realization event. Both *Whitlock's Estate* and *Dougherty* involved Subpart F taxes triggered by a CFC's investment of its earnings in U.S. property. The Tenth Circuit in *Whitlock's Estate* distinguished *Macomber* on the ground that the "tax here considered is computed *in reference to a transaction*, an investment in United States property," which (given the taxpayers' complete control of the CFC) amounted to a constructive distribution. *Whitlock's Estate v. Comm'r*, 494 F.2d 1297, 1301 (10th Cir. 1974) (emphasis added); *see also Whitlock's Estate v. Comm'r*, 59 T.C. 490, 506 n.19 (1972) (identifying a CFC's "increase in earnings invested in U.S. property as a constructive dividend to [its U.S. owners]."). The Tax Court's decision in *Dougherty* took the same view, identifying the "taxable event," for constitutional purposes, as "the investment in U.S. property," which "manifest[ed] the shareholder's exercise of control" over the amount invested. *Dougherty v. Comm'r*, 60 T.C. 917,

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 14
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

930 (1973). And *Macomber*, it reasoned, did not "interpose a constitutional barrier to a statutory constructive dividend doctrine which in effect is what is involved herein." *Id*. The MRT, by contrast, involves no constructive dividend or other arguable realization event. As noted, it turns on no actual event or transaction at all, but rather the ownership of shares in a CFC that retained earnings over the past thirty years. So even decisions like *Dougherty*—"the high-water mark" for congressional taxing power[12]—are insufficient to sustain this unprecedented enactment.[13]

The Government is wrong to suggest, in a very carefully worded argument (at 13–14), that courts have upheld income taxation of shareholders on a corporation's accumulated earnings from past years in the absence of a realization event. The so-called "accumulated earnings taxes" at issue in cases like *Helvering v. Northwest Steel Rolling Mills* are actually "imposed upon the *annual income* only if it is not distributed" to shareholders. 311 U.S. 46, 53 (1940) (emphasis added).[14] While past years' accumulated earnings are taken into account to determine whether the tax applies, the tax is then imposed on current income. *Id*. Thus, in *Northwest Steel*, the realization event was the receipt of income by the taxpayer itself (the corporation, not its shareholders) during the current tax year, hardly a novelty. *Id*. The same is true of the taxes at issue in *Helvering v. National Grocery Co*., 304 U.S. 282, 284 (1938) (quoting tax provision), and *Novelart Manufacturing Co. v. Comm'r*, 434 F.2d 1011, 1012 (6th Cir. 1970) (quoting tax provision). It is also true of the current accumulated earnings tax. *See* 26 U.S.C. § 535(a) (defining "accumulated taxable income" as an adjustment of a corporation's annual "taxable income"). Nothing cited by the Government lends any support to the proposition that Congress may define a corporation's

---

[12] Mark E. Berg & Fred Feingold, *The Deemed Repatriation Tax—A Bridge Too Far?*, 158 Tax Notes 1345, 1354 (2018).

[13] *See also Prescott v. Comm'r*, 561 F.2d 1287, 1293 (8th Cir. 1977) ("[The Supreme Court], in determining whether there has been income, now looks to determine if there has been a 'taxable event.' The question asked is whether some event has occurred which marks an appropriate time to tax the value of the assets."). *Prescott*, it should be noted, involved taxation of sole proprietorships, not corporations. *Id*. at 1289.

[14] That the income was undistributed to shareholders is of no moment; as is apparent from the case's title, the taxpayer was the corporation that had received the income during the tax year, not its shareholders. *Northwest Steel*, 311 U.S. at 47. The same applies to the Government's introductory discussion (at 9) of taxes on "undistributed earnings and profits," and the cases there cited both involved taxation of corporation's current income. *See Ivan Allen Co. v. United States*, 422 U.S. 617 (1975); *United States v. Donruss Co*., 393 U.S. 297 (1969).

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 15
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

current income, let alone its accumulated earnings from past years, as "income" to shareholders in the absence of a realization event by the shareholders.[15]

Finally, all of the Subpart F decisions cited by the Government rely on the taxpayer's dominion and control over the CFC, something that here is lacking. The Tax Court's decision in *Whitlock's Estate*, for example, additionally distinguished *Macomber* on the ground that the taxpayers before it "had the actual right and power to manipulate their corporation as if it were the family pocketbook," which was what it found enabled Congress to "disregard…the corporate entity" and tax its owners on its income. 59 T.C. at 509. The Tenth Circuit likewise regarded as essential that the taxable event at issue—the purchase of U.S. property by the CFC—"came about when the taxpayers controlled the corporation." *Whitlock's Estate*, 494 F.2d at 1301. So too in *Dougherty*, 60 T.C. at 930 (reasoning that "the shareholder's control over the corporation" permitted the corporation to be "bypassed for taxation purposes"), and seemingly in *Garlock*, 489 F.2d at 203 n.5 (distinguishing *Macomber* on "the facts in this case," which as canvassed by the court concerned the taxpayer's complete control over a CFC).

Unlike in those cases, the Moores and other minority CFC shareholders like them lack the right and power to treat those corporations as their own pocketbooks, to control their disposition of earnings, and to force distributions. Not only have they obtained no "accessions to wealth, clearly realized," but they also do not exercise, as required, "complete dominion" over the capital of the CFC that the MRT deems them to have received. *Glenshaw Glass*, 348 U.S. at 431; *see also Indianapolis Power*, 493 U.S. at 210 ("The key is whether the taxpayer has some guarantee that he will be allowed to keep the money."). The MRT therefore is not, at least as to such taxpayers, a tax on anything that can fairly be called *their* income, or on income at all; it is instead a tax on their property, the shares they own in CFCs. Accordingly, it fails for lack of apportionment.

---

[15] Importantly, the accumulated earnings tax applies only to corporations "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders…by permitting earnings and profits to accumulate instead of being divided or distributed." 26 U.S.C. § 532(a). The MRT is subject to no such limitation.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 16
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1

## II.     The Mandatory Repatriation Tax Violates the Fifth Amendment

2          "[F]or centuries our law has harbored a singular distrust of retroactive statutes." *Eastern*

3   *Enterprises v. Apfel*, 524 U.S. 498, 547 (1998) (Kennedy, J.). The Supreme Court stated in

4   *Landgraf v. USI Film Products* that "[e]lementary considerations of fairness dictate that

5   individuals should have an opportunity to know what the law is and to conform their conduct

6   accordingly; settled expectations should not be lightly disrupted." 511 U.S. 244, 265 (1994). For

7   that reason, a "presumption against retroactive legislation is deeply rooted in our jurisprudence,

8   and embodies a legal doctrine centuries older than our Republic." *Id.* at 265.

9          These principles are given legal force in the tax context by the Fifth Amendment. "[A]

10  statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend

11  the Fifth Amendment." *Nichols v. Coolidge*, 274 U.S. 531, 542 (1927). The Fifth Amendment, the

12  Supreme Court has held, bars the retroactive application of a "wholly new tax." *United States v.*

13  *Hemme*, 476 U.S. 558, 568 (1986) (discussing *Untermyer v. Anderson*, 276 U.S. 440 (1928)). That

14  rule is dispositive here because the MRT is a wholly new tax that applies retroactively to

15  accumulations of earnings going back thirty years. Even were the MRT not a new tax, it would

16  still contravene the Fifth Amendment's Due Process Clause, which requires that tax statutes with

17  a retroactive effect "establish[] only a modest period of retroactivity" so as to achieve ends that

18  are "neither illegitimate nor arbitrary." *United States v. Carlton*, 512 U.S. at 32. A thirty-year

19  retroactive effect far exceeds the "customary congressional practice," approved by the Supreme

20  Court, of retroactivity "confined to short and limited periods required by the practicalities of

21  producing national legislation." *Id.* at 33 (citation and quotation marks omitted). Under either

22  standard, the MRT is unlawful and cannot be constitutionally applied here.

23         ## A.     The Mandatory Repatriation Tax Is Retroactive

24         As an initial matter, the MRT has retroactive effect that triggers the protections of the Fifth

25  Amendment because it "changes the legal consequences of acts completed before its effective

26  date." *Landgraf*, 511 U.S. at 269 n.23 (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 17
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1    The Supreme Court has set forth definitively the standard for assessing whether a tax
2    statute has retroactive effect—a separate question from whether that effect is lawful. The required
3    inquiry is whether the "statute gives a different and more oppressive legal effect to conduct
4    undertaken before enactment of the statute." *Hemme*, 476 U.S. at 569. In other words, does the
5    statute's treatment of prior conduct leave taxpayers "worse off than they would have been without
6    the enactment of the [statute]"? *Id.* at 570. This standard is a tax-specific application of the general
7    rule for assessing statutory retroactivity, which "ask[s] whether the new provision attaches new
8    legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269–70.

9    The MRT is retroactive because it attaches new legal consequences—tax liability—to
10   events completed before its enactment. This is plain on the face of the statute: it imposes tax
11   liability based on a CFC's "post-1986 earnings and profits," which it defines as "the earnings and
12   profits of the foreign corporation…accumulated in taxable years beginning after December 31,
13   1986." 26 U.S.C. § 965(d)(3) (emphasis added). Needless to say, accumulations of earnings in
14   1987, 2006, and the other years targeted by the MRT were completed before the MRT's enactment
15   in 2017. And the MRT inflicts "a different and more oppressive legal effect" on that completed
16   conduct: it imposes a tax based on past years' accumulations of earnings and profits to which they
17   otherwise would not have been subject. That is a retroactive effect. *Compare GPX Intern. Tire*
18   *Corp. v. United States*, 780 F.3d 1136, 1143 (Fed. Cir. 2015) (finding change in duties to be
19   retroactive because it applied to conduct predating change in law).

20   That is the case specifically with respect to application of the MRT here. Each year
21   beginning in 2006, KisanKraft retained its earnings and reinvested them in its business rather than
22   distributing them, such that the Moores received no income subject to U.S. tax. *See* JCT Report at
23   2, 6 (describing how, under prior law, reinvested foreign-corporation earnings were not subject to
24   U.S. tax). The MRT altered the legal consequences of those completed past events—the
25   accumulations of earnings in past years—by taxing the Moores for the past-year earnings. That

26
27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 18
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1    obviously left them worse off than they would have been, subject to a tax liability that they

2    otherwise would not have borne.

3          The Government's arguments to the contrary are badly confused. First, its argument (at

4    18–19) that the statute is not facially retroactive is belied by the relevant statutory text, which the

5    Government neither quotes nor discusses. The MRT is premised on "earnings and

6    profits…accumulated in taxable years beginning after December 31, 1986," 26 U.S.C. § 965(d)(3).

7    In that way, the statute "clearly expresses" its retroactive effect. *Sacks v. SEC*, 648 F. 3d 945, 951

8    (9th Cir. 2011). In any event, as described above, the MRT has plain "retroactive effect by

9    'attach[ing] new legal consequences to events completed before its enactment.'" *Id*. (quoting *INS*

10   *v. St. Cyr*, 533 U.S. 289, 321 (2001)).

11         Second, the Government's contention (at 20) that the MRT is not retroactive because it

12   labels tax liability for past years' accumulated earnings as current-year (i.e., 2017) gross income

13   is the height of sophistry. Under the Government's logic, no tax would ever be retroactive so long

14   as Congress frames the liability as arising in or after the year of enactment—for example, by

15   doubling income-tax rates going back thirty years but providing that the additional liability be

16   included in the current tax-year. The legal standard for retroactivity, however, takes no account of

17   such labels, turning instead on whether a law attaches new or different consequences to past acts.

18   *See Hemme*, *supra*; *Landgraf*, *supra*. The MRT does, imposing liability based on conduct reaching

19   back three decades.

20         Third, the Government's argument (at 21–26) regarding retroactive taxes that have been

21   upheld does not answer the threshold question of whether a given tax statute has retroactive effect

22   in the first place. For example, the Tax Court's decision in *Dougherty v. Commissioner*, to which

23   the Government devotes an entire subsection, actually does not dispute that the tax there had

24   retroactive effect, instead addressing whether it passed constitutional muster. 60 T.C. at 928–30.

25         Fourth, none of the "prior earnings" and "prior contracts" cases cited by the Government

26   (at 21–24) involved taxes premised on past conduct as with the MRT, but rather taxes on payments

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 19
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

made after the effective date of tax statutes. Thus, *Lynch v. Hornby* upheld application of the then-new federal income tax to a dividend payment from gains said to predate the tax's effective date on the straightforward ground that "dividends received in the ordinary course by a stockholder from a corporation" are "income, in the ordinary sense of the word." 247 U.S. 339, 344 (1918). *Peabody v. Eisner*, 247 U.S. 347 (1918), held the same with respect to a dividend of shares in another company. The MRT, by contrast, applies without respect to any dividend or distribution; instead, the conduct on which the MRT premises tax liability is the accumulation of earnings in prior years, to which the MRT retroactively applies. The so-called "prior contract" cases cited by the Government (at 22–24) are similarly inapposite; all addressed taxes on payments made after the tax provisions at issue took effect. *See, e.g.*, *Polone v. Commissioner*, 505 F.3d 966, 968 (9th Cir. 2007) (addressing "payments received after the effective date of [tax] amendments"); *Snell v. Comm'r*, 97 F.2d 891 (5th Cir. 1938) (addressing installment payments made after enactment of new tax law). Again, in contrast, the MRT is not directed to prospective payments but to accumulations of earnings in prior years, rendering it retroactive.

Suffice it to say, whether a tax has retroactive effect and whether that effect transgresses constitutional limitation are separate questions. As to the former, there can be no serious dispute that the MRT has retroactive effect, turning as it does on completed conduct going back decades.

### B. The Mandatory Repatriation Tax's Violates the Fifth Amendment Because It Is a Retroactive "Wholly New Tax"

In the 90 years since the Supreme Court declared that the Fifth Amendment's Due Process Clause bars retroactive application of a new tax, Congress has refrained from encroaching that limitation on its power. That restraint ended with enactment of MRT, a wholly new one-time tax that reaches decades back into the past, far beyond anything ever legislated by Congress, let alone sustained by the Courts. Under governing precedent, it cannot be constitutionally applied.

*Nichols v. Coolidge*, 274 U.S. 531 (1927), rejected retroactive application of the then-new estate tax to pre-death transfers in which the estate-holder maintained an interest made before the tax was enacted. Such retroactive application of the tax, the court held, was "so arbitrary and

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 20
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

capricious as to amount to confiscation and offend the Fifth Amendment." *Id*. at 542. Subsequently, in *Blodgett v. Holden*, the Supreme Court refused to apply the then-new federal gift tax to a transfer made before the tax was proposed in Congress. 275 U.S. 142 (1927). The decision was unanimous, but split as to reasoning. For four justices, retroactive application of the tax was, as in *Nichols*, "so arbitrary and capricious that its enforcement would amount to deprivation of property without due process of law within the inhibition of the Fifth Amendment." *Id*. (McReynolds, J.). The other four were able to avoid reaching the constitutional issue only by heroically reinterpreting the statute to preclude retroactive application. *Id*. at 148–49 (Holmes, J.). Finally, in *Untermyer v. Anderson*, 276 U.S. 440 (1928), the court extended *Blodgett*'s constitutional logic to bar application of the gift tax to transfers made shortly before its enactment. Once again, it held retroactive application of the tax to be "arbitrary and invalid under the due process clause of the Fifth Amendment," reasoning that due process requires fair notice: "The taxpayer may justly demand to know when and how he becomes liable for taxes…." *Id*. at 445.

These decisions have never been overruled, as the Supreme Court has had no occasion to do so: not since *Untermyer* has it been faced with a new tax of truly retroactive application. But it has recognized their vitality. *Hemme*, a 1986 decision, recognized that, under *Untermyer*, "absence of notice" dooms retroactive application of a "wholly new tax." 476 U.S. at 567–68. Likewise, *Carlton*, a 1994 decision, recognized that *Untermyer* applies "to situations involving the creation of a wholly new tax." 512 U.S. at 34 (quotation marks omitted); *see also id*. at 38 (O'Connor, J., concurring) (explaining that, under the Supreme Court's precedents, "a 'wholly new tax' cannot be imposed retroactively"); *Quarty v. United States*, 170 F.3d 961, 967 (9th Cir. 1999) (discussing rule applicable to a "new tax"). The only limitation recognized to this anti-retroactivity rule is that Congress may lawfully "require that taxable income should include profits from transactions consummated within the year." *Cooper v. United States*, 280 U.S. 409, 412 (1930). Otherwise, the prohibition on retroactive application of a new tax is absolute. *See NetJets Aviation, Inc. v.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 21
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1    *Guillory*, 207 Cal.App.4th 26, 57 (2012) ("No case cited by any party to this appeal has permitted

2    retroactive application of a newly created assessment.").[16]

3          *Untermyer* controls here because the MRT is a wholly new tax. A tax is "wholly new," for

4    due process purposes, "when the taxpayer has 'no reason to suppose that any transactions of the

5    sort will be taxed at all.'" *Quarty*, 170 F.3d at 967 (quoting *United States v. Darusmont*, 449 U.S.

6    292, 298, 300 (1981)). Quite unlike a mere "change in tax rates," *id.*, the MRT imposes liability

7    on transactions that were never subject to U.S. taxation. And taxpayers like the Moores had no

8    reason to expect that the U.S. would tax *them* for foreign-corporation income that is not their own

9    income in any respect, that is not subject to the anti-tax-circumvention rationale of Subpart F, and

10   that has never previously been subject to U.S. taxation. *Compare Netjets Aviation*, 207 Cal.App.4th

11   at 54–56 (holding tax to be "wholly new," for due process purposes, because it applied to property

12   that had not previously been taxed). And taxpayers certainly had no reason to suspect that the U.S.

13   would not only impose this new tax, but do so with an unprecedented period of retroactivity

14   extending back decades beyond anything ever sanctioned by the courts. *See Carlton*, 512 U.S. at

15   38 (O'Connor, J., concurring) ("In every case in which we have upheld a retroactive federal tax

16   statute against due process challenge, however, the law applied retroactively for only a relatively

17   short period prior to enactment.").

18         Contrary to the Government's unsupported assertion (at 30), the MRT is not merely a

19   "change[] in operation," *id.* at 34, of Subpart F, but is new in terms of its form and structure.

20   Although Congress placed the MRT within Subpart F, it operates independently from regular

21   Subpart F tax, with its own unique tax rates, lookback-period, limitations on foreign tax credits,

22   and timing provisions. And while the other provisions of Subpart F apply year after year to specific

23   types of CFC income, the MRT is a *one-time assessment*, imposing a novel levy on past-years'

24   accumulations of income that does not apply in subsequent years. Indeed, Congress itself regarded

25

26   [16] The Government (at 30) questions whether precedents like *Untermyer* "survive," but they have not been overruled
     and so are binding here. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)
     (stating that lower courts must "follow the [Supreme Court] case which directly controls, leaving to [the Supreme]
27   Court the prerogative of overruling its own decisions.").

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 22
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

the MRT as something other than a tweak to the operation of Subpart F; instead, it was, per the TCJA's conference committee, "a one-time repatriation of money held offshore." H.R. Rep. 115-240, at 315 (2017). Likewise, the White House described the MRT not as an adjustment of current tax law, but as "[a] one-time repatriation tax…on income that has already accumulated overseas."[17] In fact, much of the congressional debate over the provision concerned how to spend what members recognized to be a one-time windfall, separate and apart from the steady stream of normal Subpart F revenue. *See, e.g.*, 163 Cong. Rec. S7546 (daily ed. Nov. 30, 2017) (Sen. Cardin) (stating that "[t]he House repatriation bill would bring in approximately $300 billion of one-time-only revenues" and proposing how to use "this one-time-only source"). This reflects the reality that the MRT's "one-time repatriation" is a new standalone tax.

In short, what Congress legislated was a wholly new one-time "deemed repatriation" of CFC's accumulated earnings. Because that is a new tax, the Fifth Amendment bars its retroactive application.

### C.   Even if not a Wholly New Tax, the Mandatory Repatriation Tax Flunks the *Carlton* Standard

Even if the Court were to conclude that the MRT is not a new tax, the MRT still fails constitutional muster. Its retroactive effect is unprecedented, nothing like the "modest period[s] of retroactivity" that the courts have approved. *Carlton*, 512 U.S. at 32. The Supreme Court "has never intimated that Congress possesses unlimited power to 'readjust rights and burdens…and upset otherwise settled expectations,'" *id.* at 37 (O'Connor, J., concurring) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1986)), but nothing short of that would suffice to sustain the MRT. The Court should decline the Government's invitation to free it completely from the bounds of the Due Process Clause's limitation on retroactive taxation.

---

[17] Press Release, President Donald J. Trump's Tax Cuts are a Windfall for Americans, Mar. 14, 2018, *available at* https://www.whitehouse.gov/briefings-statements/president-donald-j-trumps-tax-cuts-windfall-americans/; *see also* Economic Report of the President 63 (2019), *available at* https://www.whitehouse.gov/wp-content/uploads/2019/03/ERP-2019.pdf ("[T]he TCJA imposed a one-time tax, which it termed 'deemed repatriation,' on past, post-1985 earnings that were being held abroad….").

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 23
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

The Ninth Circuit has identified "five considerations" relevant to whether a retroactive change in taxation complies with the Due Process Clause. *See GPX Intern. Tire Corp. v. United States*, 780 F.3d 1136, 1142 (Fed. Cir. 2015). All weigh against the MRT.

First is "whether the retroactive provision is 'wholly new.'" *Id.* (quoting *Hemme*, 476 U.S. at 568). The MRT is, as described above. *See supra* § II.B.

Second is "whether the retroactive action resolves uncertainty in the law," where a "curative" measure is more likely to comply with the Due Process Clause. *GPX*, 780 F.3d at 1142 (citing *Gen. Motors Corp. v. Romein*, 503 U.S. 181 (1992)). Of course, there was no uncertainty prior to the enactment of the MRT as to whether U.S. owners were taxed for CFCs' retained earnings. They were not. *See* JCT Report at 13; H.R. Rep. 115-466, at 606.

Third is "the length of the period of retroactivity." *GPX*, 780 F.3d at 1142 (citing *Carlton*, 512 U.S. at 32–33). The MRT reaches back thirty years and, as applied here, imposes liability on the Moores for KisanKraft's retained earnings from over a decade before its enactment. Yet the Supreme Court has upheld retroactive taxation only where "Congress acted promptly and established only a modest period of retroactivity." *Carlton*, 512 U.S. at 32. *Carlton*, for example, involved retroactivity "for a period only slightly greater than a year," consistent with the "customary congressional practice" of "confin[ing] [tax retroactivity] to short and limited periods required by the practicalities of producing national legislation." *Id.* at 33 (citation and quotation marks omitted). Surveying the Supreme Court's precedents, Justice O'Connor observed that, in "every case in which [the court] ha[s] upheld a retroactive federal tax statute against due process challenge…, the law applied retroactively for only a relatively short period prior to enactment," typically just a few months or as long as a year. *Id.* at 38. That experience, she explained, likely reflects "Congress' sensitivity to the due process problems that would be raised by overreaching." *Id.* Reaching back thirty years, the MRT can only be viewed as a serious overreach, unjustified by legislative practicalities. *See GPX*, 780 F.3d at 1143 (regarding a five-and-a-half-year retroactivity period as "substantial"); *id.* at 1142 (finding that "the length of the retroactive effect" did *not*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 24
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1   support the tax's lawfulness). Tellingly, the Government is unable to identify any change to tax

2   law with anywhere near so long a retroactivity period as the MRT. *See* MTD at 28 (maxing out at

3   four years). The MRT is uniquely "harsh and oppressive" in the extent of its retroactive

4   application. *Carlton*, 421 U.S. at 30.

5          The fourth consideration is "whether the affected party had notice of the potential change

6   prior to the conduct that was retroactively regulated." *GPX*, 780 F.3d at 1142 (citing *Pension Ben.*

7   *Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 731 (1984)). The Moores, like others subject to the

8   MRT, did not. There was no indication in 1987, 2006, or the other years targeted by the MRT that

9   Congress would reverse course and impose tax liability on a category of earnings that has never

10  been subject to U.S. taxation. They and other owners of foreign businesses were left to arrange

11  their affairs in reliance on consistent U.S. tax law—until, that is, Congress pulled the rug out from

12  under them. That Congress would do so even to taxpayers like the Moores who, because they are

13  minority shareholders, lack the power to force a CFC to distribute retained earnings (assuming that

14  is even possible) was a particular surprise.

15         The fifth consideration is "whether the retroactive provisions are remedial in nature," *id.*—

16  in other words, whether they have some policy purpose beyond mere revenue generation, *id*. at

17  1144. The MRT does not. Congress sought a revenue windfall, not to deter U.S. investment in

18  foreign business. Confirming as much, the MRT does not apply prospectively—and so does not

19  disincentivize future foreign investment—and was enacted as part of legislation designed to

20  liberalize U.S. tax treatment of U.S. businesses' overseas operations by shifting towards a

21  territorial taxation system. The Government essentially concedes that the MRT exists merely to

22  raise revenue, arguing that its purpose is to obtain tax revenue on income that has gone untaxed to

23  date. *See* MTD at 27–28 ("This stockpiled CFC income has never been taxed, but was always

24  meant to be taxed."). The Government's claim (at 31) that it is taxpayers like the Moores who

25  would "reap a windfall" in the absence of something like the MRT does not withstand scrutiny;

26  since the dawn of the federal income tax, it has always been the case that, if and when a corporation

27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 25
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

makes a distribution to its owners, they are taxed on that income. *See* Pub. L. 63-16, § II(B), 38 Stat. 114, 167 (1913); 26 U.S.C. § 61(a)(7) (defining income to include "dividends"). The peculiarity of the MRT is that it operates in the absence of anything that might fairly be called *their* income.

A final factor bearing mention is that the MRT, particularly as applied here, is "arbitrary and irrational." *Carlton*, 512 U.S. at 30 (quotation marks omitted). The entire policy rationale of Subpart F has been to capture foreign-corporation income reasonably attributable to U.S. persons so as to prevent them from taking advantage of the corporate form to avoid U.S. taxation. IRS, Subpart F Overview, *supra*, at 3. Its longstanding features are carefully tailored to that end, targeting things like related-party transactions and foreign passive-investment holdings that serve to artificially shift income offshore and thereby avoid the U.S. income tax. *Id.* at 3–4. That, in turn, rationally justifies imposing tax liability on a CFC's owners, rather than the CFC itself—the idea is that this income is properly attributable to the owners and would be theirs but for their abuse of the corporate form. *Id.* The MRT, by contrast, applies only to income that is otherwise outside of Subpart F and that has been retained by the CFC for reinvestment in the business. It therefore does not further the avoidance rationale that justifies the rest of Subpart F. And it is decidedly irrational and arbitrary in its retroactive sweep, imposing taxes on long-ago reported earnings that the CFC may no longer possess or may lack access to in liquid form.

And it is the height of irrationality and arbitrariness to impose such liability on minority shareholders like the Moores who lack the power to compel distribution of the retained earnings that the MRT arbitrarily deems to be their own. *See Corliss v. Bowers*, 281 U.S. 376, 378 (1930) (holding that the grantor of a revocable trust could be constitutionally taxed on its income that remained "subject to [his] unfettered command and that he is free to enjoy at his own opinion…, whether he sees fit to enjoy it or not"). Indeed, the Supreme Court held only last year that due process prohibits states from taxing trust income where the resident beneficiaries "have no right to demand that income and are uncertain ever to receive it." *N. Carolina Dept. of Revenue v. The*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 26
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1  *Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2221 (2019). That is the precise
2  circumstance of minority shareholders like the Moores subject to the MRT, rendering application
3  of the MRT here equally arbitrary and unlawful.

4      In sum, the MRT is truly "harsh and oppressive," *Carlton*, 512 U.S. at 30, in its decades-
5  long retroactivity and targeting of taxpayers who have not and may never receive any of the
6  "income" it arbitrarily attributes to them. Wherever exactly lies the line dividing permissible
7  retroactive effect from forbidden, the MRT leaps over it in unprecedented fashion.

## Conclusion

8      The Court should deny the Government's motion to dismiss and grant the Plaintiff's motion
9
10  for summary judgment.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 27
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1    DATED this 27th day of March, 2020.

2                                         Respectfully submitted,

3                                         BAKER & HOSTETLER LLP

4                                         *s/ James R. Morrison*
                                          James R. Morrison, WSBA No. 43043
5                                         999 Third Avenue
                                          Suite 3600
6                                         Seattle, WA 98104-4040
                                          Tel:    206.332.1380
7                                         FAX:   206.624.7317
                                          E-mail: jmorrison@bakerlaw.com
8
                                          Andrew M. Grossman*
9                                         David B. Rivkin, Jr.*
                                          Jeffrey H. Paravano*
10                                        Katherine L. McKnight*
                                          Nicholas C. Mowbray*
11                                        Washington Square, Suite 1100
                                          1050 Connecticut Avenue, N.W.
12                                        Washington, D.C. 20036-5304
                                          Tel: (202) 861-1500
13                                        Fax: (202) 861-1783
                                          E-mail: agrossman@bakerlaw.com
14                                        E-mail: drivkin@bakerlaw.com
                                          E-mail: jparavano@bakerlaw.com
15                                        E-mail: kmcknight@bakerlaw.com
                                          E-mail: nmowbray@bakerlaw.com
16
                                          COMPETITIVE ENTERPRISE INSTITUTE
17                                        Sam Kazman*
                                          Devin Watkins*
18                                        1310 L Street NW, 7th Floor
                                          Washington, D.C. 20005
19                                        Tel: (202) 331-1010
                                          Fax: (202) 331-0640
20                                        Email: Sam.Kazman@cei.org
                                          Email: Devin.Watkins@cei.org
21
22                                        *Attorneys for Plaintiffs*

23   * Admitted *pro hac vice*.

24

25

26

27

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that a true and correct copy of the foregoing document, and all supporting

3

materials, were served by CM/ECF upon the following:

4

5
Kari M. Larson
Jennifer Y. Golden
6
U.S. Department of Justice
Tax Division, Western Region
7
P.O. box 683, Ben Franklin Station
Washington, D.C. 20044
8
Ph: 202-616-3822 (Larson)
Ph: 202-307-6547 (Golden)
9
Fax: 202-307-0054
Email: kari.m.larson@usdoj.gov; jennifer.y.golden@usdoj.gov
10

*Attorneys for Defendants*
11

DATED this 27th day of March, 2020 at Seattle, Washington.
12

*s/ Jennifer Hickman*
13
Jennifer Hickman

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 29
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380