## DECLARATION OF RAVINDRA KUMAR AGRAWAL

I, RAVINDRA KUMAR AGRAWAL, swear and offer:

1. I am a Managing Director of KisanKraft Limited.

2. KisanKraft Limited is an Indian Public Limited Company headquartered and has registered office in Bangalore, India. KisanKraft Limited was incorporated on August 26, 2005 as KisanKraft Machine Tools Private Limited.

3. KisanKraft Limited does not currently have any subsidiaries.

4. KisanKraft Limited is a certified manufacturer, importer, and distributor of affordable farming equipment. KisanKraft primarily serves small and marginal farmers throughout India. In general, such farmers are underserved in India as major manufacturers, importers, and distributors of farming equipment focus on large commercialized farmlands.

5. KisanKraft Limited's primary vision is to improve the livelihood of small and marginal farmers in India by providing cost-effective farming equipment and local after-sales services. Recently, KisanKraft Limited has started to conduct research and development activities with respect to seeds, which will also provide a significant benefit to these farmers.

6. The Certificate of Incorporation, Articles of Association, and Memorandum of Association of KisanKraft Limited are attached hereto as Exhibits A, B, and C, respectively.

7. Washington Agrotech Limited, a corporation formed in the state of Washington, owns 80.138 percent of the common shares of KisanKraft Limited. I own 100 percent of the shares in Washington Agrotech Limited.

1

8. The remaining share percentages (19.862%) of KisanKraft are owned as follows:

| Shareholder | Percentage of Common Shares |
| --- | --- |
| Ravindra Kumar Agrawal | 1.326 |
| Sarika Agrawal | 1.293 |
| Ankit Prakash Chitalia | 1.457 |
| Krishna Kishore Chitalia | 0.059 |
| Sunil Prasad | 0.087 |
| Mamta Raika | 1.823 |
| D.R. Kumaraswamy | 0.894 |
| Charles Godwin Moore | 12.915 |
| Reena S | 0.004 |
| Pillappa A | 0.004 |
| R Somashekar | 0 (only 20 shares) |
| R Janardhana | 0 (only 20 shares) |
| R Venugopal | 0 (only 20 shares) |
| R Nalina | 0 (only 20 shares) |

9. The Chief Executive Officer of KisanKraft Limited is Ankit Prakash Chitalia. The Chief Operating Officer of KisanKraft Limited is Sunil Prasad. Both Ankit Prakash Chitalia and Sunil Prasad are on KisanKraft Limited's Board of Directors.

10. Charles Godwin Moore has never participated in the day-to-day operations or management of KisanKraft Limited.

11. KisanKraft Limited has grown every year. Growth has been funded by reinvesting earnings, additional investments by shareholders, short term borrowings, and a bank credit facility. KisanKraft Limited is a capital-intensive business and generally has a lot of inventory on hand. KisanKraft Limited accordingly reinvests all of its earnings.

12. KisanKraft Limited has followed its original business plan, which envisioned horizontal and vertical expansion around its customer base (small and marginal farmers and dealers). Recently, KisanKraft Limited has started to manufacture some products and has conducted

2

research and development activities with respect to seeds. Below is a table of revenue and earnings by year.

| Year | INR in Lakhs (100,000) | | | Indian Financial Year is 1-Apr to 31-Mar |
|---------|-----------|----------|--------|------------------------------------|
|         | Revenue   | PBT      | PAT    |                                    |
| 2005-06 | -         | (6.31)   | (4.30) | Audited                            |
| 2006-07 | 51.78     | (10.58)  | (7.10) | Audited                            |
| 2007-08 | 177.93    | 12.04    | 11.37  | Audited                            |
| 2008-09 | 450.03    | 46.80    | 31.19  | Audited                            |
| 2009-10 | 949.18    | 89.24    | 61.80  | Audited                            |
| 2010-11 | 1,706.79  | 189.86   | 126.20 | Audited                            |
| 2011-12 | 2,544.26  | 433.84   | 288.86 | Audited                            |
| 2012-13 | 3,529.27  | 417.11   | 276.20 | Audited                            |
| 2013-14 | 5,069.48  | 330.93   | 220.88 | Audited                            |
| 2014-15 | 6,390.15  | 411.83   | 272.32 | Audited                            |
| 2015-16 | 8,313.27  | 272.50   | 178.25 | Audited                            |
| 2016-17 | 10,106.11 | 548.99   | 364.05 | Audited                            |
| 2017-18 | 11,871.66 | 1,501.75 | 977.93 | Audited                            |
| 2018-19 | 14,398.41 | 1,501.13 | 1,064.00 | Provisional (not audited)        |

NOTE: Revenue listed above is operating income from sales and services. It excludes other miscellaneous income.

13. In 2017, KisanKraft Limited had 309 employees and 14 regional offices across India, in addition to head-office at Bangalore. It now has 366 employees and offices in 13 states in India, in addition to 4 facilities in home state of Karnataka. Its short-term strategy is to open a branch office in each state in India and increase its dealership network from 2,500 to 10,000 dealers.

14. KisanKraft Limited has not made any distributions of earnings to its shareholders. All earnings have been reinvested in its business.

15. KisanKraft Limited currently does not have a planned timeline for a liquidity event.

[signature on next page]

3

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct

Executed on (Date): 15th May 2019

Ravindra Kumar Agrawal

**Exhibit A – Certification of Incorporation**

प्रारूप, आई. आर.
Form I. R.
निगमन का प्रमाण-पत्र

# CERTIFICATE OF INCORPORATION

U 29220 MH 2005 PTC 155673

ता. _____ क्रॉ. सं.

No. _____ of Date _____

मैं एतद्द्वारा प्रमाणित करता हूं कि आज _____

कम्पनी अधिनियम (1956 का. सं. 1) के अधीन निगमित की गई है और कम्पनी परिसीमित है ।

**Kisankraft Machine Tools Private**

I hereby certify that

**Limited**

Is this day incorporated under the Companies Act, 1956 (No. 1 of 1956) and that the Company is limited.

मेरे हस्ताक्षर से आज ता. _____ को दिया गया ।

Given under my hand at _____ **MUMBAI** _____ this _____ **TWENTYSIXTH**

day of _____ **AUGUST** _____ Two Thousand _____ **FIVE**

( **P.K. GAICHOR** )
कम्पनियों का रजिस्ट्रार

AESTT. Registrar of Companies
Maharashtra, Mumbai

श्री. एन.
J. B. C.-1
119/रम. एच. एस. _____ 92-20-000-3-4-93-GIPG/नागपुर
118/MFS/CM/Cal/92-20-000-3-4-93-GIPG.



# भारत सरकार–कॉर्पोरेट कार्य मंत्रालय
## कम्पनी रजिस्ट्रार कार्यालय, करनाटका

### कम्पनी अधिनियम, 1956 की धारा 18(3)
राज्य परिवर्तित करने के संबंध में, प्रादेशिक निदेशक के आदेश के पंजीकरण से संबंधित प्रमाण–पत्र

कॉर्पोरेट पहचान संख्या :       U29220KA2005PTC066051
मैसर्स       KISANKRAFT MACHINE TOOLS PRIVATE LIMITED

ने अपने विशेष विनिश्चय द्वारा, इसके पंजीकृत कार्यालय को महाराष्ट्र राज्य से  करनाटका राज्य में स्थानान्तरित करने के
निमित अपने संगम–ज्ञापन के प्रावधानों में परिवर्तन कर लिया है और इस परिवर्तन की पुष्टि

COMPANY LAW BOARD, MUMBAI BENCH
के दिनांक  10/08/2012 के आदेश द्वारा किए जाने पर,

मैं, यह सत्यापित करता हूँ कि उक्त आदेश की सत्यापित प्रतिलिपि को आज पंजीकृत कर लिया गया है।

बेंगलूर में, यह प्रमाण–पत्र, आज दिनांक चार अक्तूबर दो हजार बारह को जारी किया जाता है।

## GOVERNMENT OF INDIA - MINISTRY OF CORPORATE AFFAIRS
### Registrar of Companies, Karnataka

### SECTION 18(3) OF THE COMPANIES ACT, 1956
Certificate of Registration of Regional Director order for Change of State

Corporate Identity Number : U29220KA2005PTC066051

M/s KISANKRAFT MACHINE TOOLS PRIVATE LIMITED having by special resolution altered the provisions of its Memorandum of Association with respect to the place of the Registered Office by changing it from the state of  Maharashtra to the  Karnataka and such alteration having been confirmed by an order of  COMPANY LAW BOARD, MUMBAI BENCH bearing the date  10/08/2012.

I hereby certify that a certified copy of the said order has this day been registered.

Given at Bangalore this  Fourth day of October Two Thousand Twelve.

Registrar of Companies, Karnataka
कम्पनी रजिस्ट्रार, करनाटका

*Note: The corresponding form has been approved by  K GEETHA MAHALAKSHMI, Assistant Registrar of Companies and this certificate has been digitally signed by the Registrar through a system generated digital signature under rule 5(2) of the Companies (Electronic Filing and Authentication of Documents) Rules, 2006.
The digitally signed certificate can be verified at the Ministry website (www.mca.gov.in).




कम्पनी रजिस्ट्रार के कार्यालय अभिलेख में उपलब्ध पत्राचार का पता :
Mailing Address as per record available in Registrar of Companies office:
KISANKRAFT MACHINE TOOLS PRIVATE LIMITED
32/5C Dasarahalli Village, Dasarahalli Main Road, H. A. Farm Post Office, Hebbal,



## सत्यमेव जयते
## GOVERNMENT OF INDIA
## MINISTRY OF CORPORATE AFFAIRS

Office of the Registrar of Companies

E' Wing, 2nd Floor Kendriya Sadana, Bangalore, Karnataka, India, 560034

**Certificate of Incorporation pursuant to change of name**

*[Pursuant to rule 29 of the Companies (Incorporation) Rules, 2014]*

Corporate Identification Number (CIN): U29220KA2005PTC066051

I hereby certify that the name of the company has been changed from KISANKRAFT MACHINE TOOLS PRIVATE LIMITED to KISANKRAFT PRIVATE LIMITED with effect from the date of this certificate and that the company is limited by shares.

Company was originally incorporated with the name KISANKRAFT MACHINE TOOLS PRIVATE LIMITED.

Given under my hand at Bangalore this Eleventh day of September two thousand seventeen.

Varaha Santoshi Jagirdar

Registrar of Companies
RoC - Bangalore

Mailing Address as per record available in Registrar of Companies office:

KISANKRAFT PRIVATE LIMITED

Sri Huchhanna Tower , Site # 4 , #748, 7th A Cross, Maruthi Layout , Dasarahalli , Hebbal, Bangalore, Karnataka, India, 560024



**Certificate of Incorporation Consequent upon conversion to Public Limited Company**



# GOVERNMENT OF INDIA
## MINISTRY OF CORPORATE AFFAIRS

Registrar of companies, Bangalore

E' Wing, 2nd Floor Kendriya Sadana, Bangalore, Karnataka, India, 560034

Corporate Identity Number: U29220KA2005PLC066051

Fresh Certificate of Incorporation Consequent upon Conversion from Private Company to Public Company

IN THE MATTER OF KISANKRAFT PRIVATE LIMITED

I hereby certify that KISANKRAFT PRIVATE LIMITED which was originally incorporated on Twenty sixth day of August Two thousand five under the Companies Act, 1956 as KISANKRAFT MACHINE TOOLS PRIVATE LIMITED and upon an intimation made for conversion into Public Limited Company under Section 18 of the Companies Act, 2013; and approval of Central Government signified in writing having been accorded thereto by the RoC - Bangalore vide SRN G53357067 dated 11.10.2017 the name of the said company is this day changed to KISANKRAFT LIMITED.

Given under my hand at Bangalore this Eleventh day of October Two thousand seventeen.

M JAYAKUMAR
Registrar of Companies
Registrar of Companies

RoC - Bangalore

Mailing Address as per record available in Registrar of Companies office:

KISANKRAFT LIMITED

Sri Huchhanna Tower , Site # 4 , #748, 7th A Cross, Maruthi Layout , Dasarahalli , Hebbal, Bangalore, Karnataka, India, 560024



**Exhibit B – Articles of Association**

THE COMPANIES ACT, 2013

COMPANY LIMITED BY

SHARES

ARTICLES OF ASSOCIATION

OF

## KISANKRAFT LIMITED

Subject as hereinafter provided, the Regulations contained in Table 'F' in the First Schedule to the Companies Act, 2013 shall apply to the Company.

I.　(1) In these regulations—

　　(a)　"the Act" means the Companies Act, 2013,
　　(b)　"the seal" means the common seal of the company.

　　Unless the context otherwise requires, words or expressions contained in these regulations shall bear the same meaning as in the Act or any statutory modification thereof in force at the date at which these regulations become binding on the company.

　　(2) The Company is a Public Company within the meaning of Section 2(71) of the Companies Act, 2013 and shall have a minimum paid up capital of Rs.5.00 lacs or such higher amount as may be prescribed.

### SHARE CAPITAL AND VARIATION OF RIGHTS

1. (i) The authorized share capital of the Company shall be such amount as may from time to time be authorized by the Memorandum.

　　(ii) The share capital of a company limited by shares shall be of the kinds, namely:—

　　a)　Equity share capital—with voting rights; or with differential rights as to dividend, voting or otherwise in accordance with such rules as may be prescribed; and
　　b)　Preference share capital
　　c)　Any other kind that may be permissible under the Act.

2.　Subject to the provisions of the Act and these Articles, the shares in the capital of the company shall be under the control of the Directors who may issue, allot or otherwise dispose of the same or any of them to such persons, in such proportion and on such terms and conditions and either at a premium or at par and at such time as they may from time to time think fit.

3.　(i) Every person whose name is entered as a member in the register of members shall be entitled to receive within two months after incorporation, in case of subscribers to the memorandum or after

For KISANKRAFT LIMITED

Authorised Signatory

allotment or within one month after the application for the registration of transfer or transmission or within such other period as the conditions of issue shall be provided,—

    (a)  one certificate for all his shares without payment of any charges; or

    (b)  several certificates, each for one or more of his shares, upon payment of twenty rupees for each certificate after the first.

    (ii)  Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid-up thereon.

    (iii)  In respect of any share or shares held jointly by several persons, the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

4.  (i) If any share certificate be worn out, defaced, mutilated or torn or if there be no further space on the back for endorsement of transfer, then upon production and surrender thereof to the company, a new certificate may be issued in lieu thereof, and if any certificate is lost or destroyed then upon proof thereof to the satisfaction of the company and on execution of such indemnity as the company deem adequate, a new certificate in lieu thereof shall be given. Every certificate under this Article shall be issued on payment of twenty rupees for each certificate.

    (ii) The provisions of Articles (2) and (3) shall *mutatis mutandis* apply to debentures of the company.

5.  Except as required by law, no person shall be recognised by the company as holding any share upon any trust, and the company shall not be bound by, or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share, or any interest in any fractional part of a share, or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

6.  (i) The company may exercise the powers of paying commissions conferred by sub- section (6) of section 40, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by that section and rules made thereunder.

    (ii) The rate or amount of the commission shall not exceed the rate or amount prescribed in rules made under sub-section (6) of section 40.

    (iii) The commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.

7.  (i) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, subject to the provisions of section 48, and whether or not the company is being wound up, be

For KISANKRAFT LIMITED

Authorised Signatory

varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of a special resolution passed at a separate meeting of the holders of the shares of that class.

(ii) To every such separate meeting, the provisions of these regulations relating to general meetings shall mutatis mutandis apply, but so that the necessary quorum shall be at least two persons holding at least one-third of the issued shares of the class in question.

8.  The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

9.  Subject to the provisions of section 55, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are to be redeemed on such terms and in such manner as the company before the issue of the shares may, by special resolution, determine.

### LIEN

10.  (i) The company shall have a first and paramount lien—

  (a) on every share (not being a fully paid share), for all monies (whether presently payable or not) called, or payable at a fixed time, in respect of that share; and

  (b) on all shares (not being fully paid shares) standing registered in the name of a single person, for all monies presently payable by him or his estate to the company; Provided that the Board of directors may at any time declare any share to be wholly or in part exempt from the provisions of this clause.

  (ii) The company's lien, if any, on a share shall extend to all dividends payable and bonuses declared from time to time in respect of such shares.

11.  The company may sell, in such manner as the Board thinks fit, any shares on which the company has a lien:

  Provided that no sale shall be made—

  (a) unless a sum in respect of which the lien exists is presently 'payable; or

  (b) until the expiration of fourteen days after a notice in writing stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share or the person entitled thereto by reason of his death or insolvency.

12.  (i) To give effect to any such sale, the Board may authorise some person

KisanKraft Limited        www.kisankraft.com        Page # 3        August 2017

For KISANKRAFT LIMITED

Authorised Signatory

(ii) The purchaser shall be registered as the holder of the shares comprised in any such transfer.

(iii) The purchaser shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

13. (i) The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable.

(ii) The residue, if any, shall, subject to a like lien for sums not presently payable as existed upon the shares before the sale, be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

14. (i) The Board may, from time to time, make calls upon the members in respect of any monies unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times:

Provided that no call shall exceed one-fourth of the nominal value of the share or be payable at less than one month from the date fixed for the payment of the last preceding call.

(ii) Each member shall, subject to receiving at least fourteen days' notice specifying the time or times and place of payment, pay to the company, at the time or times and place so specified, the amount called on his shares.

(iii) A call may be revoked or postponed at the discretion of the Board.

15. A call shall be deemed to have been made at the time when the resolution of the Board authorising the call was passed and may be required to be paid by installments.

16. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

17. (i) If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest thereon from the day appointed for payment thereof to the time of actual payment at ten per cent. per annum or at such lower rate, if any, as the Board may determine.

(ii) The Board shall be at liberty to waive payment of any such interest wholly or in part.

18. (i) Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall, for the purposes of these regulations, be deemed to be a call duly made and payable on the date on

For KISANKRAFT LIMITED

Authorised Signatory

which by the terms of issue such sum becomes payable.

(*ii*) In case of non-payment of such sum, all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified.

19. The Board—

(a) may, if it thinks fit, receive from any member willing to advance the same, all or any part of the monies uncalled and unpaid upon any shares held by him; and

(b) upon all or any of the monies so advanced, may (until the same would, but for such advance, become presently payable) pay interest at such rate not exceeding, unless the company in general meeting shall otherwise direct, twelve per cent per annum, as may be agreed upon between the Board and the member paying the sum in advance.

### TRANSFER OF SHARES

20. (*i*) The instrument of transfer of any share in the company shall be executed by or on behalf of both the transferor and transferee.

(*ii*) The transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

21. The Board may, subject to the right of appeal conferred by section 58 decline to register—

(a) the transfer of a share, not being a fully paid share, to a person of whom they do not approve; or
(b) any transfer of shares on which the company has a lien.

22. The Board may decline to recognise any instrument of transfer unless—

(a) the instrument of transfer is in the form as prescribed in rules made under sub- section (*I*) of section 56;
(b) the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer; and
(c) the instrument of transfer is in respect of only one class of shares.

23. On giving not less than seven days' previous notice in accordance with section 91 and rules made there under, the registration of transfers may be suspended at such times and for such periods as the Board may from time to time determine:

Provided that such registration shall not be suspended for more than thirty days at any one time or for more than forty-five days in the aggregate in any year.

For KISANKRAFT LIMITED

Authorised Signatory

## TRANSMISSION OF SHARES

24. (i) On the death of a member, the survivor or survivors where the member was a joint holder, and his nominee or nominees or legal representatives where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares.

    (ii) Nothing in clause (i) shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

25. (i) Any person becoming entitled to a share in consequence of the death or insolvency of a member may, upon such evidence being produced as may from time to time properly be required by the Board and subject as hereinafter provided, elect, either—

    (a) to be registered himself as holder of the share; or

    (b) to make such transfer of the shares as the deceased or insolvent member could have made.

    (ii) The Board shall, in either case, have the same right to decline or suspend registration as it would have had, if the deceased or insolvent member had transferred the share before his death or insolvency.

26. (i) If the person so becoming entitled shall elect to be registered as holder of the share himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects.

    (ii) If the person aforesaid shall elect to transfer the share, he shall testify his election by executing a transfer of the share.

    (iii) All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or insolvency of the member had not occurred and the notice or transfer were a transfer signed by that member.

27. A person becoming entitled to a share by reason of the death or insolvency of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company:

    Provided that the Board may, at any time, give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days, the Board may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the share, until the requirements of the notice have been complied with.

For KISANKRAFT LIMITED

Authorised Signatory

## FORFEITURE OF SHARES

28. If a member fails to pay any call, or installment of a call, on the day appointed for payment thereof, the Board may, at any time thereafter during such time as any part of the call or installment remains unpaid, serve a notice on him requiring payment of so much of the call or installment as is unpaid, together with any interest which may have accrued.

29. The notice aforesaid shall—

    (a) name a further day (not being earlier than the expiry of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made; and

    (b) state that, in the event of non-payment on or before the day so named, the shares in respect of which the call was made shall be liable to be forfeited.

30. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may, at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the Board to that effect.

31. (i) A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Board thinks fit.

    (ii) At any time before a sale or disposal as aforesaid, the Board may cancel the forfeiture on such terms as it thinks fit.

32. (i) A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding the forfeiture, remain liable to pay to the company all monies which, at the date of forfeiture, were presently payable by him to the company in respect of the shares.

    (ii) The liability of such person shall cease if and when the company shall have received payment in full of all such monies in respect of the shares.

33. (i) A duly verified declaration in writing that the declarant is a director, the manager or the secretary, of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share;

    (ii) The company may receive the consideration, if any, given for the share on any sale or disposal thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed off;

    (iii) The transferee shall thereupon be registered as the holder of the share; and

    (iv) The transferee shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any

For KISANKRAFT LIMITED

Authorised Signatory

irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

34. The provisions of these regulations as to forfeiture shall apply in the case of nonpayment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the share or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## ALTERATION OF CAPITAL

35. The company may, from time to time, by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as may be specified in the resolution.

36. Subject to the provisions of section 61, the company may, by ordinary resolution,—

   (a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;
   (b) convert all or any of its fully paid-up shares into stock, and reconvert that stock into fully paid-up shares of any denomination;
   (c) sub-divide its existing shares or any of them into shares of smaller amount than is fixed by the memorandum;
   (d) cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

37. Where shares are converted into stock,—

   (a) the holders of stock may transfer the same or any part thereof in the same manner as, and subject to the same regulations under which, the shares from which the stock arose might before the conversion have been transferred, or as near thereto as circumstances admit:

   Provided that the Board may, from time to time, fix the minimum amount of stock transferable, so, however, that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

   (b) the holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company, and other matters, as if they held the shares from which the stock arose; but no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

   (c) Such of the regulations of the company as are applicable to paid-up shares shall apply to stock and the words "share" and "shareholder" in those regulations shall include "stock" and "stock-holder" respectively.

38. The company may, by special resolution, reduce in any manner and with, and subject to, any incident authorised and consent required by law,—



For KISANKRAFT LIMITED

Authorised Signatory

(a)   its share capital;

(b)   any capital redemption reserve account; or

(c)   any share premium account.

## CAPITALISATION OF PROFITS

39. (i) The company in general meeting may, upon the recommendation of the Board, resolve—

(a) that it is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts, or to the credit of the profit and loss account, or otherwise available for distribution; and

(b) that such sum be accordingly set free for distribution in the manner specified in clause (ii) amongst the members who would have been entitled thereto, if distributed by way of dividend and in the same proportions.

(ii) The sum aforesaid shall not be paid in cash but shall be applied, subject to the provision contained in clause (iii), either in or towards—

(A)   paying up any amounts for the time being unpaid on any shares held by such members respectively;

(B)   paying up in full, unissued shares of the company to be allotted and distributed, credited as fully paid-up, to and amongst such members in the proportions aforesaid

(C)   partly in the way specified in sub-clause (A) and partly in that specified in sub- clause (B);

(D)   A securities premium account and a capital redemption reserve account may, for the purposes of this regulation, be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares;

(E)   The Board shall give effect to the resolution passed by the company in pursuance of this regulation.

40. (i) Whenever such a resolution as aforesaid shall have been passed, the Board shall—

(a) make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares if any; and

(b) Generally do all acts and things required to give effect thereto.

(ii) The Board shall have power—

(a) to make such provisions, by the issue of fractional certificates or by payment in cash or otherwise as it thinks fit, for the case of shares becoming distributable infractions; and

(b) to authorise any person to enter, on behalf of all the members entitled thereto, into an agreement with the company providing for the allotment to them respectively, credited as fully paid-up, of any

capitalisation, or as the case may require, for the payment by the
company on their behalf, by the application thereto of their
respective proportions of profits resolved to be capitalised, of the
amount or any part of the amounts remaining unpaid on their
existing shares;

(iii) Any agreement made under such authority shall be effective and
binding on such members.

## BUY-BACK OF SHARES

41. Notwithstanding anything contained in these articles but subject to the
provisions of sections 68 to 70 and any other applicable provision of the
Act or any other law for the time being in force, the company may
purchase its own shares or other specified securities.

## GENERAL MEETINGS

42. A General Meeting of the Company may be called by giving not less than
clear TWENTY ONE days' notice in writing, but may be called after giving
shorter notice if consent is accorded by members of the Company, as per
the provisions of the Act. All general meetings other than annual general
meeting shall be called extraordinary general meeting.

43. (i) The Board may, whenever it thinks fit, call an extraordinary general
meeting.

(ii) If at any time directors capable of acting who are sufficient in number
to form a quorum are not within India, any director or any two members
of the company may call an extraordinary general meeting in the same
manner, as nearly as possible, as that in which such a meeting may be
called by the Board.

## PROCEEDINGS AT GENERAL MEETINGS

44. (i) No business shall be transacted at any general meeting unless a quorum
of members is present at the time when the meeting proceeds to business.

(ii) Save as otherwise provided herein, the quorum for the general
meetings shall be as provided in section 103.

45. The chairperson, if any, of the Board shall preside as Chairperson at
every General Meeting of the company.

46. If there is no such Chairperson, or if he is not present within fifteen
minutes after the time appointed for holding the meeting, or is unwilling
to act as chairperson of the meeting, the directors present shall elect one
of their members to be Chairperson of the meeting.

47. If at any meeting no director is willing to act as Chairperson or if no
director is present within fifteen minutes after the time appointed for
holding the meeting, the members present shall choose one of their

KisanKraft Limited        www.kisankraft.com        Page # 10        August 2017

For KISANKRAFT LIMITED

Authorised Signatory

members to be Chairperson of the meeting.

## ADJOURNMENT OF MEETING

48. (i) The Chairperson may, with the consent of any meeting at which a quorum is present, and shall, if so directed by the meeting, adjourn the meeting from time to time and from place to place.

(ii) No business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.

(iii) When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.

(iv) Save as aforesaid, and as provided in section 103 of the Act, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

## VOTING RIGHTS

49. Subject to any rights or restrictions for the time being attached to any class or classes of shares,—

(a) on a show of hands, every member present in person shall have one vote; and
(b) on a poll, the voting rights of members shall be in proportion to his share in the paid-up equity share capital of the company.

50. A member may exercise his vote at a meeting by electronic means in accordance with section 108 and shall vote only once.

51. (i) In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders.

(ii) For this purpose, seniority shall be determined by the order in which the names stand in the register of members.

52. A member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee or other legal guardian, and any such committee or guardian may, on a poll, vote by proxy.

53. Any business other than that upon which a poll has been demanded may be preceded with, pending the taking of the poll.

54. No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

55. (i) No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all

For KISANKRAFT LIMITED

Authorised Signatory

purposes.

(ii) Any such objection made in due time shall be referred to the Chairperson of the meeting, whose decision shall be final and conclusive.

## PROXY

56. The instrument appointing a proxy and the power-of-attorney or other authority, if any, under which it is signed or a notarised copy of that power or authority, shall be deposited at the registered office of the company not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, or, in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; and in default the instrument of proxy shall not be treated as valid.

57. An instrument appointing a proxy shall be in the form as prescribed in the rules made under section 105.

58. A vote given in accordance with the terms of an instrument of proxy shall be valid, notwithstanding the previous death or insanity of the principal or the revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the shares in respect of which the proxy is given:

Provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the company at its office before the commencement of the meeting or adjourned meeting at which the proxy is used.

## BOARD OF DIRECTORS

59. The number of the directors and the names of the first directors shall be determined in writing by the subscribers of the memorandum or a majority of them. The maximum number of directors shall be fifteen including the managing director.

The First Directors of the Company shall be: -

    A)    **MR. RAVINDRA KUMAR AGRAWAL S/O MR. BHAGWANTLAL AGRAWAL**

    B)    **MR. KISHORE SHANTILAL CHITALIA**
    C)    **MR. L. SHIVARAM S/O MR. R. LAKSHMINARASIMHAIAH**
    D)    **MRS. SARLA NARSINH MORARJI**
    E)    **MRS. SARIKA AGRAWAL W/O RAVINDRA KUMAR AGRAWAL.**
    F)    **MR. ARUN INDUR KESWANI**

60. (i) The remuneration of the directors shall, in so far as it consists of a

For KISANKRAFT LIMITED

Authorised Signatory

monthly payment, be deemed to accrue from day-to-day.

(*ii*) In addition to the remuneration payable to them in pursuance of the Act, the directors may be paid all travelling, hotel and other expenses properly incurred by them—

    (a)  in attending and returning from meetings of the Board of Directors or any committee thereof or general meetings of the company; or

    (b)  in connection with the business of the company.

61. The Board may pay all expenses incurred in getting up and registering the company.

62. The company may exercise the powers conferred on it by section 88 with regard to the keeping of a foreign register; and the Board may (subject to the provisions of that section) make and vary such regulations as it may think fit with respect to keeping of any such register.

63. All cheques, promissory notes, drafts, *hundis*, bills of exchange and other negotiable instruments, and all receipts for monies paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, by such person and in such manner as the Board shall from time to time by resolution determine.

64. Every director present at any meeting of the Board or of a committee thereof shall sign his name in a book to be kept for that purpose.

65. (*i*) Subject to the provisions of section 149, the Board shall have power at any time, and from time to time, to appoint a person as an additional director, provided the number of the directors and additional directors together shall not at any time exceed the maximum strength fixed for the Board by the articles.

(*ii*) Such person shall hold office only up to the date of the next annual general meeting of the company but shall be eligible for appointment by the company as a director at that meeting subject to the provisions of the Act.

### PROCEEDINGS OF THE BOARD

66. (*i*) The Board of Directors may meet for the conduct of business, adjourn and otherwise regulate its meetings, as it thinks fit.

(*ii*) A director may, and the manager or secretary on the requisition of a director shall, at any time, summon a meeting of the Board.

67. (*i*) Save as otherwise expressly provided in the Act, questions arising at any meeting of the Board shall be decided by a majority of votes.

(*ii*) In case of an equality of votes, the Chairperson of the Board, if any,

shall have a second or casting vote.

68. The continuing directors may act notwithstanding any vacancy in the Board; but, if and so long as their number is reduced below the quorum fixed by the Act for a meeting of the Board, the continuing directors or director may act for the purpose of increasing the number of directors to that fixed for the quorum, or of summoning a general meeting of the company, but for no other purpose.

69. (i) The Board may elect a Chairperson of its meetings and determine the period for which he is to hold office.

(ii) If no such Chairperson is elected, or if at any meeting the Chairperson is not present within five minutes after the time appointed for holding the meeting, the directors present may choose one of their numbers to be Chairperson of the meeting.

70. (i) The Board may, subject to the provisions of the Act, delegate any of its powers to committees consisting of such member or members of its body as it thinks fit.

(ii) Any committee so formed shall, in the exercise of the powers so delegated, conform to any regulations that may be imposed on it by the Board.

71. (i) A committee may elect a Chairperson of its meetings.

(ii) If no such Chairperson is elected, or if at any meeting the Chairperson is not present within five minutes after the time appointed for holding the meeting, the members present may choose one of their members to be Chairperson of the meeting.

72. (i) A committee may meet and adjourn as it thinks fit.

(ii) Questions arising at any meeting of a committee shall be determined by a majority of votes of the members present, and in case of an equality of votes, the Chairperson shall have a second or casting vote.

73. All acts done in any meeting of the Board or of a committee thereof or by any person acting as a director, shall, notwithstanding that it may be afterwards discovered that there was some defect in the appointment of any one or more of such directors or of any person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such director or such person had been duly appointed and was qualified to be a director.

74. Save as otherwise expressly provided in the Act, a resolution in writing, signed by all the members of the Board or of a committee thereof, for the time being entitled to receive notice of a meeting of the Board or committee, shall be valid and effective as if it had been passed at a meeting of the Board or committee, duly convened and held.



For KISANKRAFT LIMITED

Authorised Signatory

## CHIEF EXECUTIVE OFFICER, MANAGER, COMPANY SECRETARY OR CHIEF FINANCIAL OFFICER

75. Subject to the provisions of the Act,—

(i) A chief executive officer, manager, company secretary or chief financial officer may be appointed by the Board for such term, at such remuneration and upon such conditions as it may thinks fit; and any chief executive officer, manager, company secretary or chief financial officer so appointed may be removed by means of a resolution of the Board;

(ii) A director may be appointed as chief executive officer, manager, company secretary or chief financial officer.

76. A provision of the Act or these regulations requiring or authorising a thing to be done by or to a director and chief executive officer, manager, company secretary or chief financial officer shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, chief executive officer, manager, company secretary or chief financial officer.

## THE SEAL

77. (i) The Board shall provide for the safe custody of the seal.

(ii) The seal of the company shall not be affixed to any instrument except by the authority of a resolution of the Board or of a committee of the Board authorised by it in that behalf, and except in the presence of at least two directors and of the secretary or such other person as the Board may appoint for the purpose; and those two directors and the secretary or other person aforesaid shall sign every instrument to which the seal of the company is so affixed in their presence.

## DIVIDENDS AND RESERVE

78. The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the Board.

79. Subject to the provisions of section 123, the Board may from time to time pay to the members such interim dividends as appear to it to be justified by the profits of the company.

80. (i) The Board may, before recommending any dividend, set aside out of the profits of the company such sums as it thinks fit as a reserve or reserves which shall, at the discretion of the Board, be applicable for any purpose to which the profits of the company may be properly applied, including provision for meeting contingencies or for equalizing dividends; and pending such application, may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the Board may, from time to time, thinks fit.

(ii) The Board may also carry forward any profits which it may consider necessary not to divide, without setting them aside as a reserve.

For KISANKRAFT LIMITED
Authorised Signatory

81. (i) Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but if and so long as nothing is paid upon any of the shares in the company, dividends may be declared and paid according to the amounts of the shares.

(ii) No amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share

(iii) All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

82. The Board may deduct from any dividend payable to any member all sums of money, if any, presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

83. (i) Any dividend, interest or other monies payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named on the register of members, or to such person and to such address as the holder or joint holders may in writing direct.

(ii) Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.

84. Any one of two or more joint holders of a share may give effective receipts for any dividends, bonuses or other monies payable in respect of such share.

85. Notice of any dividend that may have been declared shall be given to the persons entitled to share therein in the manner mentioned in the Act.

86. No dividend shall bear interest against the company.

## ACCOUNTS

87. (i) The Board shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations, the accounts and books of the company, or any of them, shall be open to the inspection of members not being directors.

(ii) No member (not being a director) shall have any right of inspecting any account or book or document of the company except as conferred by law or authorised by the Board or by the company in general meeting.

## WINDING UP

88. Subject to the provisions of Chapter XX of the Act and rules made

For KISANKRAFT LIMITED

Authorised Signatory

thereunder—

(i) If the company shall be wound up, the liquidator may, with the sanction of a special resolution of the company and any other sanction required by the Act, divide amongst the members, in specie or kind, the whole or any part of the assets of the company, whether they shall consist of property of the same kind or not.

(ii) For the purpose aforesaid, the liquidator may set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.

(iii) The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories if he considers necessary, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

89. Every officer of the company shall be indemnified out of the assets of the company against any liability incurred by him in defending any proceedings, whether civil or criminal, in which judgment is given in his favour or in which he is acquitted or in which relief is granted to him by the court or the Tribunal.

## GENERAL AUTHORITY

90. Wherever in the Companies Act, it has been provided that the Company shall have any right, privilege or authority or that the Company could carry out any transaction only if the Company is so authorised by its Articles, then and in that case this Regulation hereby authorizes and empowers the Company to have such right, privilege or authority and to carry such transaction as have been permitted by the Act, without there being any specific regulation in that behalf herein provided

**For KISANKRAFT LIMITED**

**Authorised Signatory**

We, the several persons whose names, addresses and descriptions are hereunder subscribed below, are desirous of being formed into a Company in pursuance of this **ARTICLES OF ASSOCIATION** of the Company:

| Name, address, description and occupation of the subscriber | Signature of subscriber | Signature of Witness and his name, address, description |
|---|---|---|
| **L. SHIVARAM** S/o. R. LAKSHMINARASIMHAIAH 482, 40TH CROSS, FIFTH BLOCK, JAYANAGAR, BANGLORE-560 041. *BUSINESS* | Sd/- | |
| RAVINDRA KUMAR AGRAWAL S/o. BHAGWANT LAL AGRAWAL 11019 172nd Place NE Redmond, WA 98052, USA *BUSINESS* | For Ravindra Kumar Agrawal **Sd/-** Kishore S. Chitalia POA holder | **WITNESS TO 1 TO 6** |
| **KISHORE S. CHITALIA** S/o. SHANTILAL CHITALIA GHAMAT TERRACE, 2 ND FLOOR, S.B. MARG, DADAR (WEST), MUMBAI-400 028. *BUSINESS* | Sd/- | Sd/- *Dinesh R. Mutha* S/o. Ramesh R. Mutha G-3, Black Diamond CHS Ltd. |
| **COMSTRUCT EXPORTS PRIVATE LIMITED** (Represented By Its Director: Mrs. SARLA NARSINH MORARJI W/o Late SHRI NARSINH G. MORARJI) 11, RAJAB MAHAL, 144 M. KARVE ROAD, MUMBAI-400 020. **BUSINESS** | Sd/- | Khar Danda Road, Khar (West) Mumbai – 400 052 **PROFESSION** |
| **ARUN INDUR KESWANI** S/o. Late INDUR KESWANI JASAWALA COURT, 3rd FLOOR, 47-B BULABHAI DESAI ROAD, MUMBAI-400 026. **BUSINESS** | Sd/- | |



For KISANKRAFT LIMITED

| | | |
|---|---|---|
| RAMAR RADHAKRISHNAN<br>S/o. KANNAIAH GOWDA RAMAR<br>24, 14th CROSS,<br>BHUVANESHWARINAGAR,<br>DASARAHALLI, KEMPAPURA,<br>BANGALORE 560 024<br><br>*BUSINESS* | Sd/- | |
| TOTAL | | |

Dated : 12 / August / 2005

*Place :  Mumbai*

For KISANKRAFT LIMITED

Authorised Signatory

Exhibit C – Memorandum of Association

THE COMPANIES ACT, 2013
COMPANY LIMITED BY SHARES

(Incorporated under the Companies Act, 1956)

## MEMORANDUM OF ASSOCIATION

### OF

### KISANKRAFT LIMITED

1° The name of the Company is "KISANKRAFT LIMITED".

2° The Registered Office of the Company will be situated in the State of Karnataka.

3° (A) THE OBJECTS TO BE PURSUED BY THE COMPANY ON ITS INCORPORATION ARE:

1. To work with, work upon, contract, sub-contract, support, sponsor, service or provide any services, advice or assistance in, consign, purchase, import, market, launch, promote, distribute, propagate, exhibit, test, demonstrate, export, invent, develop, design, manufacture, produce, modify, improve, assemble, fabricate, integrate, build, construct, modernize, up-grade, use, operate, document, charter, acquire, repair, recondition, lease, sell, license, hire, franchise, publish, publicize, perform, manage, process, dispose off or otherwise transfer or carry on trade or business and/or deal in all kinds of processes, systems, solutions, applications, procedures, implements, equipment, tools, machinery, products, devices, parts / components, assemblies / sub-assemblies, spares, conveniences, facilities, goods, and for any purposes including but not limited to such as are particularly related or connected in any way to ; agriculture, tilling, threshing, farming, cultivation, orchards, horticulture, floriculture, plantations, irrigation, sericulture, vermiculture, winery, viticulture penology, and estate preparation/ management/ development/ improvement, earth moving, gardening, landscaping, transport, goods/ materials/ do-it-yourself (DIY) offerings, information, technology and anything of a character supplementary/ complementary/ secondary, analogous, ancillary or auxiliary to the foregoing or any of them or connected therewith.

2. Research & Development, manufacture, import, export, sales, distribution, repairs and service of machinery, tools, equipment, devices, implements for all tasks of agriculture practices for example, but not limited to, soil preparation, seeding and planting, inter-cultivation, weed control, spraying, plant protection, crop management, irrigation, harvesting, post-harvesting for agriculture, sericulture, horticulture, olericulture, floriculture, viticulture, dairy, poultry, fishery, aquaculture, animal husbandry, dairy, forestry, pomology etc.

3. Research & Development, manufacture, import, export, sale and distribution repairs and service of irrigation machinery, tool and devices, for example, but not limited to, drip irrigation, sprinklers and spraying equipment, submersible, centrifugal and all kinds of water pumps and other water lifting equipment, aerators, aquifer management and utilization equipment etc.

KisanKraft Limited          www.kisankraft.com          Page # 1          August 2017

For KISANKRAFT LIMITED

Authorised Signatory

4. Research & Development, manufacture, import, export, and distribution of machinery, tool and devices for planting, transplanting, seeding, harvesting, populating, processing - spanning all branches of agricultural practices, for example, but not limited to, agriculture, sericulture, horticulture, olericulture, floriculture, viticulture, dairy, poultry, fishery, aquaculture, animal husbandry, dairy, forestry, pomology etc.

5. Research & Development of seeds and planting materials, spanning all branches of agricultural practices, for example, but not limited to, agriculture, sericulture, horticulture, olericulture, floriculture, viticulture etc. Licensing & Registration, production, import, export, sales and distribution of seeds and planting materials spanning all branches of agricultural practices, for example, but not limited to, agriculture, apiculture, sericulture, horticulture, floriculture, olericulture, viticulture etc.

6. Research & Development, processing, sale and distribution of agricultural produce spanning all branches of agricultural practices.

7. Research & Development, owning and operating, cultivation of Plantations of Tea, Coffee, Rubber, Cardamom, Oil Palm, Olive etc. Floriculture, Horticulture, Apiculture and Cultivation of Vegetables & Mushrooms under controlled conditions* and Animal Husbandry (including breeding of dogs), Pisciculture, Aquaculture, under controlled conditions;

8. Services related to Agro and allied sectors for example, but not limited to processing, sale, distribution, imports, exports of agricultural by products such as bagasse, composts, vermiculture etc.

9. Conducting trainings related to Agricultural Machines and equipment, various agricultural Practices, research undertaken and any related sectors for, including but not limited to, Dealers, Mechanics, Farmers, Employees and Members.

10. To carry on the business of manufacturers, processors. formulators, sellers, purchasers, distributors, packers, labellers, importers, exporters and traders in all kinds of pesticides combined pesticides, technical grade pesticide, formulations, granules dusts, liquids, powders, slurries, pastes, fungicides, weedicides, rodenticides, pesticides, plant hormones, botanical and insecticides, biotechnologicals, straight simple and granulated, fertilisers and their mixtures, cattle feeds, agricultural chemicals, base chemicals, soil nutrients of micro and micro types clays of different colors.

11. Any of the objects listed above maybe carried out using either conventional off-line or modern internet based online virtual marketing platforms and creating virtual malls through software applications designed and developed in-house or procured from a third party.

KisanKraft Limited      www.kisankraft.com        Page # 2           August 2017

For KISANKRAFT LIMITED

Authorised Signatory

**MATTERS WHICH ARE NECESSARY FOR FURTHERANCE OF THE OBJECTS SPECIFIED IN CLAUSE 3 (a)**

1. To negotiate loans, underwriting contracts, mortgages, equity participation, cash credits, overdraft and other financial facilities from banks, financial institutions, government or semi government bodies and others by drawing instruments like, but not restricted to, Bills of Exchange, Promissory Notes, Hundies, Letter of Credit, Commercial Papers on behalf of companies, firms, societies, associations and others.

2. To enter into contracts, agreements and arrangements with any other company, licensees person, firms, trust, or any other party whether in India or elsewhere for the carrying out by such other company or partly on behalf of the company of any of the objects for which the company is founded.

3. To enter into contracts with Governments, whether local, provincial or central, in the Union of India or elsewhere in the world.

4. To pay out of the funds of the company all expenses which the company may lawfully pay off, or incidental to the formation, registration of and advertising of or raising money for the company and the issue of its capital including brokerage and commissions for obtaining applications for placing or underwritings or procuring the underwriting of shares, debentures or debenture-stock and to apply at the cost of the company to any competent authority for the extension of the company's powers.

5. To obtain any order or license of any Government or of any other authority of any legislature for establishing the company to carry any of its objects into effect or for effecting any modification of the company's constitution or for any other purpose which may seem expedient, and to oppose any proceedings or applications, which may seem calculated to prejudice the company's interests.

6. To enter into any arrangements with any Government authorities, municipal, local or otherwise or any persons or company that may seem conducive to the objects of the company or any of them and to obtain from any such Government, authority, person or company any rights, privileges, charters, contracts, finance, licenses and concessions including in particular rights in respect or railway, waterways, roads and highways, which the company may think fit desirable and carry out, exercise and comply therewith.

7. To form, constitute, promote, subsidise, organise and assist or aid in forming constituting, promoting, subsidising, organising and assisting or aiding any company or companies, of all kinds for the purpose of acquiring all or any of the property, rights and liabilities of this company, or for carrying on any business which this company is authorised to carry on or to promote or advance the interest of this company.

8. To employ experts to investigate and examine into the conditions, prospects, value, character and circumstances of any business concern or undertaking and generally of any assets, property or rights and to provide for their remuneration by payment in cash or otherwise.

9. To carry on business or branch of a business, which this company is authorised to carry on, by means, or through the agency of any subsidiary company or companies, and to enter into any arrangement with such subsidiary company for taking the profits and bearing the losses of any

KisanKraft Limited     www.kisankraft.com     Page # 3     August 2017

For KISANKRAFT LIMITED

Authorised Signatory

business or branch as carried on, or for financing and subsidiary company or guaranteeing its liabilities, or to make any other arrangement which may seem desirable with reference to any time and either temporarily or permanently to close any such branch or business.

10. To adopt such means of making known to the public the business of this company and in particular, by giving prizes, awards, and donations or advertising prizes, awards and donation or advertising in the press by circulars, by hoarding, posters, placards, publication of books, journals banners.

11. To nominate directors or managers of any subsidiary company in which this company is or may be interested.

12. To send out to foreign countries Directors, Employees, in promoting the interest of the company and to pay all the expenses incurred in this connection.

13. To take part in the management, supervision and control of the business or operations of any company or undertaking.

14. For the purpose mentioned in the preceding clause to appoint and remunerate any directors, trustees, accountants or other experts or agents.

15. To purchase, take on lease or hire or otherwise acquire any movable or immovable property and rights or privileges which the company may think necessary or convenient for the purpose of its business and in particular, any vehicle, ship or such other craft, any land, buildings, easements and stock-in-trade and either to retain any property acquired for the purpose of the company's business or to turn the same to account as may seem expedient.

16. To let, lease, sell, re-sell, part with transfer, purchase, mortgage, charge or otherwise with the company's undertaking, buildings, or other property or any part of thereof belonging to the company, or which may be deemed necessary or convenient for the purpose of company's business or may be thought desirable.

17. To sell, lease, mortgage, grant licenses, easements and other rights over and in any other manner deal with or dispose of the undertaking, property, assets, rights and effects of the company, as may be thought fit, and in particular, for share, debentures or securities of any of the company, to promote any other company or companies for the purpose of its or their acquiring all or any of the property, rights or liabilities of the company.

18. To amalgamate, enter into any partnership or acquire the whole or any part of the business, property and liabilities of, or acquire any interest in the business or undertaking of, or enter into partnership or any arrangement for sharing into partnership or any arrangement for sharing profits or losses, or for any union of interest, joint ownership, joint venture, reciprocal concession or co-operation with any person, association of persons, firm or company, carrying on or engaged in or about to carry on or be engaged in business or transaction, which the company is or may be authorised to carry on or for mutual assistance, with any such person, association, firm or company.

19. To purchase, take on lease or license or hire or otherwise deal in any real and/or personal property and any rights or privileges and advantages of any kind whatsoever which the company may think necessary or convenient for the purpose of its business or may enhance the value of any other property of the company and, in particular, any land (freehold, leasehold, or other tenure),

For KISANKRAFT LIMITED

Authorised Signatory

tenements, buildings, easements, machinery, plant and stock-in-trade and on any such lands, to erect buildings, in factories, sheds, branch office , godowns, warehouses or other structures for the works and purposes of the company, and also for the residence and amenity of its employed staff and other workmen and erect and install machinery and plant and other equipments deemed necessary or convenient or profitable for the purpose of the company and either to retain any property to be acquired for the purpose of the company's business or to re-sell, mortgage, let on lease and or otherwise deal with or to turn the same to account as may seem expedient.

20.   To establish or promote or concur in establishing or promoting any company or companies for the purpose of acquiring all or any of the property, rights and liabilities of the company or for any other purpose and to place or guarantee the placing of, underwrite, subscribe for or otherwise, acquire all or any part of the shares, debentures or other securities of any such other company.

21.   To enter into any arrangement with any state or the Union Government or Authority, Municipal or Local authorities or other persons or firms or otherwise that may seem conducive to the attainment of the company's objects or any of them and to apply for and to obtain or to purchase or otherwise acquire from any such Government, Municipal or Local authorities or other persons or firms all monopolies, rights, concession, licenses, grants, decrees, sanctions, powers and privileges whatsoever which the company may think beneficial or desirable to obtain and to carry out exercise and comply with any such arrangements, rights, privileges and concession for the benefit of this company.

22.   To apply for, promote and obtain any act, charter privilege, concession, licenses, order of municipality, provisional order or license or any authority for enabling the company to carry any of its objects into effect, or for extending any of the powers of the company or for effecting any modification of the company's constitution, or for any other purpose which may seem expedient and to oppose any proceedings or applications which may seem calculated, directly or indirectly, to prejudice the company's interest.

23.   To apply for, purchase or otherwise acquire, and protect and renew in any part of the world, any patents, patent rights, brevet invention, trademarks, designs, licenses, concessions and the like conferring any absolute exclusive, non-exclusive or limited right to their use or any secret or other information as to any invention which may seem capable of being used for any of the business of the company or / and to sue, exercise develop or grant licenses in respect of or otherwise turn to account the property, rights or information so acquired and to expend money in experimenting upon, testing or improving any such patents, inventions, rights or information.

24.   To become member of association or company or members of any chamber of commerce or other body or association of business trade or industries.

25.   To procure the recognition of the company in any country, state or place and to apply for or join in applying to any parliament, government, local municipal or other authority or body, in India, British Common Wealth or other foreign countries for any act, or laws, decrees, concessions.

26.   To refer, or agree to refer, any claim, demand, dispute or any other question, by or against the company, or in which the company is interested or concerned, and whether between the company and a member/members or his or their representatives, or between the company and third parties, to arbitration in India or at any place outside India, and to observe and perform and to do all acts, deeds, matters and things to carry out or enforce the awards.

KisanKraft Limited      www.kisankraft.com      Page # 5      August 2017

For KISANKRAFT LIMITED

Authorised Signatory

27. To lend and advance money with or without security or to give credit to such persons, firms, companies or cooperation and on such terms as may seem expedient and in particular, to customers and others having dealing with the company.

28. To undertake and execute any trusts the undertaking of which may seem to the company desirable for the benefit of employees or former employees.

29. Subject to the provisions of the Companies Act 1956, to distribute among the members in specie, any property of the company, or any proceeds of sale or disposal of any property of the company, in the event of winding up.

30. To insure the whole or any part of the property of the company, either fully or partially, to protect and indemnify the company from liability or loss in any respect, either fully or partially and also to insure and to protect thereof, either on mutual principle or otherwise.

31. To carry out in any part of the world all or any part of the company's objects as principal, agents, carrier, broker, underwriter, insurer, factor, trustee, contractor, or otherwise, either alone or in conjunction with any other person, firm, association, corporate body, municipality, province, state or government or colony or dependency thereof.

32. To exercise all or any of its corporate powers rights and privileges and to conduct its business in all or any of its branches in Union of India and in any or all states, territories possessions, colonies and dependencies there and in any or all foreign countries, and for the purpose to have and maintain and to discontinue such number of offices and agencies therein as may be convenient.

33. To stand guarantors and be surety or answerable for the debts or defaults of any person, firm or company arising on contracts for payment or repayment of moneys or loans or the fulfilment of any obligation or performance by any such person, firm or company, and to enter into contracts of indemnify or guarantee on such terms and conditions as may seem necessary or expedient for effecting the same.

34. To create any depreciation fund, reserve fund, sinking fund, insurance fund equalisation fund for dividend or any special or other fund, whether for depreciation or for repairing improving, extending, or maintaining any of the property or properties of the company or for redemption of debenture or redeemable preference shares or for any other purpose whatsoever conducive to the interest of the company.

35. To furnish and provide deposits and guarantee any funds required in relation to any tender or application for any contract, concession, decree, enactment, property or privilege or in relation to the carrying out of any contract, concession, decree or enactment.

36. To own, establish, or have and maintain branches and agencies all over India and anywhere in the world, for serving its business.

37. To open, maintain, adjust, start or close account of all nature and description with any Bank or Banks as may from time to time be thought fit and to operate upon and pay into or withdraw money from such accounts and do all acts necessary for the purpose, in or outside India.

For KISANKRAFT LIMITED

Authorised Signatory

38. To act as agents of any other person/s or any other company in the interests of the company, with or without remuneration.

39. To mortgage and charge the whole or any part of the undertaking and all or part of the movable and immovable property present or future and all or any part of the uncalled capital for the time being of the company and to create issue at par or at premium or discount or for such consideration as may be thought fit debentures, mortgage debentures and debenture stock payable to bearer or otherwise and either permanent or redeemable or repayable and collaterally or further, to secure any securities of the company by a Trust Deed or other assurances.

40. To indemnify Officers, Directors, Promoters and Servants of the company against proceedings, costs, damages, claims and demands in respect of anything done, or ordered to be done, and in the interests of the company or for any loss or damage or misfortune whatever which happens in execution of the duties of their office or in relation thereto.

41. To open all kinds of Bank Accounts, and to operate the same.

42. To subscribe, contribute or guarantee money for any general or useful object or funds or political parties or institutions and to aid pecuniarily or otherwise any association, body or movement having for an object the solution, settlement or surmounting of industrial or labour problems or trouble or the promotion of industry or trade.

43. To issue debentures, debenture-stock, bonds obligations and securities of all kinds and to frame, constitute and secure terms for the same, as may seem expedient, with full power to make the same transferable by delivery or by instrument of transfer or otherwise and either perpetual or terminable and either redeemable or otherwise and to charge or secure the same by trust deed of otherwise on the undertaking of the company or upon any specific property and rights, present and future, of the company including, if thought fit, uncalled capital or otherwise howsoever.

44. To invest and deal with moneys and funds belonging or entrusted to the company, not immediately required in land, buildings, bullion, commodities, shares, debentures, articles, goods, negotiable instruments, advances against ships, vessels, vehicles, air crafts or such other crafts or any movable or immovable property or rights, government, municipal and other bonds and securities and in such other investment and in such manner as may from time to time be determined and to vary such investments and transactions and to lend moneys on such terms with or without security as may seem expedient and in particular to customers and other having dealings with the company and to guarantee the performance of contracts by any such persons.

45. To let any portion of any premises for residential, trade or business purposes or other private or public purposes and to collect rents and income and to supply to tenants and occupiers and others, refreshments, clubs, public halls, massagers, lights, waiting rooms, reading rooms, meeting rooms, lavatories, laundry conveniences, electric conveniences, garages, gymnasiums and other amenities.

46. To insure or guarantee the payment of advances, credits, bills of exchange and other commercial obligations or commitments of every description as well as insure or guarantee the fulfilment of contracts and other trading and commercial transactions of every description, whether at home or abroad and to indemnify any person against the same and to guarantee the payment of money secured by or payable under or in respect of any debentures, debenture stock, bond, mortgage,

For KISANKRAFT LIMITED

Authorised Signatory

charge, security, contracts or obligations of any persons, persons or corporation or any authority, supreme, municipal, local or otherwise.

47.   To establish well equipped laboratories to carry on Research and Development and other related work in the interest of business.

48.   To negotiate for loans, cash credits, overdraft, buyer's credit, other financial facilities from national / international - banks, financial institutions, government or semi government bodies and others by drawing instruments like, but not restricted to, Bills of Exchange, Promissory Notes, Hundies, Letter of Credit, Commercial Papers on behalf of companies, firms, societies, associations and others of every description to discount or arrange and negotiate international exports credits, imports credits, buyers and seller credits worldwide and to arrange finance for projects in India and abroad

4th   The liability of the Members is limited and this liability is limited to the amount unpaid, if any, on the shares held by them.

5th   The Authorised Share Capital of the Company is Rs.3,00,00,000/- (Rupees Three Crore Only) divided into 3,00,00,000 (Three Crore) Equity Shares of Re. 1/- (Rupee One) each.

****************

*Revision Notes:*

*\*This new set of the MOA is approved and adopted in substitution and exclusion of the old MOA by the shareholders in the AGM dated 29th August 2017, wherein the name of the Company is changed and the constitution of the Company is changed from Private Limited Company to Public Limited Company.*

KisanKraft Limited       www.kisankraft.com       Page # 8       August 2017

For KISANKRAFT LIMITED

Authorised Signatory

We, the several persons whose names, addresses and descriptions are hereunder subscribed below, are desirous of being formed into a Company in pursuance of this **MEMORANDUM OF ASSOCIATION** and we respectively agree to take the number of shares in the capital of the Company set opposite to our respective names:

| Name, address, description and occupation of the subscriber | Number of Equity Shares taken by each subscriber | Signature of subscriber | Signature of Witness and his name, address, description |
|---|---|---|---|
| L. SHIVARAM<br>S/o. R. LAKSHMINARASIMHAIAH<br>482, 40TH CROSS, FIFTH BLOCK,<br>JAYANAGAR, BANGLORE-560 041.<br>BUSINESS | 22,000<br>(TWENTY TWO THOUSAND) | Sd/- | WITNESS TO 1 TO 6<br><br>Sd/- |
| RAVINDRA KUMAR AGRAWAL<br>S/o. BHAGWANT LAL AGRAWAL<br>11019 172nd Place NE<br>Redmond, WA 98052, USA<br>BUSINESS | 24,000<br>(TWENTY FOUR THOUSAND) | For Ravindra Kumar Agrawal<br>Sd/-<br>Kishore S. Chitalia<br>POA holder | Dinesh R. Mutha<br>S/o. Ramesh R. Mutha<br>G-3, Black Diamond CHS Ltd.<br>Khar Danda Road, Khar (West)<br>Mumbai – 400 052<br><br>PROFESSION |
| KISHORE S. CHITALIA<br>S/o. SHANTILAL CHITALIA<br>GHAMAT TERRACE, 2 ND FLOOR,<br>S.B. MARG, DADAR (WEST),<br>MUMBAI-400 028.<br>BUSINESS | 4,000<br>(FOUR THOUSAND) | Sd/- | |
| COMSTRUCT EXPORTS PRIVATE LIMITED<br>(Represented By Its Director: Mrs. SARLA NARSINH MORARJI<br>W/o Late SHRI NARSINH G. MORARJI)<br>11, RAJAB MAHAL, 144 M. KARVE ROAD, MUMBAI-400 020.<br>BUSINESS | 24,000<br>(TWENTY FOUR THOUSAND) | Sd/- | |

For KISANKRAFT LIMITED

Authorised Signatory

| | | | |
|---|---|---|---|
| ARUN INDUR KESWANI<br><br>S/o. Late INDUR KESWANI<br><br>JASAWALA COURT, 3rd  FLOOR, 47-B BULABHAI DESAI ROAD,<br><br>MUMBAI-400 026.<br><br>*BUSINESS* | 24,000<br><br>(TWENTY        FOUR THOUSAND) | Sd/- | |
| RAMAR RADHAKRISHNAN<br><br>S/o. KANNAIAH GOWDA  RAMAR<br><br>24,        14th        CROSS, BHUVANESHWARINAGAR, DASARAHALLI,        KEMPAPURA, BANGALORE 560 024<br><br>*BUSINESS* | 2,000<br><br>(TWO THOUSAND) | Sd/- | |
| TOTAL | 100,000<br><br>(ONE LAKH) | | |

Dated : 12 / August / 2005
Place : Mumbai

For KISANKRAFT LIMITED

Authorised Signatory

+ L +