1

HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11  CHARLES G. MOORE and KATHLEEN F.
    MOORE,

Civil Action No. 2:19-cv-01539 JCC

12
                Plaintiffs,

**PLAINTIFFS' REPLY IN SUPPORT
OF CROSS-MOTION FOR SUMMARY
JUDGMENT**

13

14      v.

Note on Motion Calendar: June 1, 2020

15  UNITED STATES OF AMERICA,

***Oral Argument Requested***

16              Defendant.

17

18      Plaintiffs Charles G. Moore and Kathleen F. Moore hereby submit the following reply

19  memorandum in support of their cross-motion for summary judgment.

20

21

22

23

24

25

26

27  PLAINTIFFS' REPLY IN SUPPORT OF
    CROSS-MOTION FOR SUMMARY
    JUDGMENT
    CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

# **Table of Contents**

Introduction and Summary of Argument ..................................................................... 1

Argument ................................................................................................................... 2

I. The Mandatory Repatriation Tax Is Not a Tax on "Incomes" Authorized by the Sixteenth Amendment ......................................................................... 2

    A. The Mandatory Repatriation Tax Is Not a Tax on the Taxpayer's Income ............................................................................................... 2

    B. The Accumulated Corporate Earnings Targeted by the MRT Are Not Shareholder Income .............................................................. 6

    C. The Mandatory Repatriation Tax Is Not a Tax on *Income*, But Capital ............................................................................................ 7

II. The Mandatory Repatriation Tax Violates the Fifth Amendment ................. 8

    A. The Mandatory Repatriation Tax Is Retroactive Because It "Attaches New Legal Consequences to Events Completed Before Its Enactment" ........................................................................... 8

    B. The Mandatory Repatriation Tax Is a Wholly New Tax ................... 11

    C. The Mandatory Repatriation Tax Does Not Satisfy the *Carlton* Standard ...................................................................................... 12

III. If the Mandatory Repatriation Tax Is Unconstitutional, the Moores Are Entitled to a Refund of the Amount They Paid To Satisfy Their MRT Liability ...................................................................................................... 15

Conclusion ................................................................................................................ 17

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - i
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

## Table of Authorities

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................................4, 12

*Ahmanson Found. v. United States*, 674 F. 2d 761 (9th Cir. 1981) ...........................16, 17

*Am. Min. Cong. v. EPA*, 965 F.2d 759 (9th Cir. 1992) ..............................................10–11

*Battaglia v. General Motors Corp.*, 169 F.2d 254 (2d Cir. 1948) ...................................13

*Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426 (1955) ......................................1, 3, 4, 5, 7

*Cottage Savings Assn. v. Comm'r*, 499 U.S. 554 (1991) ....................................................4

*Dougherty v. Comm'r*, 60 T.C. 917 (1973) ..................................................................6, 10

*Eder v. Comm'r*, 138 F.2d 27 (2d Cir. 1943) ....................................................................5

*Eisner v. Macomber*, 252 U.S. 189 (1920) .................................................................passim

*First Fin. Bank, N.A. v. Christensen*, 2012 WL 2789020 (D. Nev. July 9, 2012) ...........17

*Garlock v. Comm'r*, 489 F.2d 197 (2d Cir. 1973) .............................................................5

*GPX Intern. Tire Corp. v. United States*, 780 F.3d 1136 (Fed. Cir. 2015) ...............14, 15

*Heiner v. Mellon*, 304 U.S. 271 (1938) .............................................................................5

*Helvering v. Bruun*, 309 U.S. 461 (1940 ..........................................................................3

*Helvering v. Griffiths*, 318 U.S. 371 (1943) ...................................................................3, 7

*Helvering v. Nat'l Grocery Co.*, 304 U.S. 282 (1938) .................................................3, 5, 6

*In re Harvard Industries, Inc.*, 352 B.R. 613 (Bankr. D.N.J. 2006) ................................13

*Ivan Allen Co. v. United States*, 422 U.S. 617 (1975) .......................................................7

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) .....................................................8, 9

*Mariani Frozen Foods, Inc. v. Comm'r*, 81 T.C. 448 (1983) .............................................3

*N. Carolina Dept. of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*,
     139 S. Ct. 2213 (2019) .........................................................................................14, 15

*Nathel v. Comm'r*, 615 F.3d 83 (2d Cir. 2010) .................................................................8

*NFIB v. Sebelius*, 567 U.S. 519 (2012) ..............................................................................4

*Nichols v. Coolidge*, 274 U.S. 531 (1927) ..................................................................11, 12

*Paul v. Holland Am. Line, Inc.*, 463 F. Supp. 2d 1203 (W.D. Wash. 2006) ....................17

*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) ....................................................11

*Quijano v. United States*, 93 F.3d 26 (9th Cir. 1996) .....................................................1, 3

*Rodney, Inc., v. Hoey*, 53 F. Supp. 604 (S.D.N.Y. 1944) ..................................................5

*SIH Partners LLLP v. Comm'r*, 923 F.3d 296 (3d Cir. 2019) ...........................................3

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - ii
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

*United States v. Carlton*, 512 U.S. 26 (1994) .......................................................8, 12, 13

*United States v. Darusmont*, 449 U.S. 292 (1981)...........................................................11

*United States v. Donruss Co.*, 393 U.S. 297 (1969) ..........................................................7

*United States v. James*, 333 F.2d 748 (9th Cir. 1964) .......................................................3

*United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970) ...................................................13

*Untermyer v. Anderson*, 276 U.S. 440 (1928) ................................................................12

*Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409 (9th Cir. 1986)............................................3

*Whitlock's Estate v. Comm'r*, 494 F.2d 1297 (10th Cir. 1974) .........................................5

**Statutes and Rules**

26 U.S.C. § 61 ...............................................................................................................9, 14

26 U.S.C. § 245 .................................................................................................................14

26 U.S.C. § 301 ..........................................................................................................10, 14

26 U.S.C. § 951 .................................................................................................................14

26 U.S.C. § 952 ..........................................................................................................11, 14

26 U.S.C. § 965 ....................................................................................................4, 9, 17

Fed. R. Civ. P. 56................................................................................................................16, 17

Revenue Act of 1916, 39 Stat. 756 (1916)........................................................................11

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - iii
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

## **Introduction and Summary of Argument**

The Government refuses to confront or even acknowledge governing authority that defines "incomes" under the Sixteenth Amendment to exclude the kind of unrealized gains that are subject to the Mandatory Repatriation Tax ("MRT"). As the Moores previously explained, the Supreme Court reaffirmed *Macomber*'s realization-event requirement in *Glenshaw Glass* by defining Sixteenth Amendment "incomes" as "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Comm'r v. Glenshaw Glass Co*., 348 U.S. 426, 431 (1955). The Ninth Circuit holds that language to define "'income' in its constitutional sense." *Quijano v. United States*, 93 F.3d 26, 30 (9th Cir. 1996) (cleaned up). The Government's response to this rather pertinent authority? Silence. It does not even cite *Glenshaw Glass*, let alone attempt to explain how the MRT satisfies *Glenshaw Glass*'s interpretation of the Sixteenth Amendment. It plainly does not: even the Government does not dispute that taxpayers subject to the MRT have not "clearly realized" anything. Moreover, the Government has no response to the longstanding rule that the non-current accumulations of earnings targeted by the MRT are capital, not income, and it skates past *Macomber*'s still-good holding that accumulated corporate earnings cannot be attributed to shareholders as income. For each of those three reasons—the realization-event requirement, the capitalization rule, and the attribution bar—the MRT is not a tax on income. Instead, the MRT taxes solely on the basis of the ownership of personal property, shares in a corporation, rendering it a direct tax. And because it is not apportioned, it is unconstitutional.

The MRT also violates the Fifth Amendment. While attempting to confuse the matter by focusing almost exclusively on other taxes, the Government does not seriously dispute that the MRT taxes long-ago transactions—CFCs' accumulations of earnings in prior tax years—that have never before been taxed. And that was for good reason: the tax code has always, until now, recognized the reality that those transactions did not result in taxpayers like the Moores receiving anything on which they fairly could be taxed. The MRT breaks from that settled practice by imposing new consequences on those long-completed transactions and does so in unprecedented

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 1
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

fashion, reaching back thirty years—decades longer than in any case identified by the Government. The Government attempts to brush away the MRT's aggravating and uniquely arbitrary features: taxing shareholders on years' worth of corporate earnings they've never received, even if (like the Moores) they lack any right to demand the money from the corporation. But those are the same features the Supreme Court has held sufficiently arbitrary (even without the retroactive component) to violate constitutional due process.

Finally, if the Moores are right that the MRT is unconstitutional, then they are entitled to summary judgment at this time. The Government's unsupported claim that the Moore's might have underpaid some part of their income tax does not satisfy the Ninth Circuit's requirement that the Government identify a basis for such a claim to avoid summary judgment.

<u>**Argument**</u>

## I. The Mandatory Repatriation Tax Is Not a Tax on "Incomes" Authorized by the Sixteenth Amendment

The Government does not dispute that, if the MRT does not tax Sixteenth Amendment "incomes," then it is a direct tax on property and unconstitutional because it is not apportioned. Although insisting that the MRT is a tax on incomes, the Government fails to rebut well-established authority to the contrary. First, the Government outright ignores binding authority that the Sixteenth Amendment requires a realization event to render a gain income, and it identifies no event by which the MRT satisfies that requirement. Second, the Government does not dispute *Macomber* to have held that a corporation's accumulated earnings cannot be attributed to its shareholders, and it identifies no precedent that sanctions the MRT's doing just that. Third, the Government declines to address the longstanding rule that a corporation's accumulations of earnings in past years are capital, not income, and so cannot be taxed as income, as the MRT does.

### A. The Mandatory Repatriation Tax Is Not a Tax on the Taxpayer's Income

**1.** Guns out for *Macomber*, the Government simply disregards subsequent precedents reaffirming *Macomber*'s core holding that a taxpayer realizes no taxable income absent a realization event. *Eisner v. Macomber*, 252 U.S. 189, 207 (1920) (holding "income" to be a

---

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 2
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

"gain…*received* or *drawn* by the recipient (the taxpayer) for his *separate* use, benefit and disposal"). That holding remains good law. As noted, *Glenshaw Glass* reaffirmed it, defining "incomes" as "undeniable accessions to wealth, *clearly realized*, and over which the taxpayers have complete dominion." 348 U.S. at 431 (emphasis added). As noted, the Ninth Circuit has repeatedly recognized *Glenshaw Glass* to define "'income' in its constitutional sense," *Quijano*, 93 F.3d at 30 (cleaned up); *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1414 (9th Cir. 1986). And, as noted, the Government has no response to any of this.

   In fact, the Government's position is even worse than that. It claims (at 10) that the Ninth Circuit "dismissed the notion [of] a *Macomber*-like 'realization' requirement" in *United States v. James*, 333 F.2d 748, 753 (9th Cir. 1964), and proceeds to blockquote a portion of the decision discussing *Macomber*, but omits that *James* recited and applied the *Glenshaw Glass* definition of "incomes" set out above, *id.* at 752 (holding that definition to be "clearly applicable"). In other words, *James* stands for precisely the opposite proposition of what the Government claims.

   Subsequent precedent aside, the Government's attacks on *Macomber* miss the mark. The Government contends (at 9) that *Helvering v. Bruun* "rejected *Macomber*'s strict definition of income and limited its application to its facts," but *Bruun* merely clarifies that so long as a gain is realized by a taxpayer, it need not be severable from the taxpayer's property to be income—such as when a tenant constructs a building on the taxpayer's real estate. 309 U.S. 461, 468–69 (1940). Neither that holding nor anything else in *Bruun* undermines the requirement of a realization event; to the contrary, *Bruun* recognizes that the required "realization" occurs when the gain is "received by the taxpayer." *Id.* at 469. Similarly, the Government's claim (at 7) that *Mariani Frozen Foods, Inc. v. Comm'r*, 81 T.C. 448 (1983), *aff'd sub nom. Gee Trust v. Comm'r*, 761 F.2d 1410 (9th Cir. 1985), "upheld" schemes like the MRT is belied by the fact that the case involved no constitutional challenge at all.[1] Even farther off the mark are *Helvering v. National Grocery Co.*, 304 U.S. 282 (1938), and *Helvering v. Griffiths*, 318 U.S. 371 (1943), neither of which recognizes (as the

---

[1] The same is true of *SIH Partners LLLP v. Comm'r*, 923 F.3d 296 (3d Cir. 2019), which (like *Mariani/Gee*) involved a dispute over tax liability but no constitutional claim.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 3
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1    Government claims, at 9–10) that "*Macomber* should be overruled," let alone holds as much. That

2    may explain why the Government declines to quote a single word from either decision. Further

3    undercutting that claim is the Supreme Court's recent application of *Macomber* in *NFIB v.*

4    *Sebelius*, 567 U.S. 519, 571 (2012).[2]

5         In any instance, the Government's policy criticisms of *Macomber* and view that it "should

6    be overruled" are misplaced here given its concession to the reality that *Macomber* "has not been

7    expressly overturned." MSJ.Opp.9. The Supreme Court retains the exclusive "prerogative of

8    overruling its own decisions," leaving this Court to "follow the case which directly controls."

9    *Agostini v. Felton*, 521 U.S. 203, 237 (1997). That case is *Macomber*, as well as the subsequent

10   precedents like *Glenshaw Glass* that reaffirm its core holding limiting income to gains realized by

11   the taxpayer through a realization event.

12        Finally, that holding is dispositive of the fate of the MRT. While the Government disputes

13   the validity of that holding at great length, it does not and cannot dispute that MRT liability is

14   imposed in the absence of "undeniable accessions to wealth, clearly realized, and over which the

15   taxpayers have complete dominion." *Glenshaw Glass*, 348 U.S. at 431. Indeed, the MRT's

16   application turns on no actual event at all—the Government identifies none—but a fictional

17   "deemed repatriation" conjured by Congress out of thin air.[3] For that reason, the MRT is not a tax

18   on income and is instead one on taxpayers' property interest in shares in foreign corporations—a

19   direct tax. *See* MSJ.Mem.8–9. And because that direct tax is not apportioned among the states, it

20   is unconstitutional. *NFIB*, 567 U.S. at 571.

21        **2.**    The Government largely recycles its prior briefing on cases involving Subpart F

22   and its predecessors, without answering the specific points raised by the Moores.

23

24

---

25   [2] Likewise, *Cottage Savings Assn. v. Comm'r*, 499 U.S. 554 (1991), does not hold that the realization requirement to
     be merely "a matter of administrative convenience," as the Government claims (at 10). Indeed, the decision identifies
26   *Macomber* as providing "the classic treatment of realization" and explains that there was no realization in *Macomber*
     "because no gain was realized" by the taxpayer, as here. *Id.* at 563.

27   [3] In fact, the concept of a "deemed repatriation" event appears nowhere in 26 U.S.C. § 965.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 4
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

To begin with, the Moores noted (at 13–14) that *Eder v. Comm'r*, 138 F.2d 27 (2d Cir. 1943), did not even say what constitutional issue it was addressing, contained no reasoning at all on that issue, and would have been overruled by *Glenshaw Glass* if it had purported to dispense with *Macomber*'s realization-event requirement. The Government's only responses to these points (at 12) are to speculate that *Macomber* (which *Eder* did not mention) "could not have been far from the court's thinking" and to decry as "unfounded" the Moores' questioning of the value of a claimed persuasive authority that contains no reasoning on the issue for which it is cited.

The Government's treatment of *Garlock v. Comm'r*, 489 F.2d 197 (2d Cir. 1973), is equally non-responsive. As the Moores noted (at 14), *Garlock* contained scarcely more reasoning than *Eder*, which it held to be controlling. *Id.* at 202. Once again, the Government asserts (at 15) that *Garlock* recognizes *Heiner v. Mellon*, 304 U.S. 271 (1938), to have overruled *Macomber*'s realization-event requirement. And, once again, the Government declines to explain where or how *Mellon* did so or, if it did, how that could be reconciled with the Supreme Court's subsequent affirmation of the realization-event requirement in *Glenshaw Glass*. *See* MSJ.Mem.13–14 (raising these points). This silence confirms what is apparent from reading *Mellon*: it did no such thing.

Similarly, the Moores noted (at 14) that *Whitlock's Estate v. Comm'r* distinguished *Macomber* on the ground that there was a realization event, "an investment in United States property" by a foreign corporation under the thumb of the taxpayers. 494 F.2d 1297, 1301 (10th Cir. 1974). In response, the Government (at 13) concedes that "the liability in *Whitlock* arose when retained earnings were invested in U.S. property," but speculates that the court may still have dispensed with the realization-event requirement because it cited *Helvering v. National Grocery Co.*, 304 U.S. 282 (1938).[4] But if that were so, why wouldn't the court have said so, and why did it identify a specific realization event and then proceed to cite *Glenshaw Glass* in the very next breath? *Id.* The Government has no answer.

---

[4] The Government also cites a decision mentioned by the Tax Court in *Whitlock's Estate*, *Rodney, Inc., v. Hoey*, 53 F. Supp. 604, 607–08 (S.D.N.Y. 1944), but that decision did nothing more than state that it was bound by *Eder*.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 5
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

The Government leaves for last *Dougherty v. Comm'r*, 60 T.C. 917 (1973), having previously given it pride of first placement, *see* MTD.3. Its demotion may relate to the fact, which the Government only now concedes (at 16), that the Tax Court specifically identified the "taxable event," for constitutional purposes, as an "investment in U.S. property" that "manifest[ed] the shareholder's exercise of control." 60 T.C. at 930. The Government quibbles that this "event" may not have satisfied *Macomber*, but the court's reasoning contradicts the Government's position that the Sixteenth Amendment requires no realization event at all.

### B.    The Accumulated Corporate Earnings Targeted by the MRT Are Not Shareholder Income

The Government's argument (at 3–5) that the corporate form may be disregarded and accumulated corporate earnings attributed to shareholders as income is beside the point and wrong.

It is beside the point because, as discussed above, the MRT uniquely imposes liability absent any realization event at any level, turning instead on a fictional "deemed repatriation," and because, as discussed below, a corporation's accumulated earnings from past years are not "income" at all. Attributing a corporation's accumulated earnings to its shareholders does not resolve these defects and so cannot cure the constitutional infirmity.

Attribution would also violate the Constitution. *Macomber* expressly held as much, 252 U.S. at 214–15,[5] the Government does not dispute that it did, and the Government does not contend that *Macomber* has been overruled on this point. Nonetheless, it maintains (at 3–5) that the corporate form may be disregarded and shareholders subjected to an "income" tax on accumulated corporate earnings, citing five court decisions that do not support the point.

The first is *Macomber*—in particular, Justice Brandeis's dissent. Perhaps needless to say, a dissent represents the view that lost and is not controlling.

The second, *Helvering v. National Grocery Co*., upheld an "accumulated earnings tax" levied on corporations, not their shareholders. 304 U.S. 282, 284 (1938) (quoting tax provision). That tax also did not apply to past years' earnings, but to corporations' current-year income. *Id*.;

---

[5] *See also* MSJ.Mem.11–12.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 6
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

*see also* MSJ.Mem.15–16. The court mused that Congress might tax "the sole owner of [a] business" who abused the corporate form to avoid taxation. *Id*. at 288. But that was pure dicta, and not even the Government contends otherwise.

The third and fourth—*Ivan Allen Co. v. United States*, 422 U.S. 617 (1975), and *United States v. Donruss Co*., 393 U.S. 297 (1969)—are cited by the Government (at 3) only as providing background on corporate taxation. As with *National Grocery*, both concern versions of the "accumulated earnings tax" that were levied on corporations, not their shareholders. *See Ivan Allen*, 422 U.S. at 633; *Donruss*, 393 U.S. at 297.

The fifth and final case is *Helvering v. Griffiths*, 318 U.S. 371 (1943), which the Government accurately describes (at 5) as "declin[ing] to revisit *Macomber*'s holding."

In sum, it is undisputed that *Macomber* holds that accumulated corporate earnings cannot be attributed to shareholders as income, and the Government has identified no authority that undermines that holding.[6]

## C.    The Mandatory Repatriation Tax Is Not a Tax on *Income*, But Capital

The Government does not respond to the argument that a corporation's accumulations of earnings in past years are capital (i.e., shareholder equity), not income, such that a tax on them is not a tax on income. As the Moores explained (at 12), *Macomber* held that the accumulation of past years' earnings is not "income" at all for purposes of the Sixteenth Amendment: "[W]hat is called the stockholder's share in the accumulated profits of the company is capital, not income." 252 U.S. at 219; *see also id*. at 211 (recognizing "that the company's accumulated profits have been capitalized"); *id*. at 212 (holding that a corporation's "antecedent accumulation of profits" makes "the shareholder…richer because of an increase of his capital" without the shareholder realizing "any income"). The Supreme Court reaffirmed that holding in *Glenshaw Glass*, 348 U.S. at 431 (approving *Macomber*'s approach to "distinguishing gain from capital"), and that holding

---

[6] Although again citing (at 11) the tax code's treatment of partnerships and S-corporations, the Government does not respond to the Moores' cited authorities distinguishing corporations from partnerships and the point that S corporation shareholders must consent to "flow-through" tax treatment. *See* MSJ.Mem.13 & n.10.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 7
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

still stands, *see Nathel v. Comm'r*, 615 F.3d 83, 92 (2d Cir. 2010) (recognizing that "the earlier cases' treatment of capital as distinct from income," including in *Macomber*, remains good law). The Government does not identify a single instance of a tax treating past years' earnings as income, let alone one upheld by a court as a tax on income. The only example is the tax struck down in *Macomber* that, just like the MRT, sought to tax as income "the stockholder's share of the undivided profits previously accumulated by the corporation." 252 U.S. at 217. There being no basis to distinguish *Macomber*, or any erosion of its holding on this point, the MRT must meet the same fate.

## II.   The Mandatory Repatriation Tax Violates the Fifth Amendment

The MRT is unprecedented in its thirty-year retroactive reach, as confirmed by the Government's inability to identify any precedent for it. Eager to avoid confronting that point, the Government insists that the MRT has no retroactive application at all, a claim trivially rebutted by the statutory text and the fact that the MRT imposes tax liability on past transactions *that have never previously been taxed*. It is for that reason that the MRT is a wholly new tax and therefore constitutionally barred from retroactive application. The result is the same under the more permissive *Carlton* standard, given the MRT's oppressively retroactive reach and uniquely arbitrary features.

### A.   The Mandatory Repatriation Tax Is Retroactive Because It "Attaches New Legal Consequences to Events Completed Before Its Enactment"[7]

**1.**   The Government is sufficiently anxious about its due process argument that it devotes the opening three pages (at 16–19) to attacking a straw-man definition of retroactivity that the Moores never espoused. The Moores argued in their summary judgment memorandum that "[t]he MRT is retroactive because it attaches new legal consequences—tax liability—to events *completed* before its enactment." MSJ.Mem.18 (emphasis added); *see also Landgraf*, 511 U.S. at 269–70 (reciting same standard). They did not, as the Government contends (at 16), argue that anything that leaves a taxpayer "worse off" and "implicates 'prior conduct'" is retroactive. But

---

[7] *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994).

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 8
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1  taking the Moores' argument as they made it would not permit the Government to attempt to tie

2  the Moores' claim against the MRT to hypotheticals that are inapt because they do not involve

3  *completed* events, such as contracts involving future performance (at 16, 22–23) and other

4  "frustrated expectations" concerning future affairs (at 23). Curiously, the Government does not

5  mention that its motion to dismiss (at 18) recited the same standard for retroactivity, from

6  *Landgraf*, that the Moores identified as controlling.

7      **2.**      The MRT's statutory text on its face satisfies the *Landgraf* standard because it

8  attaches new legal consequences (tax liability) to events completed before its enactment (a

9  corporation's accumulations of earnings in previous years). *See* 26 U.S.C. § 965(d)(3) (taxing

10 "earnings and profits…accumulated in taxable years beginning after December 31, 1986").

11 Although the Government disputes that the MRT is retroactive, it does not deny that the

12 accumulation of earnings in a tax year prior to 2017 is an event completed prior to enactment of

13 the MRT. *See* MSJ.Mem.18. The Government's only response (at 19) concerning the statutory text

14 is that the MRT has no retroactive effect because it labels those old accumulations of earnings an

15 "inclusion" in taxpayers' current-year income. That is, as the Moores previously observed, pure

16 sophistry, and the Government identifies no authority giving effect to such labels.[8]

17      **3.**      The Government is wrong to contend (at 17) that the MRT does not attach new

18 legal consequences to what is undisputedly completed past conduct. The Government's view (at

19 18, 20–21) is that the tax liability of taxpayers like the Moores was "deferred," but Subpart F did

20 not and does not codify the maxim about death and taxes. Instead, the law simply defines what tax

21 is due in the current tax year. Under previous law, the taxpayers who are now subject to the MRT

22 owed no tax on CFCs' retained earnings, because no provision taxed them on those earnings.

23 Conversely, previous law did tax distributions of CFC earnings to taxpayers. 26 U.S.C. §§ 61(a),

24

---

25 [8] The Government's reference (at 20) to the tax code's definition of dividends is puzzling. The 1913 date referenced

26 there—which corresponds to the ratification of the Sixteenth Amendment—actually *limits* what qualifies as a taxable dividend, and dividends are taxed as current-year income, not retroactively. *See* 26 U.S.C. § 61(a)(7) (defining "gross income" to include "dividends"). If Congress imposed new tax liability on dividends received thirty years ago, it

27 would be subject to the same retroactivity objection as here.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 9
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

301(c). That is why the Government cannot claim that the Moores had any obligation under previous law to pay tax on such earnings in any past year *or any future year* so long as they remained overseas with KisanKraft. The MRT changed that by imposing tax liability directly on past years' accumulations of earnings—the ones that were not taxed under previous law— irrespective of any actual or *de facto* distribution. That new consequence works a serious injury on taxpayers like the Moores, because they haven't actually received any distribution that they could use to pay the tax and may never see the money—after all, businesses do get sold, and others go belly up, before making any distributions to shareholders. But under the MRT, the Moores have to pay up, no matter whether they ever would have incurred tax liability under previous law.

**4.** The Government's continued insistence that the Tax Court's decision in *Dougherty* supports its argument against the MRT having retroactive effect is baffling, as the decision says nothing on the point. *Dougherty* does reject a retroactivity challenge to a tax statute, 60 T.C. at 929, but nowhere does it suggest that the statute did not apply retroactively. That said, the tax liability there arguably was not retroactive, because it turned on a "taxable event" (a repatriation of accumulated earnings) that occurred after enactment of the statute. *Id*. But that only underscores the unprecedented nature of the MRT, which imposes liability based on events completed years or even decades before its enactment in the absence of any post-enactment event.

Finally, little more need be said about the so-called "prior earnings" and "prior conduct" cases cited (at 22–23) by the Government, because it says nothing new about them. As noted above, its reliance on these cases is premised on the incorrect view that the Moores' claim conflates ongoing conduct (like an executory contract where payment remains to be made) with completed conduct (like a corporation's retention of earnings in a long-ago tax year). Given that the Government does not deny that a corporation's retention of earnings in a tax year prior to 2017 is an event completed prior to enactment of the MRT, and that MRT liability turns on no conduct other than that, it is indisputably retroactive in its application.[9]

---

[9] The Moores did not previously address the so-called "frustrated expectations" cases cited by the Government (at 23) because they are plainly inapposite. *See also* MTD.24–26. The environmental regulation at issue in *Am. Min. Cong.*

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 10
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

**B.      The Mandatory Repatriation Tax Is a Wholly New Tax**

The MRT is a "wholly new tax" because taxpayers subject to it "ha[d] 'no reason to suppose that any transactions of the sort will be taxed at all.'" *Quarty v. United States*, 170 F.3d 961, 967 (9th Cir. 1999) (quoting *United States v. Darusmont*, 449 U.S. 292, 298, 300 (1981)). The transactions that the MRT taxes are CFCs' accumulations of earnings in prior tax years, and those transactions were never taxed at all prior to the MRT. *See supra* § II.A; MSJ.Mem.4, 18, 22.[10] And taxpayers had no reason to suppose that they ever would be: the tax code, up until the MRT, recognized the reality that those transactions did not result in taxpayers like the Moores receiving anything on which they could fairly be taxed. The Government refuses to recognize that reality or any limit on Congress's power to subject taxpayers to wholly new retroactive exactions.

**1.**      The weakness and unprincipled nature of the Government's position is reflected in its lead argument (at 24–25) that any amendment made to Subpart F or any part of the income tax can never be a "wholly new" tax. Astoundingly, it asserts (at 25) that the MRT is *not a tax at all* because it merely defines a new "income inclusion[]" that, in turn, is subject to income tax. Under that view, Congress could propound a new "income inclusion" of "your wallet and your keys"— or, less cheekily, the value of all volunteer labor received by nonprofits over the past five years— and taxpayers would have no recourse but to pay up. That view is, of course, inconsistent with the standard applied in *Quarty*, *supra*, and it also conflicts with *Nichols v. Coolidge*, 274 U.S. 531, 533–34, 542–43 (1927), which held the Fifth Amendment to bar enforcement of *an amendment* to the existing federal estate tax that swept in transfers made before the amendment's passage.[11]

**2.**      The Government does not dispute that the MRT functions differently and independently from the remainder of Subpart F. *See* MSJ.Mem.22 (describing how the MRT

---

*v. EPA*, 965 F.2d 759 (9th Cir. 1992), for example, may have frustrated expectations about what the law would be in the future, but had purely prospective effect. Unlike in those cases, the thrust of the Moores' complaint is not that their expectations have been frustrated—although they have—but that the MRT imposes a new tax on long-completed conduct.

[10] *See also* 26 U.S.C. § 952(c)(1)(A) ("Subpart F income limited to current earnings and profits").

[11] The estate tax was enacted in 1916, 274 U.S. at 534 n.1; Revenue Act of 1916, 39 Stat. 756 (1916), the transfer was made in 1917, 274 U.S. at 533, and the retroactive amendment was enacted in 1919, *id*. at 539.

---

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

provides its "own unique tax rates, lookback-period, limitations on foreign tax credits, and timing provisions"). Nor does the Government deny that the MRT is a one-time assessment—indeed, it concedes the point (at 25)—rather than an amendment or revision to Subpart F's ongoing application. *See* MSJ.Mem.22–23. While the Government does attempt (at 25) to play down the relevance of the MRT's one-time structure, its argument rests on the mistaken premise that the transactions the MRT targets previously were taxed, when in fact they were not. *See supra* § II.A; MSJ.Mem.4, 18, 22. In that respect, the MRT does precisely what the Government denies— "reclassify previously untaxable income as taxable"—further confirming that it is a wholly new tax.

3.      The Government does not take issue with the rule that a wholly new tax may not be retroactively applied and concedes (at 27) that cases like *Nichols* and *Untermyer v. Anderson*, 276 U.S. 440 (1928), applying that rule "remain on the books" and have not been overruled. For that reason, the Court may not accept the Government's suggestion that it decline to apply that rule here. If the MRT is a wholly new tax, then *Nichols* and *Untermyer* are "the case[s] which directly control[]" and so must be followed. *Agostini*, 521 U.S. at 237. And they dictate the conclusion that the MRT, as a wholly new retroactive tax, is invalid.

### C.      The Mandatory Repatriation Tax Does Not Satisfy the *Carlton* Standard

Irrespective of whether the MRT is a wholly new tax, it also violates the rule of *United States v. Carlton*, 512 U.S. 26, 32, 30 (1994), that permits "only a modest period of retroactivity" in taxation and disapproves "harsh and oppressive" retroactive measures. If the MRT with its unprecedented thirty-year retroactive reach and other arbitrary features satisfies the *Carlton* standard, then it is difficult to imagine any retroactive exaction that would not.

1.      Rather than address head-on whether the MRT's reach exceeds the "modest period of retroactivity" permitted under *Carlton*, the Government prefers to fight the straw man of whether *Carlton* imposes a "bright-line rule." MSJ.Opp.27–29. Its reluctance to confront the real issue is understandable because a thirty-year retroactive effect is blatantly immodest and far

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 12
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

exceeds—by decades—the "short and limited periods required by the practicalities of producing national legislation" that have previously been approved. 512 U.S. at 33. Wherever precisely the *Carlton* line lies, the MRT transgresses it, setting a new record for retroactive taxation.

The Government's newly cited authorities only confirm that the MRT's excessive retroactive reach is truly without precedent. Having tried and failed to find any authority approving retroactive taxation anywhere near as oppressive as the MRT, the Government has now abandoned the effort and turned instead to the criminal law, *United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970); employment law, *Battaglia v. General Motors Corp*., 169 F.2d 254 (2d Cir. 1948); and bankruptcy, *In re Harvard Industries, Inc.*, 352 B.R. 613 (Bankr. D.N.J. 2006). *See* MSJ.Opp.38. Even putting aside the questionable relevance *vel non* of these cases, they add nothing. *Perry* upheld a retroactive application of an anti-kickback criminal offense on the ground that "there can be no due process objection when the defendants' course of conduct is in violation of the longstanding public policy against kickbacks," without any comment on the duration of retroactivity. 431 F.2d at 1024. *Battaglia* upheld the Portal-to-Portal Act notwithstanding that it upset preexisting contractual rights, again without any comment on the duration of retroactivity. 169 F.2d at 260–61. And, as the Government acknowledges (at 28), the bankruptcy court decision in *Harvard Industries* "did not involve a constitutional challenge," and it says nothing of relevance here. It speaks volumes that the Government regards these random cases as its strongest precedents, and they reflect the Government's apparent recognition that the only constitutional line that the MRT could satisfy is no line at all.

**2.** The MRT is also "arbitrary and irrational," *Carlton*, 512 U.S. at 30, in taxing CFC shareholders on accumulated earnings that are not in any sense theirs and in targeting long-ago reported earnings that a CFC may no longer possess or be able to access in liquid form. While the Government asserts (at 31–32) that these features are "remedial," it does not dispute that the MRT does not further the tax-avoidance rationale that justifies the rest of Subpart F. *See* MSJ.Mem.26. To the contrary, the MRT targets only accumulations of earnings that were and are *excluded from*

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 13
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

*the ordinary operation of Subpart F*. The sole purpose served by the MRT's retroactive application is to generate revenue, a non-remedial purpose. *See GPX Intern. Tire Corp. v. United States*, 780 F.3d 1136, 1144 (Fed. Cir. 2015). The Government contends (at 31) that taxpayers would receive a "windfall" because accumulated earnings could now be repatriated "tax-free," but that deduction is unavailable for individual taxpayers like the Moores. *See* 26 U.S.C. § 245A(a) (limiting deduction to "domestic corporation[s]"). If they ever receive a distribution from KisanKraft's accumulated earnings, rest assured that the tax collector will receive his part. *See* 26 U.S.C. §§ 61(a), 301(c).

Beyond merely arbitrary, and encroaching on "harsh and oppressive," is the MRT's application to minority shareholders like the Moores who lack the power to compel distribution of the years and years of reinvested earnings that the MRT deems to be theirs. The Government contends (at 32) that this is "consistent[] with the rest of the subpart F framework," but it is not. As noted, previous law did not tax the retained earnings now subject to the MRT and did not operate retroactively. And even where minority shareholders were on the hook for taxes on earnings they may not have received directly, their liability was limited to current-year earnings and distributions, giving them the ability to avoid additional tax liability in subsequent years by disposing of their shares. 26 U.S.C. §§ 301(c), 951(a), 952(c)(1). By contrast, the MRT imposes tax liability for thirty years' worth of retained earnings in one fell swoop, and the earnings it targets—because they were retained—were invested in the business and so are unlikely to be available for distributions. It was exactly that kind of treatment—taxing trust beneficiaries on income that they "have no right to demand…and are uncertain ever to receive"—that the Supreme Court found sufficiently arbitrary to violate constitutional due process in *N. Carolina Dept. of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr*., 139 S. Ct. 2213, 2221 (2019). The best the Government can do to attempt to distinguish *Kaestner* is to point out that it was decided under the Fourteenth Amendment's Due Process Clause rather than the Fifth Amendment's, that there can be uncertainty whether corporations will make distributions, and that the Moores can vote their

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 14
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1   small share in favor of distributions. MSJ.Opp.33. But none of that gets past the fact that, as

2   minority shareholders, they have no right or ability to force a distribution and are uncertain ever

3   to receive one, just like the trust beneficiaries in *Kaestner*.

4      **3.**   *GPX Intern. Tire Corp. v. United States*, 780 F.3d 1136 (Fed. Cir. 2015), although

5   not binding on this Court,[12] provides a convenient overview of the factors courts have considered

6   in challenges to retroactive statutes and is, for that reason, persuasive. While the Government's

7   arguments on three of the factors *GPX* identifies—whether the provision is wholly new, the length

8   of the period of retroactivity, and any remedial purpose to retroactivity—are addressed above, the

9   other two (uncertainty in the law and notice) also bear brief mention.

10      If there was an uncertainty in the law that the MRT clarified, the Government has not

11   identified it. As the Government acknowledges (at 30), omission of the MRT from the 2017 tax

12   legislation simply would not have imposed this tax. That may not have been what Congress

13   desired—it wanted a one-time revenue windfall—but that is not uncertain or unclear in any respect.

14      As for notice, the Government does not dispute that taxpayers had no prior notice of the

15   change in the law when the transactions it taxes were undertaken years or decades ago. While the

16   Government does deny (at 31) that Congress "'reverse[d] course' to tax previously untaxable

17   income," that is exactly what it did, as discussed above. *See supra* § II.A; MSJ.Mem.4, 18, 22.

18   **III.   If the Mandatory Repatriation Tax Is Unconstitutional, the Moores Are Entitled to
19        a Refund of the Amount They Paid To Satisfy Their MRT Liability**

20      **A.**   If the Court determines that the MRT is unconstitutional, then the Moores are

21   entitled to summary judgment. The Government cannot establish a dispute of material fact over

22   what the Moores paid to satisfy their MRT liability, and it does not even attempt to meet its

23   threshold burden to establish a fact dispute on other tax items that might offset the claimed refund.

24      There is and can be no genuine dispute of material fact over the amount that the Moores

25   paid to satisfy their MRT liability and now seek to recover. The Moores presented evidence that

26

27   _____

[12] Plaintiffs did mistakenly identify *GPX* as a decision of the Ninth Circuit in the text of their summary judgment memorandum, although not in the adjacent citation.

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 15
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

they *actually paid* $14,729 in MRT liability and that they did so with an amended tax return filed in fall 2018. ECF No. 29-3 ¶ 29. This amended return was *separate* from the Moores' initial tax return, which (due to their good-faith ignorance) did not include an MRT payment. *Id.* The sole difference between the original tax return and the amended return was the inclusion of the income associated with the MRT, and the $14,729 payment which they now seek to recover relates only to that tax. The Government concedes that it received both returns in 2018 and now possess them, ECF No. 34-2, at ¶ 4, and it does not deny that it received the $14,729 payment from the Moores to satisfy their MRT liability. Accordingly, the Moores' calculation of their MRT liability is irrelevant: whether they paid too much, too little, or exactly the right amount, they are entitled to a refund of what they paid if the MRT is unenforceable. Any fact dispute can therefore only concern other tax items apart from the Moores' MRT payment.

But the Government has not met its threshold burden to identify some factual basis for its request to deny summary judgment so that it can conduct discovery respecting other tax items. The Ninth Circuit held in *Ahmanson Foundation v. United States* that the Government bears a "threshold burden" when it asserts, as here, "equitable setoff defenses to a tax refund suit." 674 F. 2d 761, 777 (9th Cir. 1981). In particular, it must demonstrate that any claims to a setoff against a requested refund "are made in good faith and are not completely lacking in substance." *Id*. This requires merely that the Government "show that its claim has sufficient substance that it is made in good faith, rather than for improper purposes of deterrence and harassment." *Id*. Only at that point does the "burden shift[] back to the taxpayer." *Id*. If, however, "the government fails to make such a showing, then it may be subject to summary judgment." *Id*.

The Government is subject to summary judgment here because it made no attempt to meet its threshold burden. No declaration or other evidence accompanied its opposition to the Moores' summary judgment motion, and the declaration accompanying its Rule 56(d) motion identifies only this as the basis for its request to deny summary judgment so that it can conduct discovery:

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 16
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1
2

> It is possible that the Moores underreported income, took improper deductions or credits, or treated items inaccurately in some other way that resulted in an underassessment of their income tax liabilities, separate from the 26 U.S.C. § 965 dispute. If any such issues exist, they would constitute offsets against the Moores' claimed refund.

3
4

ECF No. 34-2, at ¶ 5. That unsupported assertion of the mere possibility that the Moores *might*

5

have underpaid income tax—which could be said of any taxpayer—can and should be taken as a

6

concession that the Government has no basis for its request. Accordingly, the Government has

7

failed to meet its burden under *Ahmanson*, and the Court, if it agrees with the Moore's position on

8

the constitutionality of the MRT, may therefore grant summary judgment in their favor.

9

      **B.**      At a minimum, the Court should grant partial summary judgment. Rule 56

10

authorizes the Court to enter summary judgment on any claim or "part" of a claim. Fed. R. Civ. P.

11

56(a). The Government does not contend that there is any barrier to the Court's adjudicating the

12

constitutionality of the MRT, and it is difficult to imagine how the Court could resolve the

13

Government's motion to dismiss—which asserts the constitutionality of the MRT—without also

14

resolving the arguments to the contrary presented in the Moore's summary judgment motion. On

15

that point, the Government's argument against granting judgment to the Moores at this time goes

16

only to the amount of the refund to which the Moores would be entitled if they prevail on a

17

constitutional claim. *See* MSJ.Opp.34. Accordingly, even if the Court agrees with the Government

18

that ordering a refund in the amount claimed would be premature, it can and should still enter

19

partial summary judgment on the lawfulness of the MRT and reach the issue of the refund amount

20

at a later time. *See, e.g., First Fin. Bank, N.A. v. Christensen*, 2012 WL 2789020, at *2 (D. Nev.

21

July 9, 2012) (granting partial summary judgment because, "while summary judgment is

22

appropriate with respect to the Guarantors' liability, summary judgment as to damages is

23

premature"); *Paul v. Holland Am. Line, Inc.*, 463 F. Supp. 2d 1203, 1209 (W.D. Wash. 2006). The

24

Government appears to concede the point. ECF No. 37, at 5.

25

<u>**Conclusion**</u>

26

      The Court should grant the Plaintiffs' motion for summary judgment.

27

---

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT - 17
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1    DATED this 1st day of June, 2020.

2                                    Respectfully submitted,

3                                    BAKER & HOSTETLER LLP

4                                    *s/ James R. Morrison*

5                                    James R. Morrison, WSBA No. 43043
                                     999 Third Avenue
6                                    Suite 3600
                                     Seattle, WA 98104-4040
7                                    Tel:    206.332.1380
                                     FAX:   206.624.7317
8                                    E-mail: jmorrison@bakerlaw.com

9                                    Andrew M. Grossman*
                                     David B. Rivkin, Jr.*
10                                   Jeffrey H. Paravano*
                                     Katherine L. McKnight*
11                                   Nicholas C. Mowbray*
                                     Washington Square, Suite 1100
12                                   1050 Connecticut Avenue, N.W.
                                     Washington, D.C. 20036-5304
13                                   Tel: (202) 861-1500
                                     Fax: (202) 861-1783
14                                   E-mail: agrossman@bakerlaw.com
                                     E-mail: drivkin@bakerlaw.com
15                                   E-mail: jparavano@bakerlaw.com
                                     E-mail: kmcknight@bakerlaw.com
16                                   E-mail: nmowbray@bakerlaw.com

17                                   COMPETITIVE ENTERPRISE INSTITUTE
                                     Sam Kazman*
18                                   Devin Watkins*
                                     1310 L Street NW, 7th Floor
19                                   Washington, D.C. 20005
                                     Tel: (202) 331-1010
20                                   Fax: (202) 331-0640
                                     Email: Sam.Kazman@cei.org
21                                   Email: Devin.Watkins@cei.org

22                                   *Attorneys for Plaintiffs*

23

24   * Admitted *pro hac vice*.

25

26

27   PLAINTIFFS' REPLY IN SUPPORT OF                BAKER & HOSTETLER LLP
     CROSS-MOTION FOR SUMMARY                       999 Third Avenue, Suite 3600
     JUDGMENT                                       Seattle, WA  98104-4040
     CASE NO.: 2:19-CV-01539 JCC                    Telephone:  (206) 332-1380

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and all supporting materials, were served by CM/ECF upon the following:

Kari M. Larson
Jennifer Y. Golden
U.S. Department of Justice
Tax Division, Western Region
P.O. box 683, Ben Franklin Station
Washington, D.C. 20044
Ph: 202-616-3822 (Larson)
Ph: 202-307-6547 (Golden)
Fax: 202-307-0054
Email: kari.m.larson@usdoj.gov; jennifer.y.golden@usdoj.gov

*Attorneys for Defendants*

DATED this 1st day of June, 2020 at Burien, Washington.

*s/ Jennifer Hickman*
Jennifer Hickman

PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY
JUDGMENT
CASE NO.: 2:19-CV-01539 JCC

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380