THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES G. MOORE and KATHLEEN F. MOORE,

                      Plaintiffs,

    v.

UNITED STATES OF AMERICA,

                      Defendant.

CASE NO. C19-1539-JCC

ORDER

This matter comes before the Court on the Government's motion to dismiss (Dkt. No. 26), Plaintiffs' cross-motion for summary judgment (Dkt. No. 29), and the Government's Rule 56(d) motion (Dkt. No. 34). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Government's motion to dismiss (Dkt. No. 26), DENIES Plaintiffs' cross-motion for summary judgment (Dkt. No. 29), and DENIES as moot the Government's Rule 56(d) motion (Dkt. No. 34) for the reasons explained herein.

## I.    BACKGROUND

The Tax Cuts and Jobs Act of 2017 ("TCJA") was enacted in December 2017 and effective January 1, 2018. Pub. L. 115-97, 131 Stat. 2054. The Act included various provisions modifying subpart F, an anti-deferral regime requiring U.S. shareholders of controlled foreign

corporations ("CFC") to pay tax on their share of certain forms of a CFC's current undistributed income. *See Dave Fischbein Mfg. Co. v. Comm'r of Internal Revenue*, 59 T.C. 338, 353–54 (1972) (describing subpart F generally). Absent subpart F, such income would avoid the imposition of U.S. income tax until distributed to a U.S. shareholder. *Id.*

Effective January 1, 2018, the TCJA broadened the types of CFC income subject to subpart F to include current earnings and profits from a business. TCJA §§ 14101–14223. This was Congress' attempt to incentivize U.S. taxpayers to repatriate foreign earnings back into the United States. Henry Ordower, *Abandoning Realization and the Transition Tax: Toward A Comprehensive Tax Base*, 67 BUFF. L. REV. 1371, 1373 (2019). Prior to the TCJA, current earnings and profits from a CFC's trade or business were not considered subpart F income and, therefore, not subject to U.S. taxation until distributed to a U.S. taxpayer. *See Dave Fischbein Mfg. Co.*, 59 T.C. at 353–54. Under the TCJA, beginning on January 1, 2018, such income is subject to U.S. taxation, even if not distributed. 26 U.S.C. § 952.

The TCJA also enacted a one-time Mandatory Repatriation Tax ("MRT"), a "transition tax" intended to ensure that a CFC's *past* earnings and profits do not permanently escape U.S. tax by virtue of the TCJA's changes to subpart F. Ordower, *supra*, at 1377. The MRT applies to the undistributed earnings and profits that a CFC earned between January 1, 1987 and December 31, 2017. 26 U.S.C. § 965. The tax is levied on a U.S. shareholder's ratable share of a CFC's undistributed earnings and profits during this period by treating the entire amount as subpart F income in 2017. *Id.*

In 2005, Plaintiffs Charles and Kathleen Moore paid $40,000 for an 11% interest in KisanKraft, Ltd., an Indian company classified as a CFC for U.S. tax purposes. (Dkt. Nos. 1 at 5; 29 at 6, 10). From 2006 through 2017, the company retained all of its earnings and profits; it made no distributions to its owners. (*Id.*) Accordingly, neither Plaintiffs nor KissanKraft, Ltd. paid U.S. tax on the company's earnings and profits. *Id.* Plaintiffs, after filing their 2017 income

tax return without calculating the MRT, amended their return, calculated $15,130 in MRT, and paid the amount with their amended return. (*Id.*)

Plaintiffs brought this action to recover the MRT paid. (Dkt. No. 1 at 5.) They argue that the MRT violates the Apportionment Clause of Article I, Section 9 of the United States Constitution because it imposes an unapportioned direct tax, rather than an income tax. (*Id.* at 6–7.) Alternatively, Plaintiffs argue that the MRT is a retroactive application of a new tax, violating the Fifth Amendment's Due Process Clause. (*Id.* at 7–8.) Both are issues of first impression. The Government moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the MRT is constitutionally valid and, therefore, Plaintiffs fail to state a claim for which relief can be granted. (Dkt. No. 26.) Plaintiffs cross-move for summary judgment, arguing that there is no genuine dispute as to the MRT's constitutional infirmities and they are entitled to judgment as a matter of law. (Dkt. No. 29.) The Government also brings a Rule 56(d) motion should the Court deny its motion to dismiss. (Dkt. No. 34.)

## II.    DISCUSSION

### A.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the rule does not require courts to assess the probability that a plaintiff will eventually prevail, the allegations made in the complaint must cross "the line between possibility and plausibility of entitlement to relief." *Id.* Whereas, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When analyzing whether there is a genuine dispute of material fact, the "court must

view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). In addition, "a taxpayer in a refund suit . . . has the burden to prove overpayment of tax." *Watts v. U.S.*, 703 F.2d 346, 348 (9th Cir. 1983).

### B.    The MRT is a Tax on Income

The Sixteenth Amendment allows for the taxation of income without apportionment, whereas the Apportionment Clause provides that a direct tax, *i.e.*, a tax on property, must be apportioned to each state. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 570 (2012). *Compare* U.S. CONST. art. I, § 9 ("No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or enumeration herein before directed to be taken."), *with* U.S. CONST. amend. XVI ("The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."). Plaintiffs argue that by taxing *accumulated* income rather than current income, the MRT is a direct tax on property, thereby violating the Apportionment Clause. (Dkt. No. 29 at 12.)

Plaintiffs rely on *Eisner v. Macomber*, 252 U.S. 189 (1920). In *Macomber*, the United States Supreme Court found that a stock dividend funded by a corporation's undistributed accumulated earnings and profits was not income and, therefore, could not be taxed to its owners, because the act of distributing stock is not an income tax realization event. 252 U.S. at 211 ("Far from being a realization of profits of the stockholder, [a stock dividend] tends rather to postpone such realization."). This realization framework was generally affirmed in *Comm'r of Internal Revenue v. Glenshaw Glass Co.*, a case involving the taxation of punitive damages. 348 U.S. 426 (1955). But at the same time, the *Glenshaw Glass* Court cautioned that, while *Macomber*'s "definition [of income] served a useful purpose" in "distinguishing gain from capital," it "was not meant to provide a touchstone to all future gross income questions." *Id.* at 431.

1    Subsequent decisions dealing with foreign income have routinely departed from

2 *Macomber*'s realization standard.[1] In *Eder v. Comm'r of Internal Revenue*, 138 F.2d 27, 29 (2d.

3 Cir. 1943), the Second Circuit found that current inclusion of foreign corporate income under a

4 regime predating subpart F was constitutional. Courts reached similar holdings after enactment

5 of subpart F. Examples include *Estate of Whitlock v. Comm'r*, 59 T.C. 490, 505–10 (1972), *aff'd*

6 494 F.2d 1297 (10th Cir. 1976), where the court said that *Macomber* was not a bar to subpart F's

7 inclusion of current undistributed income. In *Garlock, Inc. v. Comm'r of Internal Revenue*, the

8 Second Circuit, in affirming a Tax Court's subpart F decision,[2] minimized the "continuing

9 validity of the doctrine of *Eisner v. Macomber*." 489 F.2d 197, 203 n.5 (2d. Cir 1973). It also

10 described as "border[ing] on frivolous" the plaintiff's argument that a shareholder's inclusion of

11 subpart F income from a CFC was unconstitutional. *Id.* at 202. But the most compelling post-

12 *Macomber* decision is *Dougherty v. Comm'r of Internal Revenue*, 60 T.C. 917 (1973). The case

13 addressed subpart F inclusion of *accumulated* earnings and profits of a CFC. *Id.* at 929–30. In

14 finding no constitutional bar to subpart F inclusion, the court said that "*Macomber . . .* presents

15 no more barrier than it did in *Whitlock*." *Id.* at 929. Telling commentary includes the court's

16 description of *Macomber* as "a venerable but often criticized page in the lore of Federal income

17 taxation" and its comment that *Macomber* "does not prevent Congress from bypassing the

18

19    [1] Nor is this departure limited to decisions involving foreign income. In 1936, the Court
found that a distribution of common stock on preferred stock was taxable income. *See Koshland*
20 *v. Helvering*, 298 U.S. 441, 443 (1936) (noting that *Macomber* "affected only the taxation of
dividends declared in the same stock as that presently held by the taxpayer."). In 1964, the Ninth
21 Circuit suggested *Glenshaw Glass* "finally laid to rest" *Macomber*'s definition of income,
limiting *Macomber*'s reach to "the question that it decided, namely, that a stock dividend is not
22 income to the shareholder, at least if the stock is of the same class and in the same corporation as
that previously held by the taxpayer." *U.S. v. James*, 333 F.2d 748, 752–53 (9th Cir. 1964). The
23 court went on to find that "insofar as it purported to offer a comprehensive definition of the term
income as used in the Sixteenth Amendment, [*Macomber*] has been discarded."
24
25    [2] In this case, the shareholder was unable to access the CFC's earnings and profits due to
local laws limiting the amount of distributions, yet the court still found the amounts taxable
26 under subpart F. *Garlock v. Comm'r of Internal Revenue*, 58 T.C. 423, 438 (1972).

corporate entity in determining the incidence of Federal income taxation." *Id.* at 928.

There are also numerous contemporary statutory regimes, outside of subpart F, that require the current taxation of unrealized income—none of which have been successfully challenged on *Macomber* grounds. For example, 26 U.S.C. § 1256 requires taxpayers holding certain futures contracts to recognize the gain or loss on those contracts annually, regardless of whether the taxpayer disposed of the contract during the year. *See Murphy v. United States*, 992 F.2d 929, 931 (9th Cir. 1993) (finding § 1256 constitutional). The same holds true for inventory held by security dealers, 26 U.S.C. § 475, and assets held by expatriates, 26 U.S.C. § 877A.

Given the cabining of *Macomber* by the Supreme Court and the clear departure from it by other courts, there is no reason for this Court to conclude that *Macomber* currently controls whether the MRT is an income tax. Accordingly, the MRT does not violate the Apportionment Clause, as it is a tax on income rather than a direct tax.

### C.   The MRT Does Not Violate Due Process

As a tax on income, the MRT must not violate Fifth Amendment Due Process protections. *Nichols v. Coolidge*, 274 U.S. 531, 542 (1927); *see* U.S. CONST. amend. V ("No person shall . . .  be deprived of life, liberty, or property, without due process of law."). At issue is whether the MRT is retroactive and, if so, whether retroactivity violates Due Process. *U.S. v. Carlton*, 512 U.S. 26, 30–31 (1994).

#### 1.   The MRT is a Retroactive Change

A law is retroactive if it "changes the legal consequences of acts completed before its effective date." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269 n.23 (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)). The Government strains for arguments to explain how, based on this standard, the MRT is not retroactive. None have merit.

The Government first argues the MRT is not retroactive because it is imposed on *current* subpart F income. (Dkt. No. 26 at 20–26; Dkt. No. 33 at 21.) The argument borders on the absurd. The MRT redetermines the amount of current subpart F income by including a CFC's

undistributed earnings and profits "beginning after December 31, 1986" through either "November 2, 2017" or "December 31, 2017." 26 U.S.C. § 965(d)(3); *see also* 26 U.S.C. §§ 951, 952, 956 (2016) (excluding undistributed earnings and profits from subpart F income). On its face, this represents a "different or more oppressive legal effect to conduct undertaken before enactment of the statute." *United States v. Hemme*, 476 U.S. 558, 568 (1986). This argument is meritless.

The Government next argues that the MRT regime simply accelerates the tax already owing on undistributed CFC earnings and profits. (*See* Dkt. No. 33 at 19.) But indefinite deferrals of a foreign corporation's earnings and profits often result in *de facto* permanent deferrals from U.S. tax—the very scenario the TCJA was established, in part, to combat. *See* H.R. Rep. No. 115-466, at 595–672, 675 (2017); Jerald David August, *Tax Cuts and Jobs Act of 2017 Introduces Major Reforms to the International Taxation of U.S. Corporations*, Prac. Tax Law., Winter 2018, at 43, 49. The MRT does more than simply accelerate tax already owing. It *ensures* that a ratable share of a CFC's earnings and profits will be subject to U.S. tax. This argument is also meritless.

The Government's final argument is based on *Dougherty*, 60 T.C. 917. (Dkt. No. 26 at 23.) The Government argues that the Tax Court previously held in *Dougherty* that current subpart F inclusions of prior year earnings and profits were not retroactive and the same should follow here. (Dkt. No. 26 at 23.) But the facts in *Dougherty* are distinct from those here. In *Dougherty*, the Tax Court held that a constructive dividend from a foreign corporation to a U.S. shareholder occurring after enactment of the statute, thereby triggering current inclusion of a foreign corporation's prior year's earnings and profits, did not make the statute retroactive. 60 T.C. at 928–30; *see* 26 U.S.C. §§ 951(a)(1)(B), 956 (1962). Imposition of the MRT is not dependent on actions occurring *after* adoption of the statute. Quite the opposite, it levies tax based upon actions taken *before* adoption of the statute—a CFC's accumulation of earnings and profits. *See generally* 26 U.S.C. §§ 951, 965. This argument is also meritless.

1    By its very nature, the MRT is a retroactive tax.

2        2.   The MRT Does Not Violate Due Process

3        Even if a tax is retroactive, it does not violate the Due Process Clause if it (1) is

4   supported by a legitimate legislative purpose and (2) is furthered by rational means. *Carlton*, 512

5   U.S. at 30–31.[3] The *Carlton* standard represents the Court's rearticulation of an earlier standard,

6   providing that "the validity of a retroactive tax provision depends upon whether 'retroactive

7   application is so harsh and oppressive as to transgress the constitutional limitation.'" *Id.* (quoting

8   *Welch v. Henry*, 305 U.S. 134, 147 (1938)). Absent the MRT, the TCJA's changes would

9   effectively eliminate U.S. tax on a CFC's undistributed earnings and profits originating before

10  2018. *See* TCJA §§ 14101–14223. The MRT ensures that these amounts, at least to the extent

11  they are apportionable to a U.S. shareholder, are subject to U.S. tax. *See* H.R. Rep. No. 115-466,

12  at 595, 598–99, 606–07, 613–14 (2017); Ordower, *supra* at 1377. This is a legitimate legislative

13  purpose.

14      Plaintiffs argue that the MRT's retroactive period, thirty years, is too long, *i.e.*, an

15  irrational means to affect a legitimate legislative purpose. (*See generally* Dkt. Nos. 29 at 28–32;

16  38 at 16–19.) In *Carlton*, the effect of the estate tax statute at issue "extended for a period only

17  slightly greater than one year." 512 U.S. at 33. While Justice O'Connor indicated that a

18  retroactive period "longer than the year preceding the legislative session in which the law was

19  enacted would raise, in my view, serious constitutional questions," this was not the view of the

20  majority. *Carlton*, 512 U.S. at 38 (O'Connor, J., concurring). The majority provided no bright-

21  line rule. *See generally id.* at 32–34. Nor is there any binding precedent establishing such a rule.

22  Instead, the Court must fall back on "'the nature of the tax and the circumstances in which it is

23  laid.'" *Purvis v. United States*, 501 F.2d 311, 313 (9th Cir. 1974) (quoting *Welch*, 305 U.S. at

24

25      [3] Plaintiffs assert that the MRT is a "wholly new" tax and, as such, the *Carlton* standard
    should not apply. (Dkt. Nos. 29 at 25–28; 38 at 15–16.) The Court disagrees. The MRT is a
26  component of the TCJA, which modified subpart F. Therefore, *Carlton* provides the relevant
    standard.

147).

Circumstances here favor finding the imposition of the MRT is a rational means of affecting a legitimate legislative purpose. The TCJA is a major shift in how U.S. taxpayers doing business overseas are taxed. Prior to the TCJA, taxpayers paid no U.S. tax on a CFC's earnings and profits until those amounts were repatriated, thereby incentivizing U.S. taxpayers to offshore earnings and profits through the use of foreign subsidiaries. *See* 26 U.S.C. §§ 951, 952, 956 (2016); *see generally* Susan C. Morse, *A Corporate Offshore Profits Transition Tax*, 91 N.C. L. REV. 549, 550 (2013) (describing the incentive produced by the pre-TCJA scheme to retain foreign earnings and profits offshore). The TCJA attempts to cure this incentive by transitioning to a territorial tax model, which includes subjecting a U.S. shareholder's ratable portion of a CFC's earnings and profits to taxation regardless of whether the CFC distributes those funds. *See* TCJA §§ 14101–14223. However, absent a transition tax like the MRT, any earnings and profits undistributed upon the effective date of the TCJA would escape the imposition of U.S. taxation. Ordower, *supra* at 1377–80. As for the period of prior earnings subject to the transition tax, it was reasonable for Congress to select all dates after 1986 as the starting point, as this marks the last major overhaul of the Tax Code prior to the TCJA. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085.

Moreover, the duration of retroactivity is just one of the considerations relevant to whether there is a rational basis for the tax. *See GPX Int'l Tire Corp. v. U.S.*, 780 F.3d 1136, 1142 (Fed. Cir. 2015). Remaining considerations are whether the MRT is a "wholly new tax," whether it resolves uncertainty in the law, whether taxpayers received notice of the potential change in the law, and whether the provision is "remedial in nature." *Id.* As previously discussed, the MRT is not a "wholly new tax." And it is "remedial." It is a change in subpart F to incentivize U.S. taxpayers to repatriate foreign earnings. The MRT also resolves uncertainty in the law. Under the prior regime, it was unclear when and if a CFC's earnings attributable to U.S. shareholders would be subject to U.S. tax. The TCJA and MRT remove that uncertainty. Ratable

portions of prior undistributed earnings and profits are now subject to U.S. taxation and future amounts are subject to U.S. taxation as earned. 26 U.S.C. § 965. While it is true that Plaintiffs received little notice that the taxation of KisanKraft, Ltd.'s undistributed earnings and profits would change, this consideration is "not dispositive of the due process analysis." *GPX Int'l Tire Corp.*, 780 F.3d at 1143. In *Carlton*, the tax "did not violate due process even through the challenger 'specifically and detrimentally relied' on the prior state of the law and . . . did not have prior notice of the change in the law." *Id.* (quoting *Carlton*, 512 U.S. at 33–34).

Therefore, the MRT does not violate due process and, as a tax on income, it is constitutionally valid.

## III.    CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (Dkt. No. 26) is GRANTED, Plaintiffs' motion for summary judgment (Dkt. No. 29) is DENIED, and the Government's Rule 56(d) motion (Dkt. No. 34) is DENIED as moot. The case is DISMISSED with prejudice.

DATED this 19th day of November 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C19-1539-JCC
PAGE - 10